UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES
ex rel. ROBERT C. SMITH, M.D.,

        Plaintiff,

vs.

YALE UNIVERSITY and YALE-NEW HAVEN
HOSPITAL, INC.,

        Defendants.

Civil Action
No. 3:00-cv-01359(PCD)

MAY 18, 2004

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO QUASH THE THIRD-PARTY SUBPOENA AND STAY DISCOVERY

Pursuant to Federal Rules of Civil Procedure 26(c) and 45(c), Defendants Yale University ("Yale") and Yale-New Haven Hospital, Inc. ("YNHH") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion for a protective order quashing the third-party subpoena for documents served on United Healthcare on May 7, 2004, and staying discovery pending the Court's ruling on Defendants' forthcoming motion to dismiss the Second Amended Complaint.

### INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff-Relator Robert Smith ("Relator") has filed a private *qui tam* action on behalf of the government to recover damages and civil penalties arising from alleged false claims made in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.* On January 26, 2004 – before Defendants' time to respond to the First Amended Complaint had expired – Relator filed a motion for leave to file his Second Amended Complaint. On March 23, 2004, the Court granted Relator's motion to file his Second Amended Complaint.

ny-570847

On April 30, 2004, the Court granted the parties' unopposed motion for an extension of time, whereby Defendants shall serve their motion to dismiss the Second Amended Complaint by July 15, 2004, Relator shall serve his brief in opposition to the motion to dismiss by August 20, 2004, and Defendants shall serve any replies thereto by September 20, 2004.

On May 7, 2004, Relator served a subpoena for documents upon third-party United Healthcare (the "Third Party Subpoena"). Relator had previously served virtually identical subpoenas on Yale, which Yale agreed to treat as requests for production under Rule 34 of the Federal Rules of Civil Procedure and to which Yale served responses and objections.

Through the Third Party Subpoena and requests for production, Relator seeks discovery directed at the deficiencies of his Second Amended Complaint. The law is clear, however, that Relator may not use discovery to meet the particularity requirements for pleading in accordance with Rule 9(b). For this reason and as discussed in further detail below, Defendants' motion to quash the Third Party Subpoena and to stay discovery pending the Court's ruling on Defendants' forthcoming motion to dismiss the Second Amended Complaint should be granted. Defendants have also filed a motion to modify the scheduling order to adjust the schedule of this case to permit time for discovery, if necessary, after a decision on Defendants' forthcoming motion to dismiss the Second Amended Complaint.

**ARGUMENT**

I. **Plaintiffs May Not Use Discovery To Overcome Rule 9(b) Deficiencies.**

Relator cannot use the discovery it seeks through the Third Party Subpoena and requests for production to cure an otherwise deficient complaint. A plaintiff may not use discovery to overcome Rule 9(b) deficiencies. See Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993) (holding Rule 9(b) "requires that 'the circumstances constituting fraud . . . be stated

ny-570847                                    2

with particularity,' prior to obtaining discovery into those circumstances") (emphasis added); Madonna v. United States, 878 F.2d 62, 66 (2d Cir. 1989) ("Madonna's contention, that discovery will unearth information tending to prove his contention of fraud, is precisely what Rule 9(b) attempts to discourage"); Ferber v. Travelers Corp., 802 F. Supp. 698, 711 (D. Conn. 1992) (Nevas, J.) ("Rule 9(b) is designed to thwart parties who 'bring a suit and conduct extensive discovery in the hopes that the process will reveal relevant evidence.'"); Aynet, Inc. v. Am. Motorists Ins. Co., 115 F.R.D. 588, 592 (S.D.N.Y. 1987) ("[D]iscovery requests, designed to uncover fraud plaintiff has yet to allege properly, are impermissible at this stage in the litigation"); see also Anthony v. Young & Rubicam, 979 F. Supp. 122, 129 (D. Conn. 1997) (Dorsey, J.) (rejecting plaintiff's argument that he should be allowed to conduct discovery to meet the particular pleading requirements of a claim, as the "purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists").

## II. Satisfaction of the Particularity Requirements of Rule 9(b) Without Leave to Conduct Discovery Is of Particular Importance in *Qui Tam* Actions.

The discovery gate-keeping function performed by Rule 9(b) is even more important in *qui tam* actions. In fact, Rule 9(b) serves a dual function in *qui tam* actions.

First, Rule 9(b) permits only those relators that are able to plead fraud with particularity to proceed with their claim and, if successful, to share a portion of the government's recovery. To prevent parasitic lawsuits, the FCA "grants a right of action to private citizens only if they have independently obtained knowledge of fraud." United States ex rel. Russell v. Epic Healthcare Mgmt. Group, 193 F.3d 304, 309 (5th Cir. 1999) (holding that a "special relaxing of Rule 9(b) is a qui tam plaintiff's ticket to the discovery process that the statute itself does not contemplate"). Requiring the relator to plead fraud with particularity weeds out those so called

ny-570847                                3

relators that do not have knowledge of actual fraud. United States ex rel. Clausen v. Lab. Corp. of Am., 290 F.3d 1301, 1313 n.24 (11th Cir. 2002) (limiting discovery to those plaintiffs who have met the requirements of Rule 9(b) is especially important "in cases involving the False Claims Act, which provides a windfall for the first person to file and permits recovery on behalf of the real victim, the Government.")

Second, because a *qui tam* relator takes a greater percentage of any successful recovery if the government chooses not to intervene, (compare 31 U.S.C. § 3730(d)(1) (15% -25%) with 31 U.S.C. § 3730(d)(2) (25%-30%)), Rule 9(b) requires that the relator put all of his cards on the table so that the government can make an informed decision about whether to intervene. The relator in a *qui tam* action must first file his complaint under seal and allow the government an opportunity to intervene. See 31 U.S.C. § 3730(b). Thus, "allowing a qui tam relator to amend his or her complaint after conducting further discovery would mean that 'the government will have been compelled to decide whether or not to intervene absent complete information about the relator's cause of action.'" United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 231 (1st Cir. 2004) (quoting Boese, CIVIL FALSE CLAIMS AND QUI TAM ACTIONS § 4.04[C]). Allowing the relator to amend the complaint after discovery is "at odds with the FCA's procedures for filing a qui tam action and its protections for the government (which is, of course, the real party in interest in a qui tam action)." Karvelas, 360 F.3d at 231.

Because of these special considerations in *qui tam* actions, courts routinely prohibit relators from conducting discovery until they have satisfied the Rule 9(b) pleading requirements. See, e.g., United States ex rel. Riley v. Alpha Therapeutic Corp., No. C-96-0704 DLJ, 1997 U.S. Dist. LEXIS 23866, at *10 n.1 (N.D. Cal. Nov. 10, 1997) (rejecting plaintiff's argument that he should be able to amend his complaint after discovering the particulars necessary for Rule 9(b) as

"directly contrary to the purpose of Rule 9(b), namely that plaintiffs show that there is some substance to their claim of fraud before a defendant will be subjected to the rigors of the discovery process"); United States ex rel. Sanders v. East Ala. Healthcare Auth., 953 F. Supp. 1404, 1414 (M.D. Ala. 1996) (granting the plaintiffs fourteen days "to amend their complaint as required by 9(b) or face dismissal of the inadequate portions described above [but holding the plaintiffs] will not be allowed to conduct discovery during this time and must amend their complaint based on their own knowledge."); United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Ga., Inc., 755 F. Supp. 1040, 1051 (S.D. Ga. 1990) (holding the plaintiff "may have 15 calendar days from the date of entry of this order to bring its complaint into compliance with [Rule 9(b), but that it] may not, however, engage in discovery in the interim; the Court's stay of discovery . . . remains in effect.")

### III. Relator's Third Party Subpoena and Discovery Requests Go Straight to the Deficiencies of the Second Amended Complaint.

As will be explained more fully in Defendants' forthcoming motion to dismiss the Second Amended Complaint, a relator has not properly alleged fraud with particularity to proceed with a *qui tam* action, unless he can "specify 'the time, dates, places, and identities' of the individuals involved in the fraud or 'the specifics in the documents prepared and submitted by the defendant to obtain the funding' at the time that the complaint is filed and prior to any additional discovery." Karvelas, 360 F.3d at 230. In other words, the relator must plead specific details about a false claim that was submitted to the government.

Conspicuously absent from the Second Amended Complaint are any details regarding a single false claim submitted to the government—the "sine qua non" of a FCA violation. Karvelas, 360 F.3d at 225 (quoting Clausen, 290 F.3d at 1311.) For instance, in a sworn

ny-570847                                   5

deposition in a pending state court action taken on January 29, 2004 – days after Relator served his motion to amend attaching the Second Amended Compliant – Relator testified that he has no idea whether Defendants submitted any false claims.

> Q: . . . . Yale University wasn't billing, you understood that?
>
> A: I don't know.
>
> Q: Well, they said they weren't, you dispute that?
>
> A: I have no idea.
>
> Q: I see. You don't claim that they were billing for Auto Sign, do you?
>
> A: I'm not claiming one way or the other. I don't know.

(Smith 1/29/04 Dep. 521:4-13) (a true and correct copy of excepts attached as Exhibit A.)

The Third Party Subpoena and requests for production are improperly directed at curing the obvious deficiencies of the Second Amended Complaint. The Third Party Subpoena and requests for production seek the same information: documents related to claims submitted to the government for radiology services furnished in connection with the finalization of radiology reports by Gordon Sze, M.D. on March 9, 1998, and by Morton Glickman, M.D., between April 19, 2000, and April 22, 2000.

Relator's document requests seek the precise information that Relator knows is missing from the Second Amended Complaint and which is fatal to his claims. The requests for billings and payments in connection with the finalization of reports by Dr. Sze, for example, are an attempt to cure the defect in Paragraph 85 of the Complaint wherein Relator alleges that Dr. Sze finalized 88 reports in four minutes, but fails to allege that Defendants ever submitted such claims to the government and fails to plead any particulars regarding such alleged claims. (2d Am. Compl. ¶ 85.) See Karvelas, 360 F.3d at 234 (finding relator's complaint insufficient under

Rule 9(b) where complaint did not "specify which of the 21,000 tests were billed to the government, supply any details about the particular bills and certifications submitted, or provide a factual basis for his allegation that the defendants falsely certified compliance with federal standards in order to secure Medicare or Medicaid benefits"). Relator cannot claim that he is requesting discovery at this time for any reason other than to attempt to cure his defective pleading. As such, pending the Court's ruling on Defendants' forthcoming motion to dismiss, discovery is improper.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court quash the Third Party subpoena and stay discovery pending the Court's ruling on the Defendants' forthcoming motion to dismiss the Second Amended Complaint.

Dated: May 18, 2004

Respectfully submitted,

WIGGIN & DANA LLP

*[signature]*

William J. Doyle (CT04190)
Kenneth D. Heath (CT23659)
One Century Tower
265 Church Street
New Haven, CT 06508-1832
(203) 498-4400

- and -

MORRISON & FOERSTER LLP
Carl H. Loewenson, Jr. (*pro hac vice*)
Stanley R. Soya (*pro hac vice*)
J. Alexander Lawrence (*pro hac vice*)
1290 Avenue of the Americas
New York, NY 10104-0185
(212) 468-8000

Attorneys for Defendant Yale University


DELANEY, ZEMETIS, DONAHUE,
DURHAM & NOONAN, P.C.


Patrick M. Noonan (CT00189)
741 Boston Post Road
Guilford, CT 06437
(203) 458-9168

Attorneys for Defendant
Yale-New Haven Hospital, Inc.

<u>VOLUME IV</u>

STATE OF CONNECTICUT    : SUPERIOR COURT

JUDICIAL DISTRICT OF WATERBURY

COMPLEX LITIGATION DOCKET

- - - - - - - - - - - - - - - - - x
:
MORTON BURRELL, M.D.,
ARTHUR ROSENFIELD, M.D.,        :
AND ROBERT C. SMITH, M.D.
:
       Plaintiffs,
:   (X02)
  vs.                              CV00-0159421S
:
YALE UNIVERSITY,                 :

       Defendant.         :

- - - - - - - - - - - - - - - - - x

      Continued deposition of ROBERT C. SMITH, M.D., taken pursuant to the Section 243 et seq. of the Connecticut Practice Book, at the law offices of Wiggin & Dana, One Century Tower, New Haven, Connecticut, before Janet C. Phillips, License #00124, a Registered Professional Reporter and Notary Public in and for the State of Connecticut, on Thursday, January 29, 2004, at 9:20 a.m.

SCRIBES, INC.

521

1  physician guidelines that the faculty signed off to.
2  However, no bill will go out for Auto Sign. That is
3  the purpose of creating Auto Sign."
4         Yale University wasn't billing, you
5  understood that?
6      A.  I don't know.
7      Q.  Well, they said they weren't, you dispute
8  that?
9      A.  I have no idea.
10     Q.  I see. You don't claim that they were
11 billing for Auto Sign, do you?
12     A.  I'm not claiming one way or the other. I
13 don't know.
14     Q.  I see. Who would be in the best position to
15 determine if a film hadn't been viewed and if a repeat
16 exam was medically necessary?
17     A.  Those are two separate questions. Can you
18 separate those?
19     Q.  Okay. Who would be in the best position to
20 determine whether a film hadn't been viewed?
21     A.  Hadn't been viewed by anybody?
22     Q.  By an attending?
23     A.  Depends on the circumstance.
24     Q.  Well, tell me.
25         MR. PARENTEAU: Object to the form.

## CERTIFICATE OF SERVICE

I, Kenneth D. Heath, hereby certify that true and correct copies of Defendants' Motion to Quash the Third-Party Subpoena and Stay Discovery and Memorandum of Law In Support Thereof were served by U.S. Mail, on May 19, 2004, upon:

Carl H. Loewenson, Jr.
Stanley R. Soya
J. Alexander Lawrence
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104-0185

Patrick M. Noonan
Delaney, Zemetis, Donahue,
Durham & Noonan, P.C.
741 Boston Post Road
Guilford, CT 06437

Mary Alice Leonhardt
Offices Of Mary Alice Leonhardt
102 Oak Street
Hartford, CT 06106

Peter B. Prestley
Madsen, Prestley & Parenteau, LLC
44 Capitol Avenue
Suite 201
Hartford, CT 06106

Jacques J. Parenteau
Madsen, Prestley & Parenteau, LLC
111 Huntington Street
P.O. Box 1631
New London, CT 06320

and, pursuant to Rule 5(c) of the Local Rules of Civil Procedure, three copies by United States Postal Service, First Class Mail to:

John Hughes, Esq.
Richard Molot, Esq.
Assistant United States Attorney
Office of the Assistant United States Attorney
157 Church Street, 23rd Floor
New Haven, CT 06510.

_____
Kenneth D. Heath

ny-570846