UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

*FILED*
*SEP 23  1 ᴾᴹ '04*

| | |
|---|---|
| UNITED STATES ex rel.<br>ROBERT C. SMITH, M.D., | Civil Action<br>No. 3:00-cv-01359(PCD) |
| Plaintiff, | |
| | JULY 15, 2004 |
| vs. | ORAL ARGUMENT REQUESTED |
| YALE UNIVERSITY and YALE-NEW HAVEN<br>HOSPITAL, INC., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANTS
YALE UNIVERSITY AND YALE NEW HAVEN HOSPITAL, INC.
TO DISMISS THE SECOND AMENDED COMPLAINT**

WIGGIN & DANA LLP
William J. Doyle
Kenneth D. Heath
One Century Tower
265 Church Street
New Haven, CT  06508-1832
(203) 498-4400

DELANEY, ZEMETIS, DONAHUE,
DURHAM & NOONAN, P.C.
Patrick M. Noonan
741 Boston Post Road
Guilford, CT 06437
(203) 458-9168

Attorneys for Defendant
Yale-New Haven Hospital, Inc.

MORRISON & FOERSTER LLP
Carl H. Loewenson, Jr.
Stanley R. Soya
J. Alexander Lawrence
1290 Avenue of the Americas
New York, NY  10104-0185
(212) 468-8000

Attorneys for Defendant Yale University

ny-559915

## TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................ 1

    A.    Smith's Employment with Yale.................................................................... 1

    B.    Smith's Medicare Fraud Allegations ......................................................... 2

            1.    Smith Claims That Defendants Billed for Studies for Which the Signing Radiologist Did Not Review the Associated Image and/or the Preliminary Report ........................................................................ 2

            2.    Smith Claims That Defendants Billed for Studies by Radiologists Who Were Not Qualified Teaching Physicians ........................................ 3

            3.    Smith Claims That Defendants Billed for Medically Unnecessary Studies............................................................................................. 4

    C.    Smith's Retaliation and Defamation Allegations ................................................ 4

    D.    Smith's Connecticut State Court Action.................................................... 5

ARGUMENT.......................................................................................................... 5

FALSE CLAIMS ACT - SECTION 3729 CLAIMS ................................................... 5

I.    Elements of an FCA Claim ........................................................................... 5

II.    Pursuant to the Public Disclosure Bar, the Court Lacks Subject Matter Jurisdiction Over the FCA Claims........................................................................................ 6

    A.    Prior to Filing the Original Complaint, the Allegations Therein Had Been Publicly Disclosed.............................................................................. 7

    B.    The Publicly Disclosed Allegations Are Substantially Similar to the Allegations in this Action ........................................................................ 8

    C.    Smith Is Not an "Original Source" of the Allegations in the Original Complaint....................................................................................... 10

            1.    Smith Has Not Sufficiently Alleged "Direct and Independent" Knowledge of the Information on Which the FCA Claims Are Based............................................................................................... 10

                    a.    Smith Does Not Have Direct and Independent Knowledge of the Allegations in the Complaint Involving Conduct That Is Alleged to Have Occurred After Smith Left Yale.................... 12

                    b.    Smith Does Not Have Direct and Independent Knowledge of Facts Alleged in the Complaint That He Claims to Have Obtained from Third Parties ....................................................... 13

i

**TABLE OF CONTENTS**
(continued)

Page

c.    Smith Cannot Have Direct and Independent Knowledge of Facts Alleged in the Second Amended Complaint Obtained through Discovery in the State Court Action...............................15

d.    Smith Does Not Have Direct and Independent Knowledge of Allegations in the Complaint That Are Based on Information and Belief..............................................................16

2.    There Is No Evidence That Smith Voluntarily Provided the Information Underlying the Complaint to the Government in a Timely Manner.........................................................................17

a.    There Is No Evidence That Smith Voluntarily Provided the Information Underlying the Complaint to the Government Prior to the Public Disclosures....................................18

b.    There Is No Evidence That Smith Voluntarily Provided the Information Underlying the Complaint to the Government Prior to Filing the Original Complaint........................................19

III.    The FCA Claims Should Be Dismissed For Failure to Meet the Particularity Requirements of Rule 9(b)....................................................................20

A.    The Complaint Must Be Dismissed for Failure to Plead Any Particulars Regarding a Single Fraudulent Claim................................................21

1.    An FCA Complaint Must Allege Details Regarding Actual False Claims Submitted to the Government......................................................21

2.    Smith Fails to Allege Any Detail About a Single False Claim That Was Actually Submitted to the Federal Government.............................23

B.    The Complaint Must Be Dismissed for Failure to Plead Particulars Regarding the Conduct Resulting in the Alleged Fraudulent Claims..................26

1.    An FCA Complaint Must Plead Specific Details Regarding the Alleged Fraudulent Scheme..............................................................26

2.    Smith Fails to Plead Required Particulars Regarding the Alleged Fraudulent Scheme.............................................................28

C.    Smith Should Not Be Given Leave to Amend the Second Amended Complaint..........................................................................30

IV.    The FCA Claims Should Be Dismissed Pursuant to Rule 12(b)(6) For Failure to State a Claim......................................................................31

A.    Smith's Allegations That Defendants Billed for Studies By Radiologists Who Were Not Qualified Teaching Physicians Do Not State a Claim Under the FCA......................................................................32

ii

# TABLE OF CONTENTS
(continued)

Page

B.   Smith's Allegations That Defendants Billed for Studies for Which the Signing Radiologist Did Not Review the Associated Image and/or the Preliminary Report Do Not State a Claim Under the FCA ................................... 33

    1.   Smith's Allegations Involving the Neuroradiology Fellows Do Not State a Claim ....................................................................................... 33

    2.   Smith's Allegations Regarding the "Clean Up Project" Do Not State a Claim ....................................................................................... 35

    3.   Smith's Allegations Regarding the Use of "Autosign" Do Not State A Claim ....................................................................................... 35

C.   Smith's Allegations that Defendants Billed for Medically Unnecessary Studies Do Not State a Claim ............................................................................ 36

FALSE CLAIMS ACT - SECTION 3730(h) RETALIATION CLAIMS ................................... 36

I.   Smith's Retaliation Claim Is Time-Barred ................................................................. 36

A.   The Six-Year Limitations Period of the FCA Is Inapplicable .............................. 37

B.   The Applicable Statute of Limitations Is The 90-Day Limit Provided by Connecticut's Whistleblower Statute .................................................................. 39

II.   The Retaliation Claims Should Be Dismissed For Failure To State A Claim For Which Relief Can Be Granted .................................................................................... 41

A.   Smith Has Failed To Allege That He Was Engaged In Protected Conduct Under The FCA .................................................................................................. 41

B.   Smith Has Failed to Allege That His Employer Knew He Was Engaged in Protected Conduct .............................................................................................. 43

C.   Smith Has Failed To Allege That He Was Retaliated Against Because of His Protected Conduct ....................................................................................... 44

D.   Smith Cannot Assert Claims Under § 3730(h) on Behalf of Non-Parties Burrell and Rosenfield ....................................................................................... 44

DEFAMATION ................................................................................................................ 45

I.   Smith Has Failed To State A Claim For Defamation ................................................... 45

CONCLUSION ................................................................................................................ 48

iii

## TABLE OF AUTHORITIES

### CASES

*Acito v. IMCERA Group,*
   47 F.3d 47 (2d Cir. 1995) ...................................................................................................30

*Antares Aircraft, L.P. v. Federal Republic of Nigeria,*
   948 F.2d 90 (2d Cir. 1991) .................................................................................................1

*Anthony v. Young & Rubicam,*
   979 F. Supp. 122 (D. Conn. 1997).....................................................................................46

*Bramesco v. Drug Computer Consultants,*
   834 F. Supp. 120 (S.D.N.Y. 1993) ....................................................................................46

*Contemporary Mission, Inc. v. United States Postal Service,*
   648 F.2d 97 (2d Cir. 1981) ................................................................................................36

*Croslan v. Housing Authority for City of New Britain,*
   974 F. Supp. 161 (D. Conn. 1997).....................................................................................46

*Dameron Physicians Medical Group v. Shalala,*
   961 F. Supp. 1326 (N.D. Cal. 1997)..................................................................................31

*Faldetta v. Lockheed Martin Corp.,*
   98-cv-2614, 2000 WL 1682759 (S.D.N.Y. Nov. 9, 2000) ...............................................41

*Federal Recovery Services, Inc. v. United States,*
   72 F.3d 447 (5th Cir. 1995) ................................................................................................9

*Filetech S.A. v. France Telecom S.A.,*
   157 F.3d 922 (2d Cir. 1998) ...............................................................................................1

*Fisher v. Federal Bureau of Investigation,*
   94 F. Supp. 2d 213 (D. Conn. 2000)................................................................................1, 6

*Gladstone Realtors v. Village of Bellwood,*
   441 U.S. 91 (1979)............................................................................................................45

*Gold v. Morrison-Knudsen Co.,*
   68 F.3d 1475 (2d Cir. 1995) .............................................................................................20

*Gross  v. AIDS Research Alliance-Chicago,*
   01-cv-8182, 2003 WL 22508153 (N.D. Ill. Nov. 3, 2003), ........................................21, 34

*Hays v. Hoffman,*
   325 F.3d 982 (8th Cir. 2003) ................................................................................11, 13

*In re Cardiac Devices Qui Tam Litigation,*
   221 F.R.D. 318 (D. Conn. 2004) ............................................................................22, 27

*Kelly v. Schmidberger,*
   806 F.2d 44 (2d Cir. 1986) ...................................................................................46, 47

*L. Cohen & Co., Inc. v. Dun & Bradstreet, Inc.,*
   629 F. Supp. 1425 (D. Conn. 1986)...........................................................................47

*Liguori v. Alexander,*
   495 F. Supp. 641 (S.D.N.Y. 1980) .............................................................................47

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992).....................................................................................................45

*McKenzie v. Bellsouth Telecommunications, Inc.,*
   219 F.3d 508 (6th Cir. 2000) ..........................................................................41, 42, 43

*Moor-Jankowsk v. Board of Trustees of New York University,*
   96-cv-5997, 1998 WL 474084 (S.D.N.Y. Aug. 10, 1998)...................................42, 44

*National Association of Pharmaceutical Manufacturers v. Ayerst Laboratory,*
   850 F.2d 904 (2d Cir. 1988) .......................................................................................36

*Neal v. Honeywell, Inc.,*
   33 F.3d 860 (7th Cir. 1994) ........................................................................................37

*Newman-Green, Inc. v. Alfonzo Laraine,*
   490 U.S. 826 (1989).......................................................................................................9

*Northrup v. Conn. Commission on Human Rights & Opportunities,*
   Civ. No. 3:97-211, 1998 U.S. Dist. LEXIS 3111 (D. Conn. Feb. 2, 1998) ...............46

*Phillip Morris Inc. v. Heinrich,*
   95-cv-0328, 1997 WL 781907 (S.D.N.Y. Dec. 18, 1997).........................................36

*Reed v. United Transportation Union,*
   488 U.S. 319 (1989).....................................................................................................40

*Rehabilitation Association of Virginia, Inc. v. Kozlowski,*
   42 F.3d 1444 (4th Cir. 1994) ......................................................................................31

*Reilly v. Natwest Market. Group Inc.,*
    181 F.3d 253 (2d Cir. 1999) .................................................................................46

*Robinson v. Overseas Military Sales Corp.,*
    21 F.3d 502 (2d Cir. 1994) .................................................................................6

*Rothman v. Gregor,*
    220 F.3d 81 (2d Cir. 2000) .................................................................................1

*San Leandro Emergency Medical Group Profit Sharing Plan v. Phillip Morris Cos.,*
    75 F.3d 801 (2d Cir. 1996) .................................................................................1

*Segal v. Gordon,*
    467 F.2d 602 (2d Cir. 1972) .................................................................................25

*Shaw v. Digital Equipment Corp.,*
    82 F.3d 1194 (1st Cir. 1996) .................................................................................1

*Shields v. Citytrust Bancorp, Inc.,*
    25 F.3d 1124 (2d Cir. 1994) .................................................................................20

*Stuto v. Fleishman,*
    164 F.3d 820 (2d Cir. 1999) .................................................................................36

*United States ex rel. Ackley v. International Business Machines,*
    76 F. Supp. 2d 654 (D. Md. 1999) .................................................................................9, 19

*United States ex rel. Aflatooni v. Kitsap Physicians Services,*
    163 F.3d 516 (9th Cir. 1999) .................................................................................11, 18

*United States ex rel. Aflatooni v. Kitsap Physicians Services,*
    314 F.3d 995, 1003 (9th Cir. 2002) .................................................................................21

*United States ex rel. Bagley v. TRW Inc.,*
    212 F.R.D. 554 (C.D. Cal. 2003) .................................................................................19

*United States ex rel. Barmak v. Sutter Corp.,*
    95-cv-7637, 2003 WL 21436213 (S.D.N.Y. June 20, 2003) .................................................................................20, 23, 25

*United States ex rel. Barrett v. Columbia Healthcare Corp.,*
    251 F. Supp. 2d 28 (D.D.C. 2003) .................................................................................30

*United States ex rel. Barth v. Ridgedale Electric, Inc.,*
    44 F.3d 699 (8th Cir. 1995) .................................................................................13, 17

*United States ex rel. Bledsoe v. Community Health System,*
   342 F.3d 634 (6th Cir. 2003) ..................................................................................27

*United States ex rel. Butler v. Magellan Health Services, Inc.,*
   101 F. Supp. 2d 1365 (M.D. Fla. 2000)....................................................27, 29

*United States ex rel. Cappella v. Norden System, Inc.,*
   No. 3:94-cv-2063, 2000 WL 1226487 (D. Conn. Aug. 24, 2000)................................31

*United States ex rel. Cericola v. Ben Franklin Bank,*
   99-cv-6311, 2003 WL 22071484 (N.D. Ill. Sept. 4, 2003)........................................19

*United States ex rel. Clausen v. Laboratory Corporation of America, Inc.,*
   290 F.3d 1301 (11th Cir. 2002) ....................................................21, 22, 25, 26, 34

*United States ex rel. Cox v. Iowa Health Sys.,*
   29 F. Supp. 2d 1022 (S.D. Iowa 1998) ..................................................................21

*United States ex rel. DeCarlo v. Kiewit/AFC Enters., Inc.,*
   937 F. Supp. 1039 (S.D.N.Y. 1996) ................................................................23, 26

*United States ex rel. Detrick v. Daniel F. Young, Inc.,*
   909 F. Supp. 1010 (E.D. Va. 1995) ........................................................................12

*United States ex rel. Dick v. Long Island Lighting Co.,*
   912 F.2d 13 (2d Cir. 1990) ..................................................................7, 10, 18

*United States ex rel. Doe v. Dow Chemical Co.,*
   343 F.3d 325 (5th Cir. 2003) ................................................................................21

*United States ex rel. Doe v. John Doe Corp.,*
   960 F.2d 318 (2d Cir. 1992) ..................................................................................9

*United States ex rel. Dunleavy v. County of Delaware,*
   123 F.3d 734 (3d Cir. 1997) ..................................................................................9

*United States ex rel. Findley v. FPC-Boron Employees' Club,*
   105 F.3d 675 (D.C. Cir. 1997)..............................................................................18

*United States ex rel. Fine v. Advanced Sciences, Inc.,*
   99 F.3d 1000 (10th Cir. 1996) ..............................................................................13

*United States ex rel. Garst v. Lockheed-Martin Corp.,*
   328 F.3d 374 (7th Cir. 2003) ................................................................................21

*United States ex rel. Gublo v. NovaCare, Inc.,*
 62 F. Supp. 2d 347 (D. Mass. 1999) ........................................................................21

*United States ex rel. Hafter v. Spectrum Emergency Care, Inc.,*
 190 F.3d 1156 (10th Cir. 1999) ........................................................................7, 10

*United States ex rel. Holmes v. Consumer Insurance Group,*
 318 F.3d 1199 (10th Cir. 2003) ........................................................................13

*United States ex rel. Jones v. Horizon Healthcare Corp.,*
 160 F.3d 326 (6th Cir. 1998) ........................................................................8, 17, 18

*United States ex rel. Karvelas v. Melrose-Wakefield Hospital,*
 360 F.3d 220 (1st Cir. 2004)........................................20, 21, 22, 26, 27, 28, 29, 30, 41

*United States ex rel. King v. Hillcrest Health Center,*
 264 F.3d 1271 (10th Cir. 2001) ........................................................................19

*United States ex rel. Kinney v. Stoltz,*
 327 F.3d 671 (8th Cir. 2003) ........................................................................9, 11

*United States ex rel. Kreindler & Kreindler v. United Technologies Corp.,*
 985 F.2d 1148 (2d Cir. 1993) ........................................................................8, 11, 16

*United States ex rel. LaCorte v. SmithKline Beecham Clinical Laboratories, Inc.,*
 96-cv-1380, 2000 WL 17838 (E.D. La. Jan. 10, 2000) ........................................27

*United States ex rel. Lissack v. Sakura Global Capital Markets, Inc.,*
 95-cv-1363, 2003 WL 21998968 (S.D.N.Y. Aug. 21, 2003)........................................9

*United States ex rel. Lujan v. Hughes Aircraft Co.,*
 162 F.3d 1027 (9th Cir. 1998) ........................................................................37, 38, 39

*United States ex rel. McAllan v. City of New York,*
 98-cv-3349, 1999 WL 280416 (S.D.N.Y. May 5, 1999) ........................................11, 33

*United States ex rel. Mikes v. Straus,*
 889 F. Supp. 746 (S.D.N.Y. 1995) ........................................................................43

*United States ex rel. Mikes v. Straus,*
 274 F.3d 687 (2d Cir. 2001) ........................................................................6, 31

*United States ex rel. Mistick PBT v. Housing Authority,*
 186 F.3d 376 (3d Cir. 1999) ........................................................................8, 15

*United States ex rel. North Santiam v. Kinross,*
  96-cv-3673, 1998 WL 118176 (N.D. Cal. Mar. 9, 1998) ...............................................6

*United States ex rel. O'Keefe v. McDonnell Douglas Corp.,*
  918 F. Supp. 1338 (E.D. Mo. 1996) ......................................................19

*United States ex rel. Ortega v. Columbia Healthcare, Inc.,*
  240 F. Supp. 2d 8 (D.D.C. 2003) .......................................................9

*United States ex rel. Pentagen Techs. International Ltd. v. CACI International Inc,*
  94-cv-2925, 1996 WL 11299 (S.D.N.Y. Jan. 4, 1996) ..............................................16

*United States ex rel. Pentagen Techs. International Ltd. v. CACI International Inc.,*
  96-cv-7827, 1997 WL 473549 (S.D.N.Y. Aug. 18, 1997)...................................8, 15

*United States ex rel. Phipps v. Comprehensive Community Development Corp.,*
  152 F. Supp. 2d 443 (S.D.N.Y. 2001) ..............................................6, 25

*United States ex rel. Precision Co. v. Koch Industries, Inc.,*
  971 F.2d 548 (10th Cir. 1992) ..........................................................9, 12

*United States ex rel. Ramseyer v. Century Healthcare Corp.,*
  90 F.3d 1514 (10th Cir. 1996) ...........................................................43

*United States ex rel. Reagan v. East Texas Medical Center Regional Healthcare System,*
  274 F. Supp. 2d 824 (S.D. Tex. 2003) ....................................................10

*United States ex rel. Riley v. Alpha Therapeutic Corp.,*
  96-cv-0704, 1997 WL 818593 (N.D. Cal. Nov. 10, 1997) .........................................25

*United States ex rel Russell v. Epic Healthcare Management Group,*
  193 F.3d 304 (5th Cir. 1999) .............................................................25

*United States ex rel. Schwartz v. Coastal Healthcare Group, Inc.,*
  No. 99-3105, 2000 WL 1595976 (10th Cir. Oct. 26, 2000) ..............................21

*United States ex rel. Settlemire v. District of Columbia,*
  198 F.3d 913 (D.C. Cir. 1999)........................................................17, 18

*United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.,*
  944 F.2d 1149 (3d Cir. 1991) .............................................................7, 15

*United States ex rel. Stone v. Rockwell International Corp.,*
  144 F.R.D. 396 (D. Colo. 1992) .........................................................19

*United States ex rel. Stone v. Rockwell International Corp.*,
   282 F.3d 787 (10th Cir. 2002) ................................................................................................19

*United States ex rel. Truong v. Northrup Corp.*,
   88-cv-967, 1991 U.S. Dist. LEXIS 21802 (C.D. Cal. Nov. 26, 1991) ................. .........38, 39

*United States ex rel. Vallejo v. Investronica, Inc.*,
   2 F. Supp. 2d 330 (W.D.N.Y. 1998)..........................................................................23, 42, 43

*United States ex rel. Walsh v. Eastman Kodak Co.*,
   98 F. Supp. 2d 141 (D. Mass. 2000) ......................................................................................23

*United States ex rel. Willard v. Humana Health Plan of Texas, Inc.*,
   336 F.3d 375 (5th Cir. 2003) .................................................................................................34

*United States v. Bank of Farmington*,
   166 F.3d 853 (7th Cir. 1999) .....................................................................................10, 17, 19

*United States v. New York Medical College*,
   252 F.3d 118 (2d Cir. 2001) ....................................................................................................7

*Valley Forge Christian College v. Americans United for Separation of Church & State*,
   454 U.S. 464 (1982).................................................................................................................45

*Wang v. FMC Corp.*,
   975 F.2d 1412 (9th Cir. 1992) .................................................................................................9

*Wannamaker v. Columbia Rope Co.*,
   713 F. Supp. 533 (N.D.N.Y. 1989).........................................................................................46

*Williams v. WMX Technologies, Inc.*,
   112 F.3d 175 (5th Cir. 1997) ..................................................................................................29

*Wilson v. Graham County Soil & Water Conservation District*,
   367 F.3d 245 (4th Cir. 2004) ..................................................................................................37

*Yuhasz v. Brush Wellman, Inc.*,
   341 F.3d 559 (6th Cir. 2003) ..............................................................................21, 28, 30, 41

*Zahodnick v. International Business Machines Corp.*,
   135 F.3d 911 (4th Cir. 1997) .................................................................. .............43

## STATUTES AND RULES

31 U.S.C. § 3729(b) .................................................................................................6

31 U.S.C. § 3730(b)(1) ...........................................................................................5

31 U.S.C. § 3730(b)(4)(A) .......................................................................................5

31 U.S.C. § 3730(b)(4)(B) .......................................................................................5

31 U.S.C. § 3730(e)(4) .................................................................................6, 10, 18, 19

31 U.S.C. § 3730(h) ...........................................1, 4, 36, 37, 38, 39, 41, 44, 45

31 U.S.C. § 3731(b)(1) ......................................................................................37, 38, 39

31 U.S.C. § 3731(b)(2) .........................................................................................38

Fed. R. Civ. Pro. 9(b) ............................................................... 1, 7, 20-30, 36

Fed. R. Civ. Pro. 12(b)(1) ...................................................................................1, 6

Fed. R. Civ. Pro. 12(b)(6) ......................................................1, 7, 31, 36, 41, 45

Fed. R. Civ. Pro. 12(h)(3) ....................................................................................1, 6

42 C.F.R. § 414.20 ...........................................................................................32, 34

42 C.F.R. § 415.102 ..........................................................................................33, 34

42 C.F.R. § 415.120 .............................................................................................34

42 C.F.R. § 415.152 .............................................................................................32

42 C.F.R. § 415.180 .............................................................................................32

42 C.F.R. § 415.208 .............................................................................................33

Conn. Gen. Stat. § 31-51m(b) ..............................................................................40

Conn. Gen. Stat. § 31-51m(c) ..............................................................................40

Conn. Gen. Stat. § 31-51q ......................................................................................5

Conn. Gen. Stat. § 52-597 ................................................................................................47

S. Rep. No. 99-345 (1986) ..........................................................................................38, 39

## SECONDARY SOURCES

RESTATEMENT (SECOND) OF TORTS § 558 ..........................................................................45

RESTATEMENT (SECOND) OF TORTS § 580B .........................................................................45

John T. Boese, CIVIL FALSE CLAIMS AND QUI TAM ACTIONS § 4.11[A] (2d ed. 2004) ................39

Eric J. Holder, Jr., Deputy Attorney General, Guidance on the Use of the False Claims
    Act in Civil Healthcare Matters (June 3, 1998) ......................................................31

Medicare Claims Processing Manual, Ch. 13, § 20.1 ................................................33

Medicare Carriers Manual § 2020.8(C) (1999) ..........................................................34

Pursuant to Rules 9(b), 12(b)(1), 12(b)(6), and 12(h)(3) of the Federal Rules of Civil

Procedure, Defendants Yale University ("Yale") and Yale-New Haven Hospital, Inc. ("YNHH")

(collectively, "Defendants") respectfully submit this memorandum of law in support of their

motion to dismiss the Second Amended Complaint.[1]

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff-Relator Robert Smith, M.D. ("Smith"), a radiologist and former professor at

Yale Medical School, has filed a *qui tam* action under the False Claims Act ("FCA"), 31 U.S.C.

§ 3729 *et seq.* Smith seeks to recover damages and civil penalties based on claims that

Defendants engaged in Medicare fraud. Smith also seeks to recover for retaliation under 31

U.S.C. § 3730(h) and for defamation.

### A.    Smith's Employment with Yale

Smith began his employment with Yale in July 1990 as an Instructor in the Department of

Diagnostic Imaging. (2d Am. Compl. ¶ 7.) Smith was appointed an Assistant Professor in July

1991 and an Associate Professor in July 1996. (Id.) Smith resigned from Yale effective June 30,

1999. (Id. ¶¶ 7, 99.)

In September 1998, Smith began a sabbatical from Yale, during which time he was

looking for another job and working on a book (Doyle Decl. Ex. A ¶¶ 72-73, 152), and with the

---

[1] The well-pleaded allegations of the Second Amended Complaint are assumed to be true solely for the purposes of the motion to dismiss under Rule 12(b)(6). In deciding the 12(b)(6) motion to dismiss, however, the Court may take "judicial notice of pleadings in other lawsuits," Rothman v. Gregor, 220 F.3d 81, 92 (2d Cir. 2000), and "the relevant entirety of a document integral to or explicitly relied upon in the complaint . . . without converting the motion into one for summary judgment." Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996); San Leandro Emergency Med. Group Profit Sharing Plan v. Phillip Morris Cos., 75 F.3d 801, 808-09 (2d Cir. 1996) (same). With respect to the motion to dismiss under Rules 12(b)(1) and 12(h)(3) for lack of subject matter jurisdiction, however, the Court is not limited by the allegations in the pleadings. Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998) ("[I]t was error for the district court to accept the mere allegations of the complaint as a basis for finding subject matter jurisdiction.") "Affidavits or other evidence outside the pleadings may be used by either party to challenge or support subject matter jurisdiction." Fisher v. FBI, 94 F. Supp. 2d 213, 215 (D. Conn. 2000); see also Antares Aircraft, L.P. v. Fed. Republic of Nigeria, 948 F.2d 90, 96 (2d Cir. 1991).

exception of a few days in January 1999, Smith never returned to work at Yale (Doyle Decl. Ex.

A ¶¶ 81, 117).  On February 8, 1999, Smith accepted an offer of employment for a position at

Cornell Medical College, New York Presbyterian Hospital ("Cornell") in New York City.

(Doyle Decl. Ex. B.)  Smith has since left Cornell.  (2d Am. Compl. ¶ 7.)

**B.**     **Smith's Medicare Fraud Allegations**

Although vague and disorganized, Smith's Medicare fraud allegations appear to fall into

three basic categories:  (1) allegations that Defendants billed for studies for which the signing

radiologist did not review the associated image and/or the preliminary report, including alleged

billing for (a) the "clean up project," (b) the use of the "Autosign" function on the hospital

computer system, and (c) the review of reports of neuroradiology fellows; (2) allegations that

Defendants billed for studies by radiologists who were not qualified teaching physicians; and

(3) allegations that Defendants billed for medically unnecessary studies, including alleged billing

for old studies and unnecessary panels of studies in the emergency room.

**1.**     **Smith Claims That Defendants Billed for Studies for Which the Signing Radiologist Did Not Review the Associated Image and/or the Preliminary Report.**

Smith points to fraudulent activity that allegedly took place during a period from July 1,

1997, through June 30, 1998, between the hours of 5 pm and 11 pm, when residents were being

supervised by neuroradiology fellows in the emergency department at YNHH.  (2d Am. Compl.

¶¶ 83-87.)  Yale faculty members in the Department of Radiology were assigned to finalize

reports of radiology studies taken in the emergency department during those hours.  (Id.)  Smith

claims that the faculty physicians did not review the reports or associated images when they

signed off on them.  (Id.)  Smith admits that he does not have personal knowledge of whether the

reports or images were in fact reviewed by the faculty members or whether Defendants sought

reimbursement, and Smith has no basis to claim that the neuroradiology fellows could not have billed in their own names at the same level of reimbursement. Smith, nonetheless, claims that Defendants committed Medicare fraud.

Smith also points to a "clean up project" that took place between March and May 1998 and involved the finalization of reports by Yale faculty members after the films had been reviewed by volunteer faculty members. (Id. ¶¶ 58-65, 80-82.) Smith claims that Yale sought reimbursement even though the Yale faculty members did not review the reports or the associated images. (Id.) Smith's allegations principally involve a complaint by Dr. Morton Burrell. (Id. ¶¶ 62-65, 80-82.) Although Smith does not claim that he was directly involved in the clean up project or has any knowledge of whether Defendants sought reimbursement for the finalized reports, Smith claims that the clean up project involved fraudulent claims to Medicare.

Smith also points to the use of the "Autosign" function to finalize reports on the hospital computer system. (Id. ¶¶ 20, 57-61, 66-74, 76-78.) Smith claims that Yale radiologists were signing off on reports by using "Autosign" even though they did not in fact review the reports or the associated images. (Id.) Smith claims that since January 1, 1998, at least 1,594 reports of radiological studies were finalized using "Autosign." (Id. ¶ 71.) As Smith well knows, in that he quotes directly from the email notifying him of such (id. ¶ 58), Autosign was created for the express purpose of flagging preliminary reports for which the slides had been lost before the attending could review them so that Medicare would not be billed.

2.    **Smith Claims That Defendants Billed for Studies by Radiologists Who Were Not Qualified Teaching Physicians.**

Smith further claims that "reports by residents and fellows were finalized by . . . outside clinical attending physicians . . . who are not authorized to bill Medicare as Teaching

Physicians." (2d Am. Compl. ¶ 75.) Smith claims that if reports are not finalized by someone whom he deems to be a "qualified radiologist," billing for such reports constitutes Medicare fraud. (<u>Id</u>. ¶ 78.) In addition to failing to identify any specific claims for reimbursement, Smith completely misinterprets the applicable Medicare regulations. The finalization of reports by outside clinical attending physicians falls squarely within the bounds of permissible billing practices and does not constitute the filing of a false claim. Furthermore, a physician's level of experience and area of specialization are not considered when determining whether a service is reimbursable or the amount of reimbursement.

### 3.   <u>Smith Claims That Defendants Billed for Medically Unnecessary Studies.</u>

Smith claims that since about 1995, YNHH had physicians review and finalize what he refers to as "old studies." (2d Am. Compl. ¶¶ 55-56.) Smith claims that the reports were finalized after they were no longer medically necessary. (<u>Id</u>.) Although he does not refer to any specific reports that were finalized and submitted for reimbursement, Smith claims that Defendants committed Medicare fraud.

Smith further claims that certain panels of diagnostic tests were routinely ordered, regardless of whether medically indicated. (<u>Id</u>. ¶¶ 89-92.) Again, failing to identify what tests were administered to which patients and why they were unnecessary, much less what bills were submitted for reimbursement, Smith claims that Defendants committed Medicare fraud.

### C.   <u>Smith's Retaliation and Defamation Allegations</u>

Smith claims that, because of his complaints about Defendants' alleged Medicare fraud, he was discriminated against in the terms and conditions of his employment and retaliated against in violation of 31 U.S.C. § 3730(h). Specifically, Smith alleges that he was harassed, received a cut in salary, was "stripped" of certain positions and titles, was "interfered with" in his

attempts to obtain alternative employment, and was "forced" to give up his research work, resign and leave the state of Connecticut. (2d Am. Compl. ¶ 99(a)-(h).) Smith further alleges that certain individuals associated with Defendants made defamatory statements about him to his colleagues and to persons at Cornell, Northwestern, and Boston University. (Id. ¶ 105.)

### D.  Smith's Connecticut State Court Action

On January 7, 2000 – more than six months before filing this action – Smith and two other physicians filed an action in Connecticut state superior court against Yale. See Burrell v. Yale Univ., 00-cv-0159421-S (Conn. Super. Waterbury Dist.) (the "State Court Action"). In a 61-page complaint comprising 209 paragraphs, Smith asserted claims for retaliation under Section 31-51q of the Connecticut General Statutes, breach of contract, and constructive discharge. (Doyle Decl. Ex. A.) Interspersed with a host of allegations about personal slights and employee grievances, the State Court Action complaint includes the same allegations of Medicare fraud asserted in this action.

## ARGUMENT

## FALSE CLAIMS ACT - SECTION 3729 CLAIMS

### I.   ELEMENTS OF AN FCA CLAIM

Under the FCA, an individual is authorized to "bring a civil action for a violation of [the Act] for the [complaining] person and for the United States Government." 31 U.S.C. § 3730(b)(1). The action is brought in the name of the government, and the government may either intervene and prosecute the action, § 3730(b)(4)(A), or allow the relator to proceed alone with the suit under § 3730(b)(4)(B). In this action, the government declined to intervene. (Government Notice of Election, Sept. 16, 2003.)

ny-559915                                    5

To impose liability under the FCA, Smith must show that Defendants (1) made a claim (2) to the United States government (3) that is false or fraudulent (4) knowing of its falsity and (5) seeking payment from the federal treasury. United States ex rel. Mikes v. Straus, 274 F.3d 687, 695 (2d Cir. 2001). In the Medicare fraud context, "[l]iability under the Act may properly be found . . . when a defendant submits a claim for reimbursement while knowing – as that term is defined by the Act, see 31 U.S.C. § 3729(b) – that payment expressly is precluded because of some noncompliance. . . ." Id. at 700. "[P]resenting a claim known to be false does not mean the claim is incorrect as a matter of proper accounting, but rather means it is a lie." Id. at 703.

## II.    PURSUANT TO THE PUBLIC DISCLOSURE BAR, THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE FCA CLAIMS.

Because Smith's FCA claims are based on publicly disclosed information for which Smith is not an "original source," the Court lacks subject matter jurisdiction under 31 U.S.C. § 3730(e)(4), such that his claims must be dismissed under Rules 12(b)(1) and 12(h)(3).[2]

The FCA's public disclosure bar is set forth in 31 U.S.C. § 3730(e)(4), which provides:

(A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

(B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

---

[2] Once the factual basis of a plaintiff's claim of subject matter jurisdiction has been challenged, the plaintiff bears the burden of establishing that jurisdiction exists. See Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994); Fisher v. FBI, 94 F. Supp. 2d 213, 215 (D. Conn. 2000). Smith "has the ultimate burden of proving the Court's jurisdiction by a preponderance of the evidence." United States ex rel. Phipps v. Comprehensive Cmty. Dev. Corp., 152 F. Supp. 2d 443, 449 (S.D.N.Y. 2001). "Courts construe the FCA jurisdictional restriction strictly against finding jurisdiction." United States ex rel. North Santiam v. Kinross, 96-cv-3673, 1998 WL 118176, at *3 (N.D. Cal. Mar. 9, 1998).

A court lacks subject matter jurisdiction under the public disclosure bar where there has been a prior public disclosure of the information on which the claims are based, and the relator: (1) does not have direct and independent knowledge of the information and (2) has not voluntarily provided the information to the government before: (i) the public disclosure occurs and (ii) the relator files the action.

### A.    Prior to Filing the Original Complaint, the Allegations Therein Had Been Publicly Disclosed.

The first step in the public disclosure bar analysis is to determine whether there has been a public disclosure. United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co., 944 F.2d 1149, 1168 n.1 (3d Cir. 1991) ("[S]ection (e)(4)(A) applies to any enumerated public disclosure prior to the filing of a qui tam action based in some part upon that information, regardless of whether the relator possessed the information before its disclosure"); see also United States ex rel. Dick v. Long Island Lighting Co., 912 F.2d 13, 16 (2d Cir. 1990).

In this case, the public disclosure took place no later than January 7, 2000, with the filing of the State Court Action by Smith and his co-plaintiffs, more than six months prior to the filing of this action. Civil case filings, such as the complaint in the State Court Action, constitute public disclosures. See, e.g., United States v. New York Med. Coll., 252 F.3d 118, 120 (2d Cir. 2001) (affirming dismissal of complaint under Rule 12(b)(6) and Rule 9(b) on grounds that relators did not establish they were original source of information that they previously disclosed in a publicly filed state court complaint); see also United States ex rel. Hafter v. Spectrum

Emergency Care, Inc., 190 F.3d 1156, 1162 (10th Cir. 1999); United States ex rel. Jones v.

Horizon Healthcare Corp., 160 F.3d 326, 331 (6th Cir. 1998).[3]

**B.    The Publicly Disclosed Allegations Are Substantially Similar to the Allegations in this Action.**

The second step in the public disclosure bar analysis is to compare the allegations in the

*qui tam* action with the publicly disclosed allegations.  The public disclosure bar applies when an

action is based "in any part upon publicly disclosed allegations or transactions. . . ." United

States ex rel. Kreindler & Kreindler v. United Techs. Corp., 985 F.2d 1148, 1158 (2d Cir. 1993);

see also United States ex rel. Pentagen Techs. Int'l Ltd. v. CACI Int'l Inc., 96-cv-7827, 1997 WL

473549, at *6 (S.D.N.Y. Aug. 18, 1997) ("The jurisdictional bar will apply if the action is based

in any part on public information, even if it also relies on information obtained through

independent investigation.").

The publicly disclosed allegations need not mirror the allegations in the *qui tam* action.

Rather, allegations in a *qui tam* action are considered publicly disclosed when they share a

substantial identity with the publicly disclosed allegations.  United States ex rel. Mistick PBT v.

Hous. Auth., 186 F.3d 376, 385 (3d Cir. 1999) (recognizing that all circuits other than the Fourth

---

[3] The allegations were also publicly disclosed in the news media. See, e.g., Paul Zielbauer, Doctors Sue Yale, Saying Cost Cuts Hurt Patients and Complaints Led to Backlash, N.Y. Times (April 30, 2000) ("[T]he suit charges [that] the chairman of Yale's radiology department . . . directed doctors to sign a backlog of radiology studies, some as old as two years, on Yale-New Haven patients whom the doctors had never treated. Shortly after that, the suit says, Dr. McClennan began ordering residents – doctors with less than four years of experience – to examine X-rays of emergency room patients, which the suit contends is unethical and a violation of Medicare laws."); Yale University Targeted in Doctors' Lawsuit, Associated Press (April 30, 2000) ("[T]he suit says, Dr. McClennan began ordering residents - doctors with less than four years of experience - to examine X-rays of emergency room patients, which the suit contends is unethical and a violation of Medicare laws."); Lisa Maxbauer, Radiologist's Suit Charges Yale with Substandard Care, Physician's Weekly, Vol. XVII, No. 32 (June 12, 2000) ("They also charge that the department's chairman . . . improperly allowed Medicare to be billed for imaging studies that were never reviewed by the faculty member whose names appeared in the records"); Thomas Scheffey, A Case of Patient Care or Employment Law?, Connecticut Law Tribune (June 19, 2000) ("His 60-page complaint . . . alleges that doctors were pressured to sign off on X-rays they had never seen, in violation of Medicaid rules.") (Doyle Decl. Exs. C-F.)

ny-559915                                      8

Circuit have held that "based upon" means "supported by" or "substantially similar to") (citing United States ex rel. Doe v. John Doe Corp., 960 F.2d 318, 323 (2d Cir. 1992)).[4]

The allegations in the original complaint in this action ("Compl.") and the allegations of Medicare fraud in the complaint filed in the State Court Action are virtually identical.[5] Specifically, the State Court Action complaint includes allegations that: (1) Defendants billed for studies for which the signing radiologist did not review the associated image and/or the preliminary report (Doyle Decl. Ex. A ¶¶ 26-45, 124-129, 132, 145); (2) Defendants billed for studies by radiologists who were not qualified (id. Ex. A ¶¶ 74, 95, 126); and (3) Defendants billed for medically unnecessary studies (id. Ex. A ¶¶ 46-55, 157). Smith makes virtually identical allegations in this action. (Compl. ¶¶ 73-80, 90, 93-99; see also 2d Am. Compl. ¶¶ 58-65, 75, 78, 80-92.)[6]

---

[4] Put another way, a public disclosure occurs when "'either the allegations of fraud or the elements of the underlying transaction' are publicly disclosed." United States ex rel. Lissack v. Sakura Global Cap. Mkts., Inc., 95-cv-1363 (BSJ), 2003 WL 21998968, at *10 (S.D.N.Y. Aug. 21, 2003) (quoting United States ex rel. Dunleavy v. County of Del., 123 F.3d 734, 740 (3d Cir. 1997)); see also United States ex rel. Precision Co. v. Koch Indus., Inc., 971 F.2d 548, 552-54 (10th Cir. 1992) (holding a qui tam action is based on a public disclosure when its allegations share a substantial identity with the allegations in prior litigation); Wang v. FMC Corp., 975 F.2d 1412, 1417 (9th Cir. 1992) (holding the test for the public disclosure bar is whether the relator's allegations "fairly characterized" the publicly disclosed information).

[5] Where, as here, the relator has amended the complaint, the Court looks to the initial complaint in determining subject matter jurisdiction. See United States ex rel. Kinney v. Stoltz, 327 F.3d 671, 675 (8th Cir. 2003) ("If Kinney had possessed direct knowledge of the asserted fraud . . . he was obligated to identify them in his initial complaint"); United States ex rel. Ortega v. Columbia Healthcare, Inc., 240 F. Supp. 2d 8, 14 (D.D.C. 2003) (using the original complaint as the basis for making subject matter jurisdiction determinations); United States ex rel. Ackley v. IBM, 76 F. Supp. 2d 654, 659 (D. Md. 1999) (holding that because "the First and Second Amended Complaints were formulated after Ackley had the benefit of discovery . . . they may well contain information obtained by way of discovery that skews the picture of what information Ackley actually derived from public disclosures and what he may be an original source of"); see also Newman-Green, Inc. v. Alfonzo Laraine, 490 U.S. 826, 831-32 (1989) (complaint cannot be amended to alter defects in jurisdictional facts to produce jurisdiction where none existed).

[6] Additional allegations of the same nature are immaterial to the analysis. See Fed. Recovery Servs., Inc. v. United States, 72 F.3d 447, 451 (5th Cir. 1995) ("FRS cannot avoid the jurisdictional bar simply by adding other claims that are substantively identical to those previously disclosed in the state court litigation.")

**C.**    **Smith Is Not an "Original Source" of the Allegations in the Original Complaint.**

The third step in the public disclosure bar analysis is determining whether the relator is an

original source.  Under the FCA, a relator may maintain a *qui tam* action based on publicly

disclosed allegations of fraud or fraudulent transactions <u>only</u> if the relator qualifies as "an

original source of the information." 31 U.S.C. § 3730(e)(4)(A).  To qualify as an original source,

a relator must (1) have had direct and independent knowledge of the information on which the

allegations are based <u>and</u> (2) have voluntarily provided the information to the government in a

timely manner.  <u>See</u> <u>Dick</u>, 912 F.2d at 16; <u>United States v. Bank of Farmington</u>, 166 F.3d 853,

865 (7th Cir. 1999).  Courts properly dismiss FCA claims where the relator does not establish

that he or she is the original source of publicly disclosed information.

**1.**    **Smith Has Not Sufficiently Alleged "Direct and Independent" Knowledge of the Information on Which the FCA Claims Are Based.**

Although Smith makes a cursory allegation that he has "direct and independent

knowledge of the allegations in the Complaint" (Compl. ¶ 7; <u>see also</u> 2d Am. Compl. ¶ 7), this is

insufficient to meet his obligation to show that the Court has jurisdiction.  <u>Hafter</u>, 190 F.3d at

1162 (holding complaint which merely stated that plaintiff has "direct and independent

knowledge of the information upon which this suit is based" states only an "unsupported,

conclusory allegation" that is insufficient to establish jurisdiction).

It is fundamental that a relator "must allege specific facts – as opposed to mere

conclusions – showing exactly how and when he or she obtained direct and independent

knowledge of the fraudulent acts alleged." <u>Hafter</u>, 190 F.3d at 1162; <u>United States ex rel.</u>

<u>Reagan v. East Tex. Med. Ctr. Reg'l Healthcare Sys.</u>, 274 F. Supp. 2d 824, 853 (S.D. Tex. 2003)

("[T]o establish her standing to prosecute a qui tam claim, a relator must show more than

evidence of a meritorious fraud claim. She must also demonstrate that her knowledge of the alleged fraud is both 'direct' and 'independent.'"). Thus, to establish that he had "direct and independent" knowledge of the information when he filed the Original Complaint, Smith must describe in detail: (1) the information that he possessed; (2) how he obtained the information; and (3) when he obtained the information.

"Direct knowledge" means knowledge that is firsthand and unmediated by anything but the plaintiff's own labor. See, e.g., Kreindler & Kreindler, 985 F.2d at 1159 (FCA bars any claim where a third party is the source of information underlying that claim); Kinney, 327 F.3d at 674 ("[A] relator has direct knowledge when he sees it with his own eyes"); Hays v. Hoffman, 325 F.3d 982, 990 (8th Cir. 2003) (relator who described himself as a "close observer" of information that was obtained second-hand was not an original source). For instance, in United States ex rel. Aflatooni v. Kitsap Physicians Servs., 163 F.3d 516, 526 (9th Cir. 1999), the court held that a physician who "could not recall the name of any [M]edicare patient who was allegedly charged for unnecessary medical services" did not establish direct knowledge of the alleged fraud and could not be considered an original source. Smith has not come close to alleging, much less establishing, that he has direct knowledge of any of the alleged fraudulent conduct.

"Independent knowledge" means knowledge that is not dependent on public disclosures. For instance, a relator with information obtained through litigation may not claim to have independent knowledge of those allegations in a subsequent *qui tam* suit. Kreindler & Kreindler, 985 F.2d at 1158 (relator who obtained information through disclosures in litigation did not have independent knowledge); Kinney, 327 F.3d at 673 (relator who received information from depositions did not have direct and independent knowledge); see also United States ex rel. McAllan v. City of New York, 98-cv-3349, 1999 WL 280416, at *6 (S.D.N.Y. May 5, 1999)

("While plaintiff may have learned about the billing practices . . . as a direct result of his position, such practices could easily have been uncovered from other sources [such that] plaintiff's knowledge could not have been independent; therefore, plaintiff cannot be deemed an 'original source.'"). Because he learned the facts through discovery in the State Court Action, Smith does not have independent knowledge of many of the allegations on which he seeks to base his FCA claims.

Finally, the "information" provided to the government, of which the relator has "direct and independent" knowledge, must itself be sufficient to plead an FCA claim. Precision Co., 971 F.2d at 553. In other words, the relator must have had "direct and independent" knowledge of the "'who, what, when, where, and how' of the fraud" that is provided to the government. See United States ex rel. Detrick v. Daniel F. Young, Inc., 909 F. Supp. 1010, 1019 (E.D. Va. 1995) ("Rule 9 and Rule 11 [are the] appropriate standards for judging the sufficiency of a putative relator's direct and independent knowledge.") Smith has not properly alleged information sufficient to support an FCA claim, much less what information he provided to the government or whether he had "direct and independent" knowledge of the information.

### a.   Smith Does Not Have Direct and Independent Knowledge of the Allegations in the Complaint Involving Conduct That Is Alleged to Have Occurred After Smith Left Yale.

Many of the allegations involve events that allegedly took place at Yale after June 30, 1999, when Smith left to take a position at Cornell. (Compl. ¶¶ 7, 83-91; see also 2d Am. Compl. ¶¶ 7, 68-76, 79-81.) Smith certainly could not have "direct and independent knowledge" of any of the post-June 1999 allegations.[7] If Smith obtained the post-June 1999 information

---

[7] Many of the allegations also involve conduct that is alleged to have occurred after September 1998, when Smith left for a sabbatical from which, except for a few days in January 1999, he was never to return to work at Yale. (Doyle Decl. Ex. A ¶¶ 72-73, 81, 117, 152.)

through discovery in the State Court Action, as a matter of law, Smith does not have "independent" knowledge of the information. If Smith obtained the post-June 1999 information outside of discovery in the State Court Action, he must have obtained the information from third parties, and therefore Smith does not have "direct" knowledge of the information.

Furthermore, some of Smith's claims involve investigations in which he did not personally participate or – if his allegations are true – in which he engaged without proper authority and quite possibly in violation of the law. For instance, Smith claims that he "reviewed a series of radiology reports in the DecRad System [which had been] finalized for the period from January 1, 1998 to May 2000. . . ." and proceeds to discuss the findings of his "investigation." (Compl. ¶¶ 83-91; see also 2d Am. Compl. ¶¶ 68-76.) Smith does not explain how, almost a year after leaving for a position at Cornell, he obtained access to Defendants' computer system, which contains highly confidential patient information.

### b.    Smith Does Not Have Direct and Independent Knowledge of Facts Alleged in the Complaint That He Claims to Have Obtained from Third Parties.

Many of the allegations are based on information obtained from third parties. It is, however, fundamental that "to be independent, the relator's knowledge must not be derivative of the information of others, even if those others may qualify as original sources." United States ex rel. Fine v. Advanced Scis, Inc., 99 F.3d 1000, 1007 (10th Cir. 1996); United States ex rel. Barth v. Ridgedale Elec., Inc., 44 F.3d 699, 703 (8th Cir. 1995) ("[A] person who obtains secondhand information from an individual who has direct knowledge of the alleged fraud does not himself possess direct knowledge and therefore is not an original source."); Hays v. Hoffman, 325 F.3d 982, 991 (8th Cir. 2003) (information obtained from co-worker "is neither direct nor independent"); United States ex rel. Holmes v. Consumer Ins. Group, 318 F.3d 1199, 1207 (10th

ny-559915                                          13

Cir. 2003) (parasitic lawsuits include those "based on knowledge obtained secondhand through other employees.")

For instance, with respect to his claims about billing for reports prepared by neuroradiology fellows (Compl. ¶ 94; <u>see also</u> 2d Am. Compl. ¶¶ 83-88), Smith has admitted that he does not have direct and independent knowledge of the alleged fraudulent activities. In a filing in the State Court Action, Smith concedes that he "<u>did not directly observe or participate</u>. . . ." (Doyle Decl. Ex. G at 2 (emphasis added).) Smith recently testified in the State Court Action that he has no first hand knowledge about this alleged activity. (<u>Id</u>. Ex. H at 8-9.) Moreover, in another submission in the State Court Action, Smith concedes that he "<u>do[es] not claim that Yale billed for these studies</u>. . . ." (<u>Id</u>. Ex. I at 5 (emphasis added).)

With respect to his claims regarding "Autosign" (Compl. ¶¶ 20, 72-76, 81-89, 91-93; <u>see also</u> 2d Am. Compl. at ¶¶ 20, 57-61, 66-74, 76-78), Smith testified in the State Court Action that he personally has no idea whether Defendants submitted any false claims for such reports.

Q:    . . . . Yale University wasn't billing, you understood that?

A:    I don't know.

Q:    Well, they said they weren't, you dispute that?

A:    I have no idea.

Q:    I see. You don't claim that they were billing for Auto Sign, do you?

A:    <u>I'm not claiming one way or the other. I don't know.</u>

(Doyle Decl. Ex. J at 521:4-13) (emphasis added).)

Likewise, with respect to his claims about billing for medically unnecessary panels of tests (Compl. ¶¶ 96-99; <u>see also</u> 2d Am. Compl. at ¶¶ 89-92), Smith again admits that he does not have personal knowledge of any fraudulent claims being made:

Q:    Doctor, can we agree that this paragraph 5 that you've just gone through does not instruct residents to perform all radiologic examinations ordered by the emergency department, regardless of their medical necessity?

A:    It doesn't say that. <u>You'd have to ask the residents</u>. They're the ones who would have to deal with it.

*        *        *

Q:    . . . [A]nd as a result of the discussions in the department, that memo, with the offensive language in paragraph 5, never was put into effect, was it?

A:    <u>No, I have no way of knowing</u>.

(Doyle Decl. Ex. K at 604:5-11, 607:10-14) (emphasis added).)

Finally, with respect to the allegations regarding the "clean up project," it is clear from the face of the Complaint that the allegations are based on secondhand information from Dr. Burrell. (Compl. ¶¶ 77-80; <u>see also</u> 2d Am. Compl. ¶¶ 62-65.) Thus, Smith again cannot claim to be the original source of these allegations.

c.    **Smith Cannot Have Direct and Independent Knowledge of Facts Alleged in the Second Amended Complaint Obtained through Discovery in the State Court Action.**

With respect to the newly pled allegations in the Second Amended Complaint, a large portion of these obviously come directly from discovery in the State Court Action. (2d Am. Compl. ¶ 85 ("A review of Defendants' records provided thus far has revealed . . . ."); (<u>id.</u> ¶ 88 ("See e.g., recent admission of Dr. Gordon Sze.").) Such information obtained through civil discovery constitutes a public disclosure. <u>See, e.g., Stinson</u>, 944 F.2d at 1158 (holding discovery exchanged between private parties but not filed with the court is "publicly disclosed" because it is potentially accessible to the public); <u>Mistick PBT</u>, 186 F.3d at 385 (holding public disclosure occurred through civil discovery in state court action); <u>Pentagen Techs. Int'l</u>, 1997 WL 473549,

at *9 ("Allegations arising from information disclosed during civil litigation are considered publicly disclosed.").

Where such information has been publicly disclosed in prior litigation, it is fundamental that a relator may not claim in a subsequent *qui tam* suit to have independent knowledge of the information. Kreindler & Kreindler, 985 F.2d at 1158 (relator who obtained information through disclosures in litigation did not have independent knowledge). Yale, not Smith, would be the original source of any information produced during the State Court Action. See United States ex rel. Pentagen Techs. Int'l Ltd. v. CACI Int'l Inc., 94-cv-2925, 1996 WL 11299, at *8 (S.D.N.Y. Jan. 4, 1996) ("[T]he Second Circuit holds that the party divulging the information deemed publicly disclosed by litigation papers, such as depositions, is the original source of that information despite the fact that another party initiated the court proceeding as part of its discovery investigation") (citing United States ex rel. Kreindler & Kreindler v. United Techs. Corp., 985 F.2d 1148 (2d Cir. 1993)). As a matter of law, Smith cannot be considered an original source of information obtained through discovery in the State Court Action.

        d.    **Smith Does Not Have Direct and Independent Knowledge of Allegations in the Complaint That Are Based on Information and Belief.**

Many of the allegations in the Original Complaint are pled "on information and belief." (Compl. ¶¶ 20, 54, 56, 66, 87, 92-95; see also 2d Am. Compl. ¶¶ 20, 69, 72, 77-78, 82-83, 87-88.) For instance, the allegations about the review of reports of neuroradiology fellows are made entirely on information and belief. (Compl. ¶ 94.) A relator cannot claim to have "direct and independent knowledge" of a factual allegation if he can do no better than plead it on information and belief. To be an original source, Smith must have direct and independent knowledge of facts, not mere suspicions.

ny-559915               16

**2.**     <u>There Is No Evidence That Smith Voluntarily Provided the Information Underlying the Complaint to the Government in a Timely Manner.</u>

To qualify as an original source, Smith must also establish that he provided the information on which his complaint is based to the government in a timely manner. <u>See</u> <u>Bank of Farmington</u>, 166 F.3d at 866 ("Do we really want a rule which says: Get your *qui tam* claim in quickly? The short answer is yes, because that is the rule Congress adopted.") The "intent of the Act . . . is to encourage private individuals who are aware of fraud against the government to bring such information forward at <u>the earliest possible time</u>." <u>Barth</u>, 44 F.3d at 704 (emphasis added); <u>see also</u> <u>Jones</u>, 160 F.3d at 335 ("*[Q]ui tam* provisions were intended not only to block freeloading relators, but also to inspire whistleblowers to come forward as soon as possible.").

Although Smith makes a cursory allegation that he provided his information to the government before bringing this suit (Compl. ¶ 7; <u>see also</u> 2d Am. Compl. ¶ 7), Smith fails to allege what information he provided to the government or when he provided it.[8] Smith's vague allegations do not meet his burden to establish that he brought the allegations in the Original Complaint to the attention of the government in a timely manner. <u>United States ex rel. Settlemire v. District of Columbia</u>, 198 F.3d 913, 920 (D.C. Cir. 1999) ("[A]s it is patently clear that Settlemire did not present evidence of voluntary disclosure, we affirm the district court's holding that Settlemire cannot qualify as an original source on those grounds alone.").

---

[8] Smith recently testified in the State Court Action that he went to the United States Attorney's Office in September or October 1998, but he refused to give any details about what was discussed. (Doyle Decl. Ex. K at 654:12-15, 662:4-24.) In a pleading filed in the State Court Action on January 8, 2002, Smith, however, suggests that the full extent of his allegations were not brought to the attention of the government in a timely manner, stating, "[t]he United States Department of Justice has had the opportunity to investigate the claims set forth in the False Claims Act case for over a year and possibly more." (Doyle Decl. Ex. L at 12.) Even if Smith in fact provided some information to the Government in the Fall of 1998, he nonetheless has failed to provide detail sufficient to permit the Court to compare those disclosures to the allegations in the Original Complaint.