UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

| | | |
|---|---|---|
| UNITED STATES<br>ex rel. ROBERT C. SMITH, M.D., | : | Civil Action<br>No. 3:00-cv-01359(PCD) |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| YALE UNIVERSITY and YALE-NEW HAVEN<br>HOSPITAL, INC., | : | |
| | : | August 30, 2004 |
| Defendants. | : | |
| | : | |

**PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANTS YALE UNIVERSITY AND
YALE NEW HAVEN HOSPITAL, INC. TO DISMISS THE SECOND AMENDED
COMPLAINT**

**INTRODUCTION**

Plaintiff-Relator, Robert C. Smith, M.D. ("Plaintiff"), through his undersigned counsel,

hereby opposes the Motion of Defendants Yale University ("Yale") and Yale New Haven Hospital,

Inc. ("YNHH") to Dismiss the Second Amended Complaint, dated July 15, 2004. The Second

Amended Complaint contains two causes of action under the False Claims Act, 29 U.S.C. § 3729 *et*

*seq.*, through which Plaintiff seeks to recover damages and civil penalties from Defendants for their

violations of the False Claims Act. The Second Amended Complaint also contains one claim for

defamation. Count One alleges that Defendants fraudulently submitted false claims to Medicare and

Medicaid for reimbursement for services that were (1) worthless and not used for patient diagnosis

or treatment, (2) not medically indicated and medically unnecessary, (3) substandard, and/or (4)

never actually provided. Count Two alleges that Defendants illegally retaliated against Plaintiff

because of his investigation and reporting of Defendants' fraudulent practices. Count Three alleges

1

that Defendants, through their representatives, made false and defamatory statements about Plaintiff to others in the medical community.

Defendants move this Court to dismiss all three Counts in the Second Amended Complaint pursuant to Rules 12(b)(1), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff hereby opposes Defendants' Motion to Dismiss as none of the arguments made by Defendants warrants dismissal. First, Defendants' reliance upon Rule 12(b)(1) was erroneous as this Court has subject matter jurisdiction over Plaintiff's claims. In addition, Plaintiff has alleged sufficient particularity under Rule 9(b) and has pled each element required to state both of his claims brought under the False Claims Act, as well as his defamation claim. Accordingly, Defendants' Motion should be denied in its entirety.

## BACKGROUND

Plaintiff began his employment at Yale in 1990, as an instructor in the Department of Diagnostic Radiology. (Second Am. Compl. ¶ 7.) By July 1996, Plaintiff had become an Associate Professor at the School of Medicine. (*Id.*) Throughout his career at Yale, he held various administrative and supervisory posts, including Director of the Abdominal Imaging Fellowship Program, Acting Chief of Magnetic Resonance Imaging, Acting Chief of Computer Tomography, and Chief of Magnetic Resonance Imaging. (*See id.*) Plaintiff's duties at Yale required him to provide Radiology Services to patients at Yale New Haven Hospital, including Medicare and Medicaid beneficiaries, and to teach, train, and supervise Radiology Residents and Fellows who were participants in the Hospital's Residency Program, as well as technical staff employed by the Hospital. (*Id.*)

Defendant Yale New Haven Hospital obtains reimbursement from Medicare for providing services to eligible patients. The Hospital also operates a graduate medical education ("GME")

2

Residency Program which is paid for, at least in part, by the Medicare Program and under which Residents and Fellows are trained by faculty members of Yale University's School of Medicine and attending physicians at the Hospital. (*Id.* ¶ 9.)

Defendant Yale University is reimbursed by Medicare for the professional services its faculty members provide to Medicare and Medicaid beneficiaries. Yale is likewise reimbursed from the Hospital for various services provided by its faculty members under the GME Residency Program and Medicare, as well as under the terms of the Affiliation Agreement entered into by Yale University and the Hospital. (*See id.* ¶¶ 8, 41-45.)

Pursuant to the Medicare statute, the Department of Health and Human Services has promulgated a series of regulations governing reimbursement for medical services provided to Medicare beneficiaries, including radiological tests and studies. (*See id.* ¶¶ 21-40.) In order to obtain reimbursement from Medicare for services provided to beneficiaries, medical service providers must certify compliance with requirements set forth in various regulations. (*See id.*) Specifically, Medicare and Medicaid only pays for the performance of Radiological tests that are medically necessary for diagnostic and therapeutic purposes for the treatment of an illness or injury. (*Id.* ¶¶ 27-31.) If a radiological test is performed by a Resident or Fellow participating in the GME Residency Program, the Regulations require that a Teaching Physician, (*see id.* ¶ 16), either perform an independent interpretation of the test or supervise the Resident or Fellow while they interpret the test. (*Id.* ¶¶ 31, 39.) If a Resident or Fellow prepares a report and signs the interpretation, the Teaching Physician must indicate that he or she has personally reviewed the associated image(s) and the interpretation and either agrees with or edits the report. A countersignature by the Teaching Physician is insufficient. (*Id.*) If a Resident or Fellow prepares a report and the Teaching

3

Physician's signature is the only signature on the interpretation, it is assumed that the Teaching Physician has personally performed the interpretation.

Plaintiff alleges that Defendants, by implementing the "clean up project," fraudulently billed for the Professional Component, (*see id.* ¶¶ 13, 35-39), for interpretations of old radiological studies performed by Residents and Fellows that were neither performed under the supervision of the attending physician nor independently reviewed by the attending physician under whose name the claim for reimbursement was submitted. Defendants directed and pressured Radiology Department Faculty members to review old tests and furnish finalized reports for which Yale billed the Professional Component, even though such a review had no therapeutic or diagnostic value. (*See id.* ¶ 55-57.) Further, Plaintiff alleges that Dean Glickman signed off on preliminary reports without ever viewing the films or reading the reports. (*Id.* ¶¶ 80-82.)

Second, Plaintiff alleges that the Hospital took advantage of Autosign to wrongfully bill for the Technical Component of radiological studies for which the University never provided nor billed for the Professional Component. (*See id.* ¶ 58-61.) Supposedly, Autosign was a "flag" programmed into the radiology reporting and billing system in order to prevent Yale University from billing for the professional component of radiology studies t hat w ere i n f act l ost a fter a R esident d ictated a report but before the images could be reviewed by a Teaching Physician and before the report could be finalized by a Teaching Physician. In reality, however, the use of Autosign resulted in a procedure by which the Hospital would bill the technical component of radiological studies performed by Residents and Fellows without the study being performed under the supervision of an attending p hysician o r t he f ilm o r r eport b eing i ndependently reviewed by an attending physician before finalization. Autosign facilitated the finalization of reports which were dictated by Residents and Fellows but never reviewed, approved, or edited before certification and finalization by the

4

Residents' or Fellows' Teaching Physician a s t he l aws g overning b illing f or s ervices p rovided a t Teaching Hospitals require. (*Id.* ¶ 20.) (*See id.* ¶¶ 58-62.)

A number of faculty members, including Plaintiff, complained repeatedly to Hospital Administrators, on both ethical and legal grounds, about the Hospital's use of Autosign. (*See id.* ¶ 58-62.) In one memo in particular, dated May 4, 1998, Plaintiff wrote to Dr. McClennan that the Hospital was using Autosign to submit fraudulent bills to Medicare. (*Id.* at ¶ 61.) Plaintiff was told by Felicia Tencza, Associate Business Manager for the Radiology Department, that Hospital Administrators and attorneys, including Sarah Cohn, the Hospital's Chief Counsel for Legal Affairs and Risk Management, had reviewed and approved the use of Autosign. (*Id.* ¶ 60.)

During 1997 and 1998, thousands of Radiology Reports read by Resident and Neuroradiology Fellows were fraudulently finalized by Yale Faculty who never reviewed the images or the reports, including Dean Morton Glickman, M.D., Howard Forman, M.D., Gordon Sze, M.D., James Abrahams, M.D., Richard Bronen, M.D. and Lee Katz, M.D. (*See, e.g., id.* ¶ 83.) The Teaching Physicians would finalize reports for billing purposes without ever reading the associated x-ray film or report. (*Id.* ¶ 84.; *see also id.* ¶¶ 85-87.)

In addition, Plaintiff alleges that Dr. McClennan directed residents in the Emergency Room, as a part of departmental policy, to perform a series of radiological studies on patients as a matter of course and without regard to whether each study was medically indicated or necessary. (*See id* ¶¶ 89-92.)

Frustrated by the apparent apathy towards his concerns displayed by University and Hospital Administrators, Plaintiff undertook his own independent review of radiological records. (*Id.* ¶¶ 68, 69.) Plaintiff discovered that thousands of initial interpretations performed by Residents and Fellows were either finalized by Autosign, or by physicians who had neither independently reviewed

5

the films nor supervised the Resident or Fellow when the tests were initially interpreted. (*Id.*; *see also id.* ¶¶ 7 0-78.) P laintiff also met several times in the fall of 1998 and the fall of 1999 with representatives from the Department of Justice, at which times Plaintiff outlined Defendant's practices which resulted in the submission of false claims to Medicare (*See* Smith Aff. ¶¶ 12, 17, 19, 22; attached as Ex. A.)

In July 1999, Plaintiff, along with his colleagues, Dr. Rosenfield and Dr. Burrell, met with the President of Yale University, Richard Levin, to discuss the fraudulent conduct which was occurring. (Second Am. Compl. ¶ 80.) Subsequent to that meeting, Plaintiff, along with Rosenfield and Burrell, discussed the matter again with Defendants' General Counsel. (*Id.* ¶ 81.)

As a result of his complaints to University and Hospital Administrators about the fraudulent conduct he observed, Plaintiff was harassed and discriminated against in the terms and conditions of his employment by Bruce McClennan, M.D., (*Id.* ¶¶ 98, 99), the Chairman of Yale's Department of Radiology and Chairman of Yale-New Haven Hospital's Department of Diagnostic Imaging, (*Id.* ¶ 46). Specifically, Defendants cut Plaintiff's salary, stripped him of administrative positions, including Chief of MRI, Director of the Abdominal Imaging, Fellowship Program and Coordinator of Abdominal Imaging Division clinical schedule. Eventually, Plaintiff was forced to resign from Yale and the YNHH. (*Id.* ¶ 99.) Plaintiff's colleagues, Dr. Rosenfield and Dr. Burrell, suffered similar retaliation from Defendants as a result of their complaints about the fraudulent conduct they observed. (*See id.* ¶¶ 100-101.)

After Dr. McClennan cut Plaintiff's salary by 5 per cent in July, 1998, he went on sabbatical. During this time, beginning in the fall of 1998, Plaintiff began voluntarily meeting with attorneys at the D epartment o f Ju stice. (Smith Aff. ¶¶ 12, 17, 19, 22, attached as Ex. A.)   In the course of Plaintiff's discussion with Assistant United States Attorney John Hughes, Plaintiff disclosed his

6

knowledge of Defendants' fraudulent billing practices and false certification of compliance with Medicare and Medicaid regulations by faculty members. (*Id.*)

Plaintiff instituted the instant action in the District Court for the District of Connecticut on July 19, 2000. In order to further specify and clarify the allegations set forth in the Original and Amended Complaints and to correct minor technical numbering errors, Plaintiff filed his Second Amended Complaint on Januay 23, 2004. Defendants filed their Motion to Dismiss Plaintiff's Second Amended Complaint on July 15, 2004. Here, Plaintiff opposes Defendant's Motion to Dismiss in its entirety.

## DISCUSSION

### I.    THE COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S CLAIMS UNDER THE FALSE CLAIMS ACT

In their Motion to Dismiss, Defendants contend that this Court lacks subject matter jurisdiction over Plaintiff's FCA claims. Defendants argue that Plaintiff's FCA claims should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure because Plaintiff has not alleged facts sufficient to satisfy the "jurisdictional" requirements set forth in 31 U.S.C. § 3730(e)(4).

Defendants' argument for dismissal based on a lack of subject matter jurisdiction should be rejected on several grounds. First, Defendants reliance on Rule 12(b)(1) is misplaced. Challenges to FCA claims under the public disclosure bar, set forth in § 3730(e)(4), are properly made in a motion to dismiss for failure to state a claim under Rule 12(b)(6) or a motion for summary judgment under Rule 56 – not on the grounds of subject matter jurisdiction under Rule 12(b)(1). In the alternative, Plaintiff is not barred from bringing the instant *qui tam* action, even though some of the underlying allegations of fraud were publicly disclosed at an earlier time, because he qualifies as an original source and is therefore excepted from the public disclosure bar. *See* 31 U.S.C. § 3730(e)(4)(B).

7

A.    Defendants Erroneously Move to Dismiss For Lack of Subject
      Matter Jurisdiction Under Rule 12(b)(1) of the Federal Rules of
      Civil Procedure

Ordinarily, a party may not offer documents or evidence extraneous to the pleadings in support of its motion to dismiss. *Fonte v. Bd. of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir. 1988). In support of their contention that this Court lacks subject matter jurisdiction over Plaintiff's FCA claims, however, Defendants presented such evidence. (*See, e.g.,* Doyle Decl. and attached exhibits.) Defendants presented such evidence[1] pursuant to the exception that exists under Rule 12(b)(1) when a party properly moves to dismiss on the basis of subject matter jurisdiction. *See Fonte*, 848 F.2d at 25. Defendants' jurisdictional argument, however, is not properly asserted under Rule 12(b)(1) – therefore Defendants presentation of and reliance upon documents and evidence outside of the pleadings is improper.

A defendant arguing that a *qui tam* plaintiff's claim is barred by the public disclosure bar properly moves to dismiss pursuant to Rule 12(b)(6) or files a motion for summary judgment. Accordingly, the evidence outside the pleadings upon which Defendant relies in the instant motion should be disregarded and the Court should view Defendant's Motion under the proper 12(b)(6) standard. In the alternative, the Court should either defer Defendants' argument that Plaintiff's claim is barred by § 3730(e)(4) until a Motion for Summary Judgment is filed pursuant to Rule 56 or convert Defendant's Motion into a Motion for Summary Judgment.[2] *See Fonte*, 848 F.2d at 25.

---

[1] *See* Defendants' Memorandum of Law in Support of the Motion . . . to Dismiss at 1 n.1 (acknowledging that Defendants are only permitted to introduce evidence outside of the pleadings in support of a motion to dismiss when challenging subject matter jurisdiction under Rule 12(b)(1)).

[2] In the event that this Court does convert Defendants' Motion to Dismiss to a Motion for Summary Judgment, Plaintiff should be given the opportunity to conduct additional discovery before submitting his papers opposing summary judgment. *See* Fed. R. Civ. P. 12(b) ("If, on a motion [to dismiss under 12(b)(6)] . . . , matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."). Furthermore, when, as in this case, the moving party supports its Motion with affidavits and evidence, the non-moving party must be given an opportunity to gather evidence in opposition to demonstrate the existence of a genuine issue of material fact. *See* Fed. R. Civ. P. 56(e) ("an adverse party may not rest upon the mere

Numerous federal courts have held that Rule 12(b)(1) is not the appropriate Rule upon which to rely when moving to dismiss a plaintiff's *qui tam* suit under the public disclosure bar set forth in § 3730(e)(4). *See United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1518 (10th Cir. 1996); *United States ex rel. Laird v. Lockheed Martin Engineering & Science Services Co.*, 336 F.3d 346, 350 (5th Cir. 2003); *United States ex rel. Gear v. Emergency Medical Assoc. of Illinois, Inc.*, No. 00 C 1046, 2004 WL 1433601 at **4-5 (N.D. Ill. June 25, 2004); *United States ex rel. Yannacopolous v. General Dynamics*, 315 F. Supp. 2d 939, 946-47 (N.D. Ill. 2004); *United States ex rel. Reagan v. East Texas Medical Center Regional Healthcare System*, 274 F. Supp. 2d 824, 837-38 (S.D. Tex. 2003); *United States ex rel. Schwartz v. Coastal Healthcare Group, Inc.*, 232 F.3d 902 (Table), 2000 WL 1595976 at *2-3 (10th Cir. Oct. 26, 2000); *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1159 (10th Cir. 1999); *Wercinski v. Int'l Business Machines Corp.*, 982 F. Supp. 449, 454 (S.D. Tex. 1997).

The Tenth Circuit explained in *Ramseyer*:

> When a court's subject matter jurisdiction is dependent upon the same statute that provides the substantive claim in the case, the jurisdictional question is necessarily intertwined with the merits. In a qui tam suit brought under the FCA, the jurisdictional issue of 'public disclosure' clearly arises out of the same statute that creates the cause of action. Thus, a challenge under the FCA jurisdictional bar is necessarily intertwined with the merits. Under our precedent, such 'intertwined' jurisdictional questions should be resolved either under Federal Rule of Civil Procedure 12(b)(6), or, after proper conversion into a motion for summary judgment, under Rule 56. In the present case, defendants' motion . . . raised a factual challenge to the existence of subject matter jurisdiction [and] argued that plaintiff's allegations of fraud were based upon publicly disclosed information and in support of this factual claim tendered to the district court evidence outside the pleadings. The district court treated defendants' motion as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). However, because the jurisdictional question was intertwined with the merits, and because the court relied on affidavits and other evidentiary material submitted by the parties, defendants' motion to dismiss should have been treated as one for summary judgment under Rule 56(c).

---

allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.")

*Ramseyer*, 90 F.3d at 1518 (internal citations omitted). A District Court in the Seventh Circuit likewise concluded that Rule 12(b)(1) was not the proper vehicle in which to move to dismiss on the basis of public disclosure because the issue was intertwined with the merits when the court's jurisdiction is based on the same statute which provides for the substantive claim. *See United States ex rel. Gear v. Emergency Medical Assoc. of Illinois, Inc.*, No. 00 C 1046, 2004 WL 1433601 at **4-5 (N.D. Ill. June 25, 2004). The *Gear* court explained that its decision was consistent with the approach taken by the United States Supreme Court in *Hughes Aircraft Co. v. United States*, 520 U.S. 939, 950-51 (1997), where the Court held that § 3730(e)(4)(A) raises issues of substantive law and implicates the substantive rights of the parties, as well as the Seventh Circuit, which has held that § 3730(e)(4)(A) uses the word "jurisdiction" to delineate "who may speak on behalf of the Government," not necessarily "in the sense of adjudicatory power." *See id.* (citing *United States ex rel. Fallon v. Accudyne Corp.*, 97 F.3d 937, 941 (7th Cir. 1996)). Accordingly, the *Gear* court asserted jurisdiction over the *qui tam* action and declined to address the defendant's public disclosure argument until a motion for summary judgment was filed. *See id.* (holding that it could not decide the issue under rule 12(b)(6) because the defendant had relied upon material beyond the pleadings).

The Second Circuit has never squarely addressed the issue of whether Rule 12(b)(1) is the proper vehicle in which to challenge subject matter jurisdiction under § 3730(e)(4). To the knowledge of the undersigned, no litigant in this Circuit has ever questioned whether Rule 12(b)(1) was the appropriate vehicle by which a defendant should move to dismiss a *qui tam* claim under § 3730(e)(4) and the courts have therefore assumed, without deciding, that reliance upon Rule 12(b)(1) was proper. *See, e.g., United States v. New York Medical College*, 252 F.3d 118 (2d Cir. 2001) (assuming, without deciding, that reliance upon Rule 12(b)(1) was appropriate).

10

The Second Circuit has, however, acknowledged that reliance upon Rule 12(b)(1) is not appropriate where, as here, on a motion to dismiss, the issue of jurisdiction is "intertwined with the merits." *See London v. Polishoock*, 189 F.3d 196, 198-99 (2d Cir. 1999). *See also Semi-Tech Litigation, LLC v. Bankers Trust Co.*, 272 F. Supp. 2d 319, 329 (S.D.N.Y. 2003) ("Challenges to subject matter jurisdiction that depend upon facts intertwined with the merits, as does this one, are assessed by the standards that govern summary judgment motions."). Thus, since the issue of jurisdiction is intertwined with the merits when a defendant moves to dismiss under § 3730(e)(4), the law in this Circuit requires a defendant to move to dismiss a *qui tam* action on the basis of public disclosure pursuant to Rule 12(b)(6), without relying on material outside the pleadings.

Therefore, as Defendants' Motion is not properly reviewed under Rule 12(b)(1), this Court should review it under Rule 12(b)(6) and exclude the evidence outside of the pleadings introduced by Defendants to support their contention that Plaintiff's claim is barred on the basis of public disclosure under § 3730(e)(4). In the alternative, the Court should hold that the issue of whether § 3730(e)(4)(A) requires the dismissal of Plaintiff's FCA claims must be decided in a Motion for Summary Judgment under rule 56 – not Defendants' Motion to Dismiss.[3] *See Gear*, 2004 WL 1433601 at *5; Fed. R. Civ. P. Rule 12(b).

B.    In the Alternative, The Court Has Jurisdiction Because Plaintiff Is An "Original Source" Under Section 3730(e)(4)(B)

The False Claims Act states that "no court shall have jurisdiction over an action under this section based on the public disclosure of allegations or transaction in a criminal, civil, or administrative hearing . . . or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A)(emphasis added). The statute defines an original source as "an individual who has

_____
[3] *See* note 2, *supra*.

11

direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B). Congress amended the *qui tam* statute in 1986 and created the original source exception to the public disclosure bar in order to encourage enforcement actions by private citizens while still avoiding parasitic lawsuits. *See United States ex rel. Springfield Ry. Co. v. Quinn*, 14 F.3d 645, 650-51 (D.C. Cir. 1994)

Thus, in order to avoid the statutory bar in cases where the information forming the basis of a *qui tam* plaintiff's allegations has been disclosed publicly, the plaintiff must show that he is the original source, as that term is defined in the Act. "[T]o be an original source a qui tam plaintiff must (1) have direct and independent knowledge of the information on which the allegations are based, and (2) have voluntarily provided such information to the government prior to filing suit . . . [as well as] directly or indirectly [being] a source to the entity that publicly disclosed the allegations on which a suit is based." *Kreindler*, 985 F.2d at 1159 (quoting *Dick*, 912 F.2d at 16).

      1.      <u>Plaintiff Has "Direct and Independent" Knowledge</u>

In order to qualify as an original source, a plaintiff must have "direct" as well as "independent" knowledge of the information on which the allegations are based. "Direct signifies 'marked by an absence of an intervening agency.'" *Quinn*, 14 F.3d at 656. While "independent knowledge is knowledge that is not itself dependent on public disclosure." *Id.* " [T]he ' original source' provision requires the relator to possess direct and independent knowledge of the 'information' underlying the allegation, rather than direct and independent knowledge of the 'transaction' itself. On the basis of plain meaning, then, [the statute] does not require that the *qui tam* relator possess direct and independent knowledge of all of the vital ingredients to a fraudulent transaction." *Id.* at 656-57 (holding that in order to qualify as an original source under the FCA, a

relator need only have direct and independent knowledge of <u>any</u> <u>essential</u> <u>element</u> of the underlying fraud transaction and explaining that such a construction is consistent with the purposes of the 1986 Amendments to the False Claims Act).

Numerous courts have held that plaintiffs qualify as an original source when they observed elements of fraudulent c onduct first-hand b efore the a llegations o f fraud w ere p ublicly d isclosed. *See United States ex rel DeCarlo v. Kiewit/AFC Enterprises, Inc.*, 937 F. Supp. 1039, 1048 (S.D.N.Y. 1996) (recognizing that "the Act seeks to encourage persons with 'first hand knowledge of the fraudulent misconduct'" or those who were either involved in the fraud or close observers of it to come forward; holding that a plaintiff was an original source because he obtained knowledge of the fraud when he observed it during the course of his employment before any allegations of fraud were publicly disclosed) (quoting *United States ex rel, Stinson, Lyons, Gerlin & Bustamente, P.A. v. Prudential Ins. Co.*, 944 F.2d 1149, 1154 (3d Cir. 1991)); *Wang v. FMC Corp.*, 975 F.2d 1412, 1417 (9th Cir. 1992) (holding that plaintiff had direct and independent knowledge of publicly disclosed allegations because he gained personal knowledge of the fraud when he worked on trying to solve the problem.); *United States ex rel. Lamers v. City of Green Bay*, 998 F. Supp. 971, 983 (E.D. Wisc. 1998) (holding that plaintiff had direct and independent knowledge of the information underlying the fraudulent transaction where it was based on first-hand observation that occurred before any public disclosure); *United States ex rel. Springfield Ry. Co. v. Quinn*, 14 F.3d 645, 656-57 (D.C. Cir. 1994).

Plaintiff certainly has direct and independent knowledge of the information underlying the allegations of fraud because he obtained the information underlying his allegations first hand as a Teaching Physician in the Defendants' employ; it was not dependant upon information heard from public disclosure. (*See* Smith Affidavit ¶¶ 13-22.) Plaintiff has first hand knowledge of Yale's long standing practice of automatically submitting claims for reimbursement for the Professional

13

Component of all radiology tests and procedures once they are in "F" status in the DecRad system. (Smith Aff. ¶¶ 9-11, 16, 18; attached as Ex. A.) Plaintiff also has first hand knowledge of YNHH's long standing practice of automatically submitting claims for the Technical Component of radiology tests and procedures once the exam is placed in "C" status in the DecRad system. (Smith Aff. ¶¶ 7, 12, 21.) Plaintiff's direct knowledge is evident in his memo to Dr. McClennan, dated May 4, 1998, in which he protested against the use of Autosign and the conduct of the clean-up project and explained that the policies implemented under the direction of Dr. McClennan constituted Medicare fraud. (*See* Memo to McLennan, dated May 4, 1998, attached hereto as Ex. B.) Regarding the use of Autosign, Plaintiff has direct knowledge because he, as a member of the faculty, received a memo from Felicia Tencza explaining how Autosign was going to be used. (*See* Tencza E-mail, attached hereto as Ex. C.) Plaintiff also has direct knowledge of the fraudulent finalization of preliminary reports written by Residents and Fellows, including, but not limited to the Neurofellows Fraud, because he discussed with actual Residents the fact that the respective faculty members were routinely signing off on the reports without reviewing the associated images or the reports. (Smith Aff. ¶ 15.) Plaintiff has direct knowledge of the Clean up project because he discussed with actual faculty who were coerced into participating in the fraud and because Plaintiff independently investigated and reviewed the computer records of specific cases that were part of the fraud. (Smith Aff. ¶¶ 18-19.) Finally, Plaintiff's direct knowledge of the information underlying his allegations is clearly evident in his own independent review of fraudulently finalized reports, his complaints to Felicia Tencza, and his meetings with President Levin and Yale's General Counsel on this matter. (*See* Second Am. Compl. ¶¶ 58-61, 66-76, 80-82, 84, 89, 90, 98, 101; Smith Aff. ¶¶ 13-22, attached as Ex. A.)

14

In addition, Plaintiff's knowledge is independent because he did not obtain it as the result of any public disclosure. *See Quinn*, 14 F.3d at 656-57 (holding that a plaintiff has independent knowledge when it is not dependent upon any public disclosure). Plaintiff complained to Defendants' faculty and administration, such as Dr. McClennan, Yale University President Richard Levin, Yale University General Counsel Dorothy Robinson, Ms. Tencza and Mr. Bencivengo, about the fraudulent practices that later became the subject of this dispute before any information or allegations were made publicly. (*See* Second Am. Compl. ¶ 58-61, 66-76, 81, 89, 90, 98, 101.)

Plaintiff's knowledge of the underlying fraud that took place is easily distinguished from that which the Second Circuit has previously found to be insufficient. For example, in both *United States ex rel. Dick v. Long Island Lighting Co.*, 912 F.2d 13 (2d Cir. 1990), and *United States ex rel. Kreindler & Kreindler v. United Technologies Corp.*, 985 F.2d 1148 (2d Cir. 1993), the Court held that the plaintiffs did not qualify as an original source because they would never have known of the alleged fraudulent practices but for the public disclosure of the information in an earlier lawsuit. Recently, the Court held in *United States v. New York Medical College*, 252 F.3d 118, 122 (2d Cir. 2001), that the plaintiffs did not qualify as an original source because the principle source of their knowledge of the fraud was an audit performed by a municipality.

Plaintiff's knowledge is easily distinguishable from that of the plaintiffs in each of those cases. First, while the fraudulent conduct underlying Plaintiff's FCA claims was, as in those cases, also the subject of an earlier lawsuit, Plaintiff's knowledge of the information underlying those allegations was not dependent upon that lawsuit – as the Second Circuit found in both *Dick* and *Kreindler*. Also, Plaintiff's knowledge of the information underlying the fraudulent conduct alleged in his Complaint is not the product of an audit performed by others. While there was an investigation performed in this case by an outside law firm, Hogan & Hartson, neither that

15

investigation nor the subsequent report that it produced were the source of Plaintiff's knowledge of the information underlying his allegations of fraud. In fact, Defendants contacted Hogan & Hartson in response to internal allegations made by Plaintiff and his colleagues.

Defendants make many arguments in support of their Motion, but not one is persuasive. Defendants contend that Plaintiff is not an original source to the extent that he cannot have direct and independent knowledge of the allegations in the Complaint involving conduct that took place after he left Yale or that he did not personally observe while he was still in Defendants' employ. (*See* Def's Mem. Law Supp. Motion at 12-16.) Defendants' arguments to that effect are unavailing for two reasons: (1) Plaintiff did personally observe fraudulent conduct during his employment with Defendants and (2) the law does not require Plaintiff to meet the high standard for which Defendants advocate. The language of § 3730(e)(4)(B) only requires Plaintiff to have direct and independent knowledge of the <u>information</u> upon which the allegations are based -- not direct and independent knowledge of every fraudulent transaction or violation that may have taken place. *See Quinn*, 14 F.3d at 656-57 (the FCA only requires an original source to have knowledge of information, not transactions).

Moreover, the statute does not require Plaintiff to have direct and independent knowledge of conduct underlying every element of his FCA claim. *See id.* As the D.C. Circuit explained in *Quinn*, setting such a high standard would obviate the congressional purpose for adopting the "original source" exception to the public disclosure bar, which was to encourage individuals to bring private enforcement suits under the FCA. *Quinn*, 14 F.3d at 651 ("Congress clearly acted upon its expressed intention to 'encourage more private enforcement suits,' S.REP. No. 345, 99th Cong., 2d Sess., at 23- 24, *reprinted in* 1986 U.S.C.C.A.N. at 5288-89, by enacting the 'original source' exception.") If the threshold were set as high as Defendants desire, the original source provision

16

would no longer serve as an exception to a jurisdictional bar -- it would become an additional roadblock through which potential FCA claims must pass. Such a result would be directly contrary to the congressional intent behind the "original source" exception, which was to encourage a greater number of individuals to bring private enforcement claims under the FCA. As the D.C. Circuit explained in *Quinn*, equating "information" with "transaction" "would undo both Congress' careful choice of wording and its manifest intent." *Quinn*, 14 F.3d at 656-57 (holding that relator need only allege "direct and independent knowledge of *any* essential element of the underlying fraud transaction" to be an original source).

Thus, in order to qualify as an original source under the FCA, Plaintiff is not required to plead evidence of actual bills and individual claims submitted for reimbursement to have direct and independent knowledge. It is sufficient for him to have direct and independent knowledge of any essential element of his FCA claim. Therefore, it is sufficient for Plaintiff to have direct and independent knowledge of the false claims being fraudulently certified in violation of Medicare regulations or the long-standing practices by which Defendants submitted fraudulent claims without necessarily having direct and independent knowledge of actual claims submitted for treatment of individual patients. To that extent, Plaintiff certainly has direct and independent knowledge that Defendants produced false claims and that they did so knowingly.

2.    Plaintiff Voluntarily Provided Information to the Government in a
      Timely Manner

There is currently a circuit-split as to whether a plaintiff must voluntarily provide information to the government before any public disclosure. While the Sixth Circuit and the D.C. Circuit require a *qui tam* plaintiff to disclose information before any public disclosure, the majority view, which has been adopted by the Third, Fourth, Tenth, and Eleventh Circuits is that a plaintiff must only provide his information to the government before instituting his *qui tam* action. *See*

17

*United States ex rel. Butler v. Magellan Health Services, Inc.*, 74 F. Supp. 2d 1201, 1211-1212 (M.D. Fla. 1999) (citing the divergent holdings of various circuits that have addressed the issue). Those courts following the majority view do so on the basis of the plain meaning of the statutory language. *See id.*

While the Second Circuit has neither recognized the split between the circuits nor squarely addressed the issue, it apparently follows the majority view and does not require a *qui tam* plaintiff to provide information to the government before any public disclosure. *See United States ex rel. Dick v. Long Island Lighting Co.*, 912 F.2d 13, 16 (2d Cir. 1990) ("a *qui tam* plaintiff must . . . have voluntarily provided such information to the government prior to filing suit.") (emphasis added); *United States v. New York Medical College*, 252 F.3d 118, 120 (2d Cir. 2001) (same). *See also United States ex rel. Phipps v. Comprehensive Community Development Center*, 152 F. Supp. 2d 443, 454 (S.D.N.Y 2001) ("In addition, Phipps presents no evidence that she voluntarily provided any information to the Government with respect to the alleged misappropriation of funds before filing this qui tam action.") (emphasis added); *United States ex rel. McAllan v. City of New York*, No. 98 Civ. 3349, 1999 WL 280416 at *4 (S.D.N.Y May 5, 1999) ("a *qui tam* plaintiff must . . . have voluntarily provided such information to the government prior to filing suit.") (emphasis added).

Thus, Defendants' argument that Plaintiff's claims should be dismissed because there is no evidence that he voluntarily provided the information to the government before any public disclosure should be disregarded. (*See* Def's Mem. Law Supp. Motion at 18.) First, Defendants' reliance on cases from those Circuits which have adopted the minority view, such as *United States ex rel. Findley v. FPC-Boron Employees' Club*, 105 F.3d 675, 690 (D.C. Cir. 1997); *United States ex rel. Settlemire v. District of Columbia*, 198 F.3d 913, 916 (D.C. Cir. 1999); and *United States ex rel. Jones v. Horizon Healthcare Corp.*, 160 F.3d 326, 335 n.7 (6th Cir. 1998), is misplaced as the

18

Second Circuit apparently follows the majority view.  Second, Defendants' citation to language from *Dick v. Long Island Lighting Co.*, 912 F.2d 13 (2d Cir. 1990), is misleading.

Defendants cite authority from those circuits following the minority approach that, in order to be an original source, a plaintiff must voluntarily disclose information to the government before any public disclosure.  Then, Defendants cite language from the Second Circuit's decision in *Dick* and assert that it "articulates the reason behind [the] rule" for which Defendants advocate.  Defendants' attempt to rely on *Dick* to support their reliance on authority from those circuits which follow the minority approach is misleading because the Second Circuit does not follow the minority approach which Defendants advocate.  The language in *Dick* upon which Defendants rely was adopted by the Second Circuit to support a completely different element of the "original source" determination.  *See Dick*, 912 F.2d at 16-18 (explaining that the statutory text and legislative history support the adoption of a third element in the "original source" inquiry – a requirement that the plaintiff, either directly or indirectly, must have been a source to the entity that publicly disclosed the allegations on which a suit is based).  Thus, the citation of *Dick* by Defendants to support the proposition that the Second Circuit, in accord with those circuits following the minority approach, requires a *qui tam* plaintiff to provide information to the government before any public disclosures -- as opposed to simply before filing the *qui tam* action -- is extremely disingenuous.

Notwithstanding Defendants' misrepresentation of the applicable law, Plaintiff voluntarily provided the information on which his allegations of fraud are based to the government on several occasions in 1998 and 1999 in meetings with Assistant U.S. Attorney John Hughes before he filed his *qui tam* action on July 19, 2000, as well as before Plaintiff filed a separate complaint in Connecticut Superior Court in January, 2000.   (Smith Aff. ¶¶ 12, 17, 19, 22; attached as Ex. A.)

19

Accordingly, Plaintiff has voluntarily provided the necessary information to the government as required under § 3730(e)(4)(B).

3.    <u>Plaintiff was Directly or Indirectly a Source To the Entity That Publicly Disclosed the Allegations On Which His Suit is Based</u>

In addition to the two qualifications for an "original source" which are expressly and clearly set forth in § 3730(e)(4)(B), the Second Circuit has required plaintiffs who bring a suit in which some of the allegations have previously been disclosed to the public to satisfy a third criteria. In addition to having direct and independent knowledge and voluntarily disclosing information to the government, the Second Circuit requires a plaintiff to have either directly or indirectly been a source to the entity that publicly disclosed the allegations on which the FCA claim is based. *See Dick*, 912 F.2d at 16-18. As one of the plaintiffs in the state court litigation which Defendants assert constituted public disclosure under § 3730(e)(4)(A), Plaintiff certainly satisfies this third and final requirement for qualification as an "original source." In addition, the Connnecticut Superior Court litigation was filed after Plaintiff had already disclosed to the government the allegations on which the fraud is based.

Accordingly, even if it was proper for Defendants to attack subject matter over the instant action pursuant to Rule 12(b)(1), this Court has jurisdiction because Plaintiff qualifies as an original source under § 3730(e)(4)(B).

## II.    PLAINTIFF HAS ALLEGED SUFFICIENT PARTICULARITY UNDER RULE 9(b)

Rule 9(b) of the Federal Rules of Civil Procedure requires that "in all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b). Claims brought under the FCA must satisfy the heightened pleading requirements of Rule 9(b). *Gold v. Morrison-Knudsen Co.*, 68 F.3d 1475, 1477 (2d Cir. 1995). Rule 9(b)'s requirement for

20

particularity serves several purposes: "(1) to inform the defendants of the claims against them and to enable them to form an adequate defense; (2) to eliminate the filing of a conclusory complaint as a pretext for using discovery to uncover wrongs; and (3) to protect the defendants from unfounded charges of fraud which may injure their reputations." *United States ex rel. Barmak v. Sutter Corp.*, No. 95 Civ. 7637, 2002 WL 987109 at *5 (S.D.N.Y. May 14, 2002).

"To meet the requirements of Rule 9(b), a complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. Although Rule 9(b) allows a plaintiff to allege fraudulent intent generally, a plaintiff must allege facts that give rise to a strong inference of fraudulent intent. This strong inference can be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. Ordinarily, allegations of fraud cannot be founded solely upon 'information and belief,' except as to those matters particularly within the opposing party's knowledge; in the latter instance, allegations must be accompanied by statements of facts upon which such belief is reasonably founded." *United States ex rel. Phipps v. Comprehensive Community Development Corp.*, 152 F. Supp. 2d 443, 454-55 (S.D.N.Y. 2001) (internal citations and quotations omitted). Said another way, the complaint must allege the who, what, where, when, and how of the fraudulent practice in order to satisfy the pleading requirements of Rule 9(b). *United States ex rel. Yannacopolous v. General Dynamics*, 315 F. Supp. 2d 939, 944-45 (N.D. Ill. 2004) (citing *Dileo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). "So long as a defendant has 'fair notice' of the charges against him, the purposes of Rule 9(b) have been satisfied." *United States v. Warnings*, No. Civ. A. 93-45411994, WL 396432 at *2 (E.D. Pa. July 26, 1994).

21

To satisfy Rule 9(b), an FCA claim need not "describe in detail a single specific transaction . . . by customer, amount, and precise method" when a plaintiff identifies the victim of the fraud, what type of fraud it was, the general time period in which the fraudulent conduct occurred, where the fraudulent statements were made, and how the statements constituted fraud. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). "Courts have consistently found that where allegations of fraudulent conduct are numerous or take place over an extended period of time, less specificity is required to satisfy the pleading requirements of Rule 9(b)." *United States ex rel. Olloh-Okeke v. Home-Care Services, Inc.*, No. Civ.A. 3:97-CV-2738-H, 1999 WL 222356 at *2 (N.D. Tex. Apr. 9, 1999) (holding that a plaintiff need not "identify with specificity the contents and dates of any specific claims that were fraudulently submitted to the government or the specific defendant who submitted the allegedly fraudulent claims" in order to satisfy Rule 9(b) where the facts are "peculiarly within the perpetrator's knowledge").

A.    Plaintiff Has Alleged Sufficient Particularity to Put Defendants on Notice

Courts have held that a plaintiff satisfies the particularity requirements of Rule 9(b) when the Complaint describes the alleged fraudulent conduct in sufficient detail that the defendant is put on sufficient notice that it is able to defend against a *qui tam* claim. The Second Circuit has held that the primary purpose of the Rule 9(b) pleading requirements is to provide a defendant with "fair notice of the plaintiff's claim and the factual background upon which it is based." *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir. 1990). In a case bearing a striking similarity to the instant action, *United States ex rel. Gear v. Emergency Medical Assoc. of Illinois, Inc.*, No. 00 C 1046, 2004 WL 1433601 (N.D. Ill. June 25, 2004), a district court held that the plaintiff pled sufficient particularity to satisfy the requirements of Rule 9(b). The *Gear* court found that a complaint, which alleged that a hospital committed Medicare fraud by billing for the services performed by unsupervised residents, satisfied

22

Rule 9(b) because the allegations "identify[ying] the particular hospitals involved, the particular University involved, the particular residents involved, and the specific regulations which were allegedly violated" provided the defendant with "adequate notice of the specific activities constituting the alleged fraud." *Id.* at *6.

In a case within this Circuit, *Mikes v. Strauss*, 889 F. Supp. 746 (S.D.N.Y. 1995), the plaintiff did not cite any specific examples, but alleged that the defendant was defrauding the government by filing Medicare claims for unnecessary and excessively expensive radiological tests. *Mikes*, 889 F. Supp. at 749-750. The court stated that "[a]lthough plaintiff does not detail every specific instance when defendants' alleged overbilling occurred, we think the allegations of spirometry and MRI misuse are sufficiently specific to put defendants on notice of their alleged fraudulent activity under circumstances of a *qui tam* action." *Id.* at 751 n.5. *See also United States v. Warnings*, No. Civ. A. 93-45411994, WL 396432 at *3 (E.D. Pa. July 26, 1994) (holding that, even though it did not contain any specifics as to "date, time, and place descriptions for each fraudulent act at issue," the complaint described "the fraudulent schemes conducted by the defendants with sufficient particularity to provide the defendants with adequate means for substantiating the charges [and] [a]ny remaining uncertainty can be remedied by means of discovery").

In the instant action, Plaintiff has certainly pled sufficient details about the fraudulent conduct alleged to put Defendants on notice to the extent that they are able to substantiate Plaintiff's allegations and defend against them. Although Defendants claim that the fraud allegations in Plaintiff's Complaint are "vague and disorganized," Defendant's own recitation of the various frauds, based on the Second Amended Complaint, makes clear that Defendants understand the particulars of each fraud and that these particulars are contained in Plaintiff's Second Amended

23

Complaint. Therefore, Defendant's own motion shows that Rule 9(b) is clearly and unequivocally satisfied.

B.    The Pleading Requirements of Rule 9(b) Should be Relaxed

Other courts have held that the pleading requirements under Rule 9(b) are relaxed when the specific information and detailed knowledge that the plaintiff failed to plead in his complaint was in the exclusive possession and control of the defendant. In *Wilkins ex rel. United States v. Ohio*, 885 F. Supp. 1055 (S.D. Ohio 1995), the Court denied the defendant's Motion to Dismiss, notwithstanding its holding that the plaintiff had not alleged sufficient particularity to satisfy the requirements of Rule 9(b), because the defendant controlled all the information needed to allege greater specificity and particularity. In *Wilkins*, the plaintiff had not been employed with the defendant for a couple of years, the defendant had control over all the relevant facts and documentation, and the plaintiff had a great deal of first hand knowledge of the alleged fraudulent scheme – thus the court gave special weight to his allegations. Furthermore, the defendants in *Wilkins*, like those in the instant action, moved for a protective order to stay discovery during the pendency of their motion to dismiss. *Id.* at 1061. *See also United States ex rel. Yannacopolous v. General Dynamics*, 315 F. Supp. 2d 939 (N.D. Ill. 2004) (holding that plaintiff alleged sufficient particularity under Rule 9(b) by pleading the who, what, where, when and the how of the alleged fraudulent scheme and any failures to plead specifics as to claims and dates and individuals was not fatal because that information was in the exclusive possession of the defendants); *United States ex rel. Durcholz v. FKW, Inc.*, 997 F. Supp. 1143, 1152 (S. D. Ind. 1998) ("Although the Complaint did not allege the precise number of times that FKW fraudulently invoiced the Navy on this project, that omission does not violate Rule 9(b) or otherwise compromise Defendants' right to fair notice.

24

Defendants are in possession of such information, and Plaintiff was not required to plead them prior to discovery.").

Courts within the Second Circuit likewise relax the heightened pleading requirement in situations where additional facts are in the exclusive control and possession of the defendant and a complaint "adduce[s] specific facts supporting a strong inference of fraud." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990); *Devaney v. Chester*, 813 F.2d 566, 569 (2d Cir. 1987) (plaintiff's complaint insufficient because it failed "to adduce any specific facts supporting an inference of knowledgeable participation in the alleged fraud . . . ."). *See also Tribune Co. v. Purcigliotti*, 869 F. Supp. 1076, 1090 (S.D.N.Y. 1994) (and cases cited therein); *Emery v. American General Finance, Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998) (particularity requirements of Rule 9(b) are relaxed by a showing that further particulars of the alleged fraud could not be alleged without discovery because the information is exclusively within the defendant's control and the defendant will not produce it voluntarily); *Corley v. Rosewood Care Center, Inc.*, 142 F.3d 1041, (7th Cir. 1998) (particularity requirement of Rule 9(b) relaxed where plaintiff lacks access to all facts necessary to detail his claim and the defendant resists plaintiff's efforts to obtain such information).

Defendants contend that the relaxed pleading standard should not apply in this case and Plaintiff should be precluded from making allegations "on information and belief" because the circumstances justifying the relaxed pleading standard – where the documents and information is exclusively within the defendant's control and possession – is "inapplicable" in this case. Defendants assert that the evidence of actual claims and bills submitted to the government are not exclusively within Defendants' control because the government possesses all the claims submitted by Defendants and Plaintiff should simply "obtain that information through sources such as the Freedom of Information Act." (*See* Def's Mem. Law Supp. Motion at 25, n.12.)

25

Defendants' contention has already been dismissed by the First Circuit in *United States ex rel. Karvelas v. Melrose-Wakefield Hospital*, 360 F.3d 220 (1st Cir. 2004), a case upon which Defendants rely heavily. The First Circuit explained in *Karvelas* that the information needed by a relator bringing a *qui tam* suit will always be in the hands of the government because, as a matter of law, "every FCA qui tam action involves allegations of false or fraudulent claims submitted to the government." *Id.* Furthermore, the Court speculated that any information obtained as a result of the FOIA request might run afoul of § 3730(e)(4), which "excludes individuals who must rely on information already in the possession of the government to adequately state their claim." *Id.* Moreover, Defendants' contention is extremely disingenuous as Defendants have made overt efforts to frustrate Plaintiff's attempt to obtain copies of actual claims and billing records from outside sources. *See Emery v. American General Finance, Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998); *Corley v. Rosewood Care Center, Inc.*, 142 F.3d 1041, (7th Cir. 1998). Defendants recently moved this Court to quash Plaintiff's Third Party Subpoena and Stay Discovery in this case until the resolution of the instant Motion. Thus, for all practical purposes, the records of actual claims and billing records are in the exclusive possession and control of Defendants. Accordingly, the requirements of Rule 9(b) should be relaxed.

C.    <u>Cases Relied Upon Heavily by Defendants are Distinguishable</u>

Defendant relies heavily upon two cases, *United States ex rel. Clausen v. Laboratory Corporation of America, Inc.*, 290 F.3d 1301 (11th Cir. 2002), and *United States ex rel. Karvelas v. Melrose-Wakefield Hospital*, 360 F.3d 220 (1st Cir. 2004), for the proposition that a plaintiff bringing a *qui tam* action "must allege details regarding actual false claims submitted to the government." (Def's Mem. Supp. Mot. Dismiss at 21.) Neither of these cases, however, holds that a *qui tam* action

alleging fraudulent billing under Medicare must be dismissed if the pleadings fail to set forth evidence of specific billing records for actual claims submitted to the government.

While the *Clausen* court did dismiss the plaintiff's qui tam action under Rule 9(b) because he failed to allege specific facts to support his conclusory allegations that the defendant's schemes actually resulted in the submission of bills to the government, 290 F.3d at 1311-1313, the Court did not hold that Rule 9(b) requires all plaintiffs to plead details about "actual false claims submitted to the government," as Defendants contend. First, the *Clausen* court expressly stated that its holding was limited to "the particular circumstances of this case." *Clausen*, 290 F.3d at 1312. A review of the particular circumstances in *Clausen* reveals that, unlike in the instant action, the Plaintiff-relator in *Clausen* never worked for the defendant and was not an insider. As an outsider, Clausen's conclusory allegations that the defendant actually submitted false claims did not have the "indicia of reliability" that the Court held is required under Rule 9(b). *See Clausen*, 290 F.3d at 1311 ("if Rule 9(b) is adhered to, some indicia of reliability must be given in the complaint to support the allegation of an actual false claim for payment being made to the Government"). Thus, because the allegations that false claims were actually submitted for payment in plaintiff's complaint lacked "any factual basis," 290 F.3d at 1313, the Court dismissed the plaintiff's complaint.

Defendants' discussion of *Clausen* is also misleading because it fails to acknowledge that the Court held that the plaintiff could have cured the deficiencies in his complaint by providing any one of several "types of information." Regarding the plaintiff's complaint, the Court stated that, "No amounts of charges were identified. No actual dates were alleged. No policies about billing or even second-hand information about billing practices were described . . . No copy of a single bill or payment was provided." 290 F.3d at 1312. The Court explained, however, that its "discussion merely lists <u>some of the types of information</u> that might have helped Clausen . . . but does not

27

mandate all of this information for any of the alleged claims." Id. at n.21 (emphasis added). *See also Karvelas*, 360 F.3d at 233 (listing various "types of information that may help a relator to state his or her claims with particularity," but clarifying that "[t]hese details do not constitute a checklist of mandatory requirements that must be satisfied by each allegation included in a complaint"). Thus, as Plaintiff in the instant action has provided this Court with policies about billing and billing practices, even if it were held to the same standard that the *Clausen* court applied to a plaintiff who was an outsider, Plaintiff's allegations would be sufficient under Rule 9(b).

Notwithstanding the fact that Plaintiff's allegations regarding billing practices, policies, and procedures would satisfy the high standard set forth in *Clausen* and *Karvelas*, it is worth noting that the approach taken by the Eleventh and First Circuits in those cases is not universally accepted and has been overtly criticized by at least one other federal court. *See, e.g., United States ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.*, 238 F. Supp. 2d 258 (D.D.C. 2002). The *Pogue* court, agreeing with the dissent in *Clausen*, criticized the majority decision in *Clausen* because it was focused "too much on 'particularity' and not enough on the purpose of the rule, which is to give defendants notice of the claims against them." *Pogue*, 238 F. Supp. 2d at 268-69 (citing *Clausen*, 290 F.3d at 1315 (Barkett J., dissenting)). The *Pogue* court explained that the majority in *Clausen* required "not particularity but proof in requiring the relator to affix actual claims for payment to the complaint, and it is inappropriate to require proof on a 9(b) motion to dismiss." *Id.* at 269 (citing *Claussen*, 290 F.3d at 1317 (Barkett J., dissenting)).[4]

The approach adopted by the *Pogue* court is consistent with that of the Second Circuit. The Second Circuit has held that the primary purpose of the Rule 9(b) pleading requirements is to provide a defendant with "fair notice of the plaintiff's claim and the factual background upon which

---

[4] The *Pogue* court speculated that the D.C. Circuit Court of Appeals would likewise disagree with the approach taken by the majority in *Clausen. See Pogue*, 238 F. Supp. 2d at 269.

it is based." *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir. 1990). Courts in this Circuit have held that plaintiffs have satisfied the requirements of Rule 9(b) as long as they provide the defendants with adequate notice. *See, e.g., Mikes v. Strauss*, 889 F. Supp. at 751 n.5. Courts within this Circuit have also held that a plaintiff is not required to plead evidence to satisfy the particularity requirements of Rule 9(b). *See Lomaglio Assoc., Inc. v. LBK Marketing Corp.*, 876 F. Supp. 41, 44 (S.D.N.Y. 1995) ("Rule 9(b) does not require plaintiffs to set forth their evidence in the complaint").

Furthermore, the Eleventh Circuit has subsequently distinguished its decision in *Clausen* and apparently limited it to situations in which plaintiffs do not have first hand knowledge of the internal billing procedures employed by a defendant. *See Hill v. Morehouse Medical Assoc., Inc.*, No. 02-14429, 2003 WL 22019936 (11th Cir. Aug. 15, 2003). In *Hill*, the Eleventh Circuit pointed out that in *Clausen*, it declined to relax the pleading requirements under Rule 9(b) regarding allegations of submitting actual false claims and billing records because the plaintiff in *Clausen*, as an outsider who was not an employee of the defendant, had "not been privy to the defendant's policy manuals, files, and computer systems." *Hill*, 2003 WL 22019936 at *4 (quoting *Clausen*, 290 F.3d at 1314). The *Hill* court then explained that Hill, unlike Clausen, was an insider who had worked for the defendant and was familiar with, and had first hand knowledge of, its billing procedures and past practices and was able to identify the individuals and physicians who took part in implementing the fraud. See *id.* at *4. Therefore, Hill's allegations had an indicia of reliability that was sufficient to "alert [the] defendants to the precise misconduct with which they are charged, and there is no evidence that her allegations are spurious." *Hill*, 2003 WL 22019936 at *4-5. *See also Hutchinson v. Andrulis Corp.*, 2004 WL 691790 at *4-5 (N.D. Fla. March 19, 2004) (discussing *Hill* and *Clausen* and stating "the 'indicia of reliability' was provided in *Hill* because the claimant there had personally observed the billing practices firsthand, while the 'indicia of reliability' was not provided

29

in *Clausen*"). *See also Wilkins ex rel. United States v. Ohio*, 885 F. Supp. 1055 (S.D. Ohio 1995) (even though the plaintiff's allegations lacked particularity, the court gave special weight to the plaintiff's allegations and refused to dismiss under Rule 9(b) because he had first hand knowledge). Accordingly, Defendants' contention that Plaintiff has failed to allege sufficient particularity under Rule 9(b) should be disregarded to the extent that, unlike the plaintiff-relator in *Claussen*, Plaintiff-relator Smith's allegations have an "indicia of reliability" because he is a former high-level employee of Defendants for more than a decade with inside knowledge of the fraud about which he alleges as well as inside knowledge of Defendant's computer systems and billing practices.

The other case principally relied upon by Defendants, *United States ex rel. Karvelas v. Melrose-Wakefield Hospital, Inc.*, 360 F.3d 220 (1st Cir. 2004), also refutes Defendants' claim that Plaintiff must allege knowledge of actual claims submitted to the government or billing records in order to satisfy the pleading requirements under Rule 9(b). In its discussion of the pleading requirements under Rule 9(b), the *Karvelas* Court explained that "[a] number of courts have also found FCA violations where a defendant falsely certifies compliance with certain conditions required as a prerequisite for a government benefit or payment in order to induce that benefit. In such cases, <u>false certification for the purposes of receiving a payment or benefit becomes the practical equivalent of a statutory false claim</u>." *Karvelas*, 360 F.3d at 232 n.15 (emphasis added) (internal citation omitted). Thus, according to the First Circuit in *Karvelas*, a plaintiff may satisfy the particularity requirement of Rule 9(b) by alleging false certification for purposes of receiving payment <u>or</u> knowledge of actual false claims. Accordingly, Defendants' principal contention, that Plaintiff must allege knowledge of actual claims and specific knowledge of billing records and dates in order to satisfy Rule 9(b), should be disregarded to the extent that Plaintiff has alleged sufficient details about false certifications.