*Reply*

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

UNITED STATES ex rel.
ROBERT C. SMITH, M.D.,

              Plaintiff,

       vs.

YALE UNIVERSITY and YALE-NEW HAVEN
HOSPITAL, INC.,

              Defendants.

Civil Action   Sep 2...
No. 3:00-cv-01359(PCD)

SEPTEMBER 20, 2004

ORAL ARGUMENT REQUESTED

## REPLY OF YALE UNIVERSITY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

WIGGIN & DANA LLP
William J. Doyle
Kenneth D. Heath
One Century Tower
265 Church Street
New Haven, CT  06508-1832
(203) 498-4400

MORRISON & FOERSTER LLP
Carl H. Loewenson, Jr.
Stanley R. Soya
J. Alexander Lawrence
1290 Avenue of the Americas
New York, NY  10104-0185
(212) 468-8000

Attorneys for Defendant Yale University

ny-589793

## TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................... 1

ARGUMENT ................................................................................................................... 3

FALSE CLAIMS ACT - SECTION 3729 CLAIMS .................................................................. 3

I.    Pursuant to the Public Disclosure Bar, the Court Lacks Subject Matter Jurisdiction. .................................................................................................... 3

    A.    Defendants Properly Moved for Dismissal Under Rules 12(b)(1) and 12(h)(3) ..................................................................................................... 3

    B.    Prior to Filing the Original Complaint, the Same or Substantially Similar Allegations Had Been Publicly Disclosed ............................................................ 4

    C.    Smith Is Not an "Original Source" of the Allegations ........................................... 5

        1.    Smith Must Have "Direct and Independent" Knowledge of the Information on Which the FCA Claims Are Based .................................. 5

        2.    Smith Concedes That He Does Not Have "Direct and Independent" Knowledge of the Allegations .................................................................. 7

            a.    Billing for All Reports Placed in "F" Status ................................... 7

            b.    Reports Finalized Using "Autosign"............................................... 7

            c.    Reports of Moonlighting Neuroradiology Fellows ........................ 8

            d.    Reports Finalized in the Clean-Up Project ..................................... 9

            e.    Billing for Panels of Tests............................................................. 9

            f.    Information Obtained Through Discovery ..................................... 10

            g.    Conduct Occurring After Smith Left Yale .................................... 10

            h.    Allegations Based on Information and Belief ................................. 10

II.    Smith Fails to Meet the Pleading Requirements of Rule 9(b) ......................................... 10

    A.    FCA Claims Are Properly Dismissed Where No Particulars Regarding Actual False Claims Submitted to the Government Are Alleged ......................... 10

    B.    Smith Fails to Identify a Single False Claim Submitted to the Government ....... 13

    C.    Relaxation of the Pleading Requirements of Rule 9(b) Is Not Proper Here ........ 14

    D.    Smith's Deficient Allegations Contravene the Purposes of Rule 9(b) ................. 16

III.    The FCA Claims Should Be Dismissed Pursuant to Rule 12(b)(6) For Failure to State a Claim ................................................................................................... 17

    A.    Defendants Made No False or Fraudulent Statement as a Prerequisite for Medicare Reimbursement ................................................................................. 17

i

## TABLE OF CONTENTS
(continued)

**Page**

1.   A False Claim is One That the Government Would Not Have Paid........ 17

2.   Allegations That Defendants Billed for Studies By Radiologists Who Were Not Qualified Teaching Physicians ....................................... 18

3.   Allegations That Defendants Billed for Studies for Which the Signing Radiologist Did Not Review the Image and/or the Preliminary Report .................................................................................. 18

    a.   Allegations Regarding the Use of "Autosign" ............................ 18

    b.   Allegations Regarding the Neuroradiology Fellows ................... 19

    c.   Allegations Regarding the "Clean Up Project" ........................... 20

4.   Allegations Regarding Medically Unnecessary Studies .......................... 21

FALSE CLAIMS ACT - SECTION 3730(h) RETALIATION CLAIMS ................................. 22

I.    Smith's Retaliation Claim Is Time-Barred .................................................... 22

II.   Smith Fails to State a Claim for Retaliation .................................................. 23

   A.   Smith Has Failed to Allege That He Was Engaged in Protected Conduct .......... 23

   B.   Smith Has Failed to Allege that Defendants Knew of His Protected Conduct ........................................................................................... 24

   C.   Smith Has Failed to Allege that He Was Retaliated Against Because of His Protected Conduct .................................................................................... 24

DEFAMATION ............................................................................................................... 24

I.    Smith Has Failed to State a Claim for Defamation ........................................ 24

CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

## CASES

Anthony v. Young & Rubicam,
   979 F. Supp. 122 (D. Conn. 1997)......................................................................24

Cooper v. Pickett,
   137 F.3d 616 (9th Cir. 1997) ..........................................................................11

Corley v. Rosewood Care Center, Inc.,
   142 F.3d 1041 (7th Cir. 1998) ......................................................................16

Cotto v. United Technologies Corp.,
   711 A.2d 1180 (Conn. App. Ct. 1998)..........................................................23

Devaney v. Chester,
   813 F.2d 566 (2d Cir. 1987) ..........................................................................16

Emery v. American General Financial, Inc.,
   134 F.3d 1321 (7th Cir. 1998) ......................................................................16

Faldetta v. Lockheed Martin Corp.,
   98-cv-2614, 2000 WL 1682759 (S.D.N.Y. Nov. 9, 2000) ...........................23

Friedl v. City of New York,
   210 F.3d 79 (2d Cir. 2000) ............................................................................13

Hill v. Morehouse Medical Associates, Inc.,
   02-14429, 2003 WL 22019936 (11th Cir. Aug. 15, 2003) ...........................12

In re Cardiac Devices Qui Tam Litigation,
   221 F.R.D. 318 (D. Conn. 2004)..........................................................10, 16, 20

Moor-Jankowski v. Board of Trustees of New York University,
   96-cv-5997, 1998 WL 474084 (S.D.N.Y. Aug. 10, 1998).............................23

Peterson v. Weinberger,
   508 F.2d 45 (5th Cir. 1975) ..........................................................................20

Reed v. United Transportation Union,
   488 U.S. 319 (1989).......................................................................................22

Rombach v. Chang,
   355 F.3d 164 (2d Cir. 2004) ..........................................................................16

## TABLE OF AUTHORITIES

Tribune Co. v. Purcigliotti,
    869 F. Supp. 1076 (S.D.N.Y. 1994) ................................................................................16

United States ex rel. Atkinson v. Pennsylvania Shipbuilding Co.,
    255 F. Supp. 2d 351 (E.D. Pa. 2002) ..............................................................................6

United States ex rel. Barmak v. Sutter Corp.,
    95-cv-7637, 2003 WL 21436213 (S.D.N.Y. June 20, 2003) ......................................15

United States ex rel. Barth v. Ridgedale Electric, Inc.,
    44 F.3d 699 (8th Cir. 1995) ........................................................................................4, 8

United States ex rel. Bondy v. Consumer Health Foundation,
    00-2520, 2001 WL 1397852 (4th Cir. Nov. 9, 2001) ..................................................14

United States ex rel. Capella v. Norden System, Inc.,
    3:94-cv-2063, 2000 WL 1336487 (D. Conn. Aug. 24, 2000)......................................20

United States ex rel. Clausen v. Laboratory Corporation of America,
    290 F.3d 1301 (11th Cir. 2002) ................................................................6, 10, 11, 12

United States ex rel. Cosens v. Yale-New Haven Hospital,
    233 F. Supp. 2d 319 (D. Conn. 2002)...........................................................................3, 4

United States ex rel. DeCarlo v. Kiewit/AFC Enterprises, Inc.,
    937 F. Supp. 1039 (S.D.N.Y. 1996) ...............................................................................8

United States ex rel. Detrick v. Daniel F. Young, Inc.,
    909 F. Supp. 1010 (E.D. Va. 1995) ...............................................................................5

United States ex rel. Devlin v. California,
    84 F.3d 358 (9th Cir. 1996) ............................................................................................9

United States ex rel. Dick v. Long Island Lighting Co.,
    912 F.2d 13 (2d Cir. 1990) .............................................................................................5

United States ex rel. Dunleavy v. County of Delaware,
    123 F.3d 734 (3d Cir. 1997) ...........................................................................................4

United States ex rel. Findley v. FPC-Boron Employees' Club,
    105 F.3d 675 (D.C. Cir. 1997)........................................................................................8

United States ex rel. Grayson v. Advanced Management Technology, Inc.,
    221 F.3d 580 (4th Cir. 2000) ..........................................................................................9

# TABLE OF AUTHORITIES

United States ex rel. Hafter v. Spectrum Emergency Care, Inc.,
   9 F. Supp. 2d 1273 (D. Kan. 1998)..................................................................6

United States ex rel. Hafter v. Spectrum Emergency Care, Inc.,
   190 F.3d 1156 (10th Cir. 1999) ......................................................................8

United States ex rel. Karvelas v. Melrose-Wakefield Hospital,
   360 F.3d 220 (1st Cir. 2004)..................................6, 10, 11, 12, 13, 14, 16, 17, 23, 24

United States ex rel. Kreindler & Kreindler v. United Technologies Corp.,
   985 F.2d 1148 (2d Cir. 1993) .....................................................................3, 9

United States ex rel. Lamers v. City of Green Bay,
   998 F. Supp. 971 (E.D. Wisc. 1998)................................................................8

United States ex rel. Lee v. SmithKline Beecham, Inc.,
   245 F.3d 1048 (9th Cir. 2001) ......................................................................15

United States ex rel. Lissack v. Sakura Global Capital Markets, Inc.,
   95-cv-1363, 2003 WL 21998968 (S.D.N.Y. Aug. 21, 2003).......................................3

United States ex rel. Mikes v. Strauss,
   274 F.3d 687 (2d Cir. 2001) ...........................................................17, 18, 21, 22

United States ex rel. Mikes v. Strauss,
   889 F. Supp. 746 (S.D.N.Y. 1995) ................................................................16

United States ex rel. Pentagen Technologies International Ltd. v. CACI International Inc.,
   94-cv-1996 WL 11299 (S.D.N.Y. Jan. 4, 1996) ..................................................15

United States ex rel. Piacentile v. Wolk,
   93-cv-5773, 1995 WL 20833 (E.D. Pa. Jan. 17, 1995)............................................20

United States ex rel. Precision Co. v. Koch Industries, Inc.,
   971 F.2d 548 (10th Cir. 1992) ....................................................................5, 6

United States ex rel. Reagon v. East Texas Medical Center Regional Healthcare System,
   274 F. Supp. 2d 824 (S.D. Tex. 2003) ..............................................................8

United States ex. rel. Riley v. St. Lukes Episcopal Hospital,
   355 F.3d 370 (5th Cir. 2004) ......................................................................20

United States ex rel. Schumer v. Hughes Aircraft Co.,
   63 F.3d 1512 (9th Cir. 1995) ......................................................................14

## TABLE OF AUTHORITIES

United States ex rel. Settlemire v. District of Columbia,
   198 F.3d 913 (D.C. Cir. 1999) ...................................................................................4

United States ex rel. Springfield Terminal Railway Co. v. Quinn,
   14 F.3d 645 (D.C. Cir. 1994) ....................................................................................6

United States ex rel. Swafford v. Borgess Medical Center,
   98 F. Supp. 2d 822 (W.D. Mich. 2000) ....................................................................21

United States ex rel. Walsh v. Eastman Kodak Co.,
   98 F. Supp. 2d 141 (D. Mass. 2000) ...................................................................13, 14

United States ex rel. Woods v. Empire Blue Cross & Blue Shield,
   99-cv-4968, 2002 WL 1905899 (S.D.N.Y. Aug. 19, 2002)......................................3

United States ex rel. Yannacopolous v. General Dynamics,
   315 F. Supp. 2d 939 (N.D. Ill. 2004) ......................................................................14

United States v. A.D. Roe Co.,
   186 F.3d 717 (6th Cir. 1999) ....................................................................................4

United States v. Bank of Farmington,
   166 F.3d 853 (7th Cir. 1999) ....................................................................................5

United States v. Mackby,
   261 F.3d 821 (9th Cir. 2001) ..................................................................................20

United States v. New York Medical College,
   252 F.3d 118 (2d Cir. 2001) .....................................................................................3

Wercinski v. International Business Machines,
   982 F. Supp. 449 (S.D. Tex. 1997)...........................................................................8

Wexner v. First Manhattan Company,
   902 F.2d 169 (2d Cir. 1990) ...................................................................................16

## STATUTES, RULES, AND REGULATIONS

31 U.S.C. § 3730(e)(4)..........................................................................................4, 6, 9

31 U.S.C. § 3730(h) .........................................................................................22, 23, 24

31 U.S.C. § 3731(b)(1) ..............................................................................................22

## TABLE OF AUTHORITIES

Fed. R. Civ. Pro. 9(b) ............................................................................................1-2, 10-17

Fed. R. Civ. Pro. 11 ....................................................................................................18

Fed. R. Civ. Pro. 12(b)(1) ............................................................................................3

Fed. R. Civ. Pro. 12(b)(6) ...........................................................................2, 3, 17, 18

Fed. R. Civ. Pro. 12(h)(3) ............................................................................................3

42 C.F.R. § 415.180............................................................................................19

42 C.F.R. § 415.208............................................................................................19

60 Fed. Reg. 38,400 (July 26, 1995)...........................................................................21

60 Fed. Reg. 63,123 (Dec. 8, 1995) ...............................................................18, 19, 21

Conn. Gen. Stat. § 31-51m............................................................................................22

Conn. Gen. Stat. § 31-51q.......................................................................................22, 23

S. Rep. No. 99-345 (1986)...........................................................................................22

## SECONDARY SOURCES

John T. Boese, CIVIL FALSE CLAIMS & QUI TAM ACTIONS,
   § 4.02[D][2][c] (2004 Supp.)..................................................................................5

Medicare Carriers Manual § 2020.8(C) (1999) .........................................................19

Defendant Yale University ("Yale") respectfully submits this reply memorandum of law in support of the Motion of Yale and Yale-New Haven Hospital, Inc. ("YNHH") (collectively, "Defendants") to dismiss the Second Amended Complaint.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff-Relator Robert Smith, M.D. ("Smith") concedes that, to proceed with his False Claims Act ("FCA") cause of action, he must qualify as the original source of the information on which his allegations are based. As the Court recognized in its September 1, 2004 Order Staying Discovery ("Stay Order"), in the absence of "direct and independent" knowledge of the information on which his allegations are based, Smith does not qualify as an original source. Smith admits that he bases his allegations on rumors gleaned from his coworkers and through discovery in the State Court Action. Smith, therefore, lacks direct and independent knowledge of the information on which his allegations are based, and his FCA claims should be dismissed.

Furthermore, without pointing to a "false claim" submitted to the government – the *sine qua non* of a cause of action under the FCA – Smith has not taken the first step in alleging an FCA violation under Rule 9(b) of the Federal Rules of Civil Procedure. In the sixty pages of Smith's Opposition to the Motion to Dismiss, the forty-nine pages of the Second Amended Complaint, the fifty-one pages of the First Amended Complaint, the fifty-three pages of the Original Complaint, the 107 pages of Smith's written disclosures to the government (in which he was to meet his statutorily imposed obligation to provide all the information on which his claims are based), and the hundreds of pages of documents submitted by Smith with those written disclosures, Smith fails to identify a single claim submitted to the government. Notwithstanding Smith's unfounded speculation regarding Defendants' billing practices, Smith has put forward no evidence that he knows the first thing about those practices.

Smith's failure to put forward evidence of a single false claim submitted to the government dooms his FCA claims. Smith is not allowed to make unsupported allegations that false claims were submitted to the government and then proceed with discovery in hopes that something will turn up. To permit this would undercut the principle on which Rule 9(b) is based and would encourage litigants to file FCA claims without substantiation in hopes of digging around and finding something in discovery.

Realizing that he cannot satisfy the Rule 9(b) standard, Smith asks the Court to relax the standard and allow him to proceed with discovery. (Opp'n at 24-26.) As the Court recently noted, the FCA does not permit Smith to do this. (Stay Order at 3.) Unlike in some types of cases in which a court may be inclined to permit a plaintiff to proceed with less than fully developed allegations of fraud to see what is uncovered in the discovery process, the FCA includes a special safeguard. The government, after a full opportunity to investigate Smith's allegations and with complete access to any and all claims submitted by Defendants, declined to intervene to pursue Smith's claims. Smith should not be allowed to charge forward with unsubstantiated claims where the government fully investigated and saw no merit.

Finally, even accepting his allegations as true, Smith's claims should be dismissed under Rule 12(b)(6). Notwithstanding his lengthy dissertation as to what the regulations require (Opp'n at 3-4, 35-36), Smith completely misconstrues the applicable Medicare and Medicaid regulations. Taking everything Smith says at face value, he still fails to make out a claim of fraud.

2

## ARGUMENT

## FALSE CLAIMS ACT - SECTION 3729 CLAIMS

**I.   PURSUANT TO THE PUBLIC DISCLOSURE BAR, THE COURT LACKS SUBJECT MATTER JURISDICTION.**

### A.   Defendants Properly Moved for Dismissal Under Rules 12(b)(1) and 12(h)(3).

Defendants properly moved to dismiss this action for lack of subject matter jurisdiction under Rules 12(b)(1) and 12(h)(3) on the basis that Smith has failed to establish that he is an "original source" of publicly disclosed allegations. (Mem. at 6-20.) Thus, the Court may consider materials outside of the pleadings without converting the motion into one for summary judgment.[1]

As Smith implicitly recognizes, courts in the Second Circuit have, without exception, held that Rules 12(b)(1) and 12(h)(3) are the proper procedural vehicles for moving to dismiss FCA claims under the public disclosure bar. See, e.g., United States v. New York Med. Coll., 252 F.3d 118, 120 (2d Cir. 2001) (affirming public disclosure bar dismissal under Rule 12(b)(1)); United States ex rel. Kreindler & Kreindler v. United Techs. Corp., 985 F.2d 1148, 1159 (2d Cir. 1993) (same); United States ex rel. Lissack v. Sakura Global Capital Mkts., Inc., 95-cv-1363, 2003 WL 21998968, at *4 (S.D.N.Y. Aug. 21, 2003) (deciding public disclosure bar motion to dismiss under Rule 12(b)(1) and considering "matters outside the pleadings, such as affidavits, documents, and testimony"), aff'd, 377 F.3d 145 (2d Cir. 2004); United States ex rel. Cosens v. Yale-New Haven Hosp., 233 F. Supp. 2d 319, 320 (D. Conn. 2002) (same); United States ex rel. Woods v. Empire Blue Cross & Blue Shield, 99-cv-4968, 2002 WL 1905899, at *3 (S.D.N.Y.

---

[1] As to the exhibits to the Affidavit of William Doyle, with the exception of Exhibit B (Smith's acceptance letter for a position at Cornell), which the Court is free to ignore, the Court can take judicial notice of each exhibit as part of a Rule 12(b)(6) motion without converting it to a motion for summary judgment. (Mem. at 1 n.1, 36 n.17.) The exhibits are either newspaper articles (Exs. C-F), part of the public record in the State Court Action (Exs. A, G-L), or documents incorporated by reference in the Complaint (Exs. M-N).

Aug. 19, 2002) (declining to decide public disclosure bar motion to dismiss as one for summary judgment, treating "the motion as a 12(b)(1) motion, [and] . . . resolv[ing] disputed jurisdictional factual issues by reference to evidence outside the pleadings").  Thus, the cases cited by Smith (Opp'n at 9-10) are inconsistent with the accepted practice in the Second Circuit and most other jurisdictions.  See, e.g., United States ex rel. Settlemire v. District of Columbia, 198 F.3d 913, 920 (D.C. Cir. 1999); United States v. A.D. Roe Co., 186 F.3d 717, 721-22 (6th Cir. 1999); United States ex rel. Dunleavy v. County of Del., 123 F.3d 734, 742 n.10 (3d Cir. 1997); United States ex rel. Barth v. Ridgedale Elec., Inc., 44 F.3d 699, 701 (8th Cir. 1995).[2]

**B.      Prior to Filing the Original Complaint, the Same or Substantially Similar Allegations Had Been Publicly Disclosed.**

The public disclosure bar analysis involves three steps:  (1) whether there has been a public disclosure; (2) whether the publicly disclosed allegations are substantially similar to the allegations in the *qui tam* action; and (3) whether the relator is the original source of the information on which the allegations in the *qui tam* action are based.  See 31 U.S.C. § 3730(e)(4).  With respect to the first two steps in the public disclosure bar analysis, Smith concedes that (1) a prior public disclosure took place no later than January 7, 2000, with the filing of the State Court Action, and (2) the allegations in the complaint in the State Court Action include allegations that are identical to those in this action.  (Opp'n at 7.)  Thus, Smith concedes that he can proceed only if he is the "original source" of the information that forms the basis of the FCA claims.  (Id.)

---

[2] Should the Court decide that the motion to dismiss for lack of subject matter jurisdiction should be converted into a motion for summary judgment, Smith's claim that he would need to engage in discovery before the Court could reach a decision is preposterous.  (Opp'n at 8 n.1.)  Smith needs no discovery to find out whether he is the original source of the information on which his own allegations are based.  See Cosens, 233 F. Supp. 2d at 325-26 ("[T]o the extent that the Relator claims to be the 'original source' of the information in his complaint, he obviously has personal knowledge of these facts [and] will not be prejudiced by a ruling on this motion prior to discovery.").

**C.      Smith Is Not an "Original Source" of the Allegations.**

To qualify as an original source, Smith must (1) have had direct and independent knowledge of the information on which his allegations are based and (2) have voluntarily provided the information to the government in a timely manner.  See United States ex rel. Dick v. Long Island Lighting Co., 912 F.2d 13, 16 (2d Cir. 1990); United States v. Bank of Farmington, 166 F.3d 853, 865 (7th Cir. 1999).  Smith does not appear to contest his failure to plead the first element in his Complaint (Mem. at 17); instead he now attempts to cure that deficiency by purporting to provide more information about when he first approached the United States Attorney's Office with his allegations (Opp'n at 19-20; Smith Aff. ¶¶ 12, 17, 19, 22.).  Nonetheless, because Smith did not have "direct and independent" knowledge of the information that he claims to have provided to the government, Smith does not qualify as an original source.

**1.      Smith Must Have "Direct and Independent" Knowledge of the Information on Which the FCA Claims Are Based.**

Contrary to Smith's assertions, a relator cannot proceed with snippets of information for which he claims to have direct and independent knowledge.  Rather, the "information" provided to the government, of which the relator has "direct and independent" knowledge, should itself be sufficient to plead an FCA claim.  United States ex rel. Precision Co. v. Koch Indus., Inc., 971 F.2d 548, 553 (10th Cir. 1992); see also John T. Boese, CIVIL FALSE CLAIMS & QUI TAM ACTIONS, § 4.02[D][2][c], at 4-97 (2004 Supp.) ("An apparently implicit requirement for original source eligibility is that a plaintiff provide information that is in itself sufficient for a False Claims Act suit.") (emphasis added).  In other words, Smith cannot qualify as an original source unless he can show that he provided the government with "direct and independent" knowledge of the "'who, what, when, where, and how' of the fraud."  See United States ex rel. Detrick v. Daniel F. Young, Inc., 909 F. Supp. 1010, 1019 (E.D. Va. 1995).

Smith claims that he need only "have direct and independent knowledge of <u>any essential element</u> of the underlying fraud transaction." (Opp'n at 12-13) (citing <u>United States ex rel. Springfield Terminal Ry. v. Quinn</u>, 14 F.3d 645, 656-57 (D.C. Cir. 1994).) The standard advocated by Smith has been criticized for its deviation from the standard set forth in the FCA:

> The <u>Springfield Terminal</u> approach is inconsistent with the plain language of the FCA, which should govern the court's interpretation. As noted earlier, the statute provides that an original source is someone who has "direct and independent knowledge of <u>the</u> information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B). The statute does not provide that all that is necessary is that the relator have "direct and independent knowledge of <u>some of</u> the information on which the allegations are based."

<u>United States ex rel. Hafter v. Spectrum Emergency Care, Inc.</u>, 9 F. Supp. 2d 1273, 1277 (D. Kan. 1998) (citing <u>Precision Co.</u>, 971 F.2d at 553); <u>see also</u> <u>United States ex rel. Atkinson v. Pa. Shipbuilding Co.</u>, 255 F. Supp. 351, 392 (E.D. Pa. 2002) (noting that the <u>Springfield Terminal</u> standard "conflict[s] with the plain language of § 3730(e)(4)(B)"). The <u>Springfield Terminal</u> standard is simply not the appropriate standard and is not the law of this Circuit.

Nonetheless, even if the Court were to adopt the diluted standard that Smith advocates, he still fails to establish "direct and independent" knowledge of any essential element of an FCA claim. "Evidence of an actual false claim is 'the *sine qua non* of a False Claim Act violation.'" <u>United States ex rel. Karvelas v. Melrose-Wakefield Hosp.</u>, 360 F.3d 220, 225 (1st Cir. 2004) (quoting <u>United States ex rel. Clausen v. Lab. Corp. of Am.</u>, 290 F.3d 1301, 1311 (11th Cir. 2002)). Because he failed to put forth evidence of a single false claim submitted to the government, Smith is unable to clear even the low bar that he asks the Court to set.

**2.    Smith Concedes That He Does Not Have "Direct and Independent" Knowledge of the Allegations.**

     **a.    Billing for All Reports Placed in "F" Status**

In one of the rare instances in which Smith claims to have "first hand knowledge" – that "Yale University automatically submits claims for reimbursement for the Professional component of all radiology tests and procedures once they are in 'F' status in the DecRad system" (Smith Aff. ¶ 11; see also Smith Aff. ¶ 16) – Smith is simply wrong. Although Smith characterizes the DecRad system as a conduit to the United States Treasury, this is simply not the case. Contrary to Smith's allegations (2d Am. Compl. ¶ 19), the DecRad system is not and has never been a "billing system" (Tencza Aff. ¶ 5). Not only have the vast majority of reports placed in "F" status not been submitted to Medicare or Medicaid for reimbursement, but for many such reports, reimbursement has not been sought from any payor, private or public. (Tencza Aff. ¶¶ 8-10; MacLeod Aff. ¶¶ 8-11.) Smith cannot have the required "direct and independent" knowledge to establish jurisdiction when his "knowledge" is demonstrably false.

     **b.    Reports Finalized Using "Autosign"**

Smith claims that he has direct knowledge of false claims submitted for reports finalized using Autosign because of a memo he received "from Felicia Tencza explaining how Autosign was going to be used." (Opp'n at 14, Opp'n Ex C.) Smith ignores that Ms. Tencza stated in that very memo that the Autosign function was designed to flag these reports so that Medicare would not be billed. (Mem. at 35-36; Doyle Decl. Ex. M) (emphasis added). Ms. Tencza explained to Smith that "NO BILL WILL GO OUT FOR 'AUTO SIGN'.  THAT IS THE PURPOSE OF CREATING 'AUTO SIGN.'" (Mem. at 36; Doyle Decl. Ex. N; Opp'n Ex. C.)[3]  Smith further

---

[3] Smith's claim that he "had no reason to believe that since these reports were finalized that Yale University had not also submitted a claim for reimbursement for the Professional component" (Smith Aff. ¶ 21), rings hollow in light of these clear representations from Yale that it would not seek reimbursement for claims finalized using Autosign.

fails to address his recent testimony in which he said that he has "no idea" whether Yale submitted any claims for reports finalized using Autosign. (Mem. at 14; Doyle Decl. Ex. J at 521:4-13.) In that Smith has no basis to claim direct knowledge of any billing by Defendants for reports finalized using Autosign, the Court does not have jurisdiction over those allegations.

### c.    Reports of Moonlighting Neuroradiology Fellows

It is fundamental that "a person who obtains secondhand information from an individual who has direct knowledge of the alleged fraud does not himself possess direct knowledge and therefore is not an original source." Barth, 44 F.3d at 703 (emphasis added). (Mem. at 13 (cases cited therein).)[4] Unable to avoid his prior judicial admission that he "did not directly observe" the alleged activity (Mem. at 14; Doyle Decl. Ex. G at 2 (emphasis added)), Smith responds with the *non sequitur* that he "has direct knowledge of the fraud[] . . . because he discussed [it] with actual Residents." (Opp'n at 14.) In the same breath that Smith claims to be an original source of the information, he concedes that it was obtained secondhand. Smith also avoids addressing his prior judicial admission that he "do[es] not claim that Yale billed for these studies" (Mem. at 14; Doyle Decl. Ex. I at 5 (emphasis added)) or his recent testimony in the State Court Action that he has no first-hand knowledge about this alleged activity (Mem. at 14; Doyle Decl. Ex. H at 8-9). The allegations of fraud involving reports prepared by moonlighting neuroradiology fellows must be dismissed. (Compl. ¶ 94; see also 2d Am. Compl. ¶¶ 83-88.)

---

[4] The reason for this rule is clear. The government rewards those who come to it with evidence of fraud, not those who pass along workplace rumors of fraud. Even the authority cited by Smith holds that secondhand knowledge is insufficient. See United States ex rel. Hafter v. Spectrum Emergency Care, Inc., 190 F.3d 1156, 1162-63 (10th Cir. 1999) (original source status excludes "plaintiffs who offer only secondhand information, speculation, background information or collateral research"); United States ex rel. Findley v. FPC-Boron Employees' Club, 105 F.3d 675, 690 (D.C. Cir. 1997) ("In order to be 'direct,' the information must be first-hand knowledge"); United States ex rel. Reagan v. East Tex. Med. Ctr. Reg'l Healthcare Sys., 274 F. Supp. 2d 824, 854 (S.D. Tex. 2003) (same); United States ex rel. Lamers v. City of Green Bay, 998 F. Supp. 971, 983 (E.D. Wisc. 1998) (same); Wercinski v. IBM, 982 F. Supp. 449, 461 (S.D. Tex. 1997) (same); United States ex rel. DeCarlo v. Kiewit/AFC Enters., Inc., 937 F. Supp. 1039, 1048 (S.D.N.Y. 1996) (recognizing that "the Act seeks to encourage persons with 'first hand knowledge of the fraudulent misconduct'").

**d.**     **Reports Finalized in the Clean-Up Project**

Unable to avoid the fact that he bases his allegations about the clean-up project on secondhand information from Dr. Burrell (Mem. at 15; Compl. ¶¶ 77-80; see also 2d Am. Compl. ¶¶ 62-65), Smith responds that he has "direct knowledge of the Clean up project because he discussed [the allegations] with actual faculty who were coerced into participating in the fraud" (Opp'n at 14). Smith again turns the meaning of "direct" on its head. Smith concedes that his information regarding the clean-up project was obtained secondhand rather than by personal observation. Smith's claim that he followed up with his own independent investigation (id.) does not change the character of his secondhand information. See Kreindler & Kreindler, 985 F.2d at 1159 (holding "collateral research and investigations . . . [do] not establish 'direct and independent knowledge of the information on which the allegations are based' within the meaning of § 3730(e)(4)(B)"); see also United States ex rel. Devlin v. California, 84 F.3d 358, 361 (9th Cir. 1996) (holding relators, who learned of wrongdoing from a third party and conducted an investigation to confirm the allegations, did not have "direct" knowledge because "they did not see the fraud with their own eyes or obtain their knowledge of it through their own labor unmediated by anything else"); United States ex rel. Grayson v. Advanced Mgmt. Tech., Inc., 221 F.3d 580, 583 (4th Cir. 2000) (same). The allegations of fraud during the clean-up project must be dismissed.

**e.**     **Billing for Panels of Tests**

With respect to the allegations regarding billing for unnecessary panels of tests (Compl. ¶¶ 96-99; see also 2d Am. Compl. at ¶¶ 89-92), Smith does not even attempt to respond to his prior judicial admission that he has "no way of knowing" if unnecessary panels of tests were in fact ordered and that one would "have to ask the residents" to find out (Mem. at 15; Doyle Decl. Ex. K at 604:5-11, 607:10-14). The Court does not have jurisdiction over these allegations.

### f.     Information Obtained Through Discovery

With respect to the allegations based on discovery in the State Court Action (2d Am.

Compl. ¶¶ 85 & 88), Smith cannot have independent knowledge of information that came by way

of a public disclosure.  Claims involving such allegations should be dismissed.  (Mem. at 15-16.)

### g.     Conduct Occurring After Smith Left Yale

With respect to the allegations regarding events that allegedly took place after Smith left

Yale on June 30, 1999 (Compl. ¶¶ 7, 83-91; see also 2d Am. Compl. ¶¶ 7, 68-76, 79-81), Smith

has no explanation for how he obtained "direct and independent knowledge" of the information.

Claims involving such allegations should be dismissed.  (Mem. at 12-13.)

### h.     Allegations Based on Information and Belief.

With respect to the allegations pled "on information and belief" (Compl. ¶¶ 20, 54, 56,

66, 87, 92-95; see also 2d Am. Compl. ¶¶ 20, 69, 72, 77-78, 82-83, 87-88), including those

allegations regarding review of reports of moonlighting neuroradiology fellows (made entirely on

information and belief), Smith has no basis to claim original source status (Mem. at 16).

## II.     SMITH FAILS TO MEET THE PLEADING REQUIREMENTS OF RULE 9(b).

After two amendments, Smith still fails to plead his FCA claims with the particularity

required to satisfy Rule 9(b).  Most notably, Smith fails to allege with any specificity a single

instance of the submission of a false claim.

### A.     FCA Claims Are Properly Dismissed Where No Particulars Regarding Actual False Claims Submitted to the Government Are Alleged

"Evidence of an actual false claim is 'the *sine qua non* of a False Claims Act violation.'"

Karvelas, 360 F.3d at 225 (quoting Clausen, 290 F.3d at 1311).  Under the heightened Rule 9(b)

pleading standard, evidence "of the actual false claims submitted to the government" must be

pled with particularity.  Id. at 232; see also In re Cardiac Devices Qui Tam Litig., 221 F.R.D.

318, 336-37 (D. Conn. 2004) (Rule 9(b) satisfied where the complaint "provided categorical information . . . about the actual claims that were submitted to the Government [rather than] only a general scheme of fraud . . . that might have resulted in the submission of false claims.").

In his attempt to avoid the requirement that he plead an actual false claim with particularity, Smith cites to a case brought under the federal securities laws, rather than the FCA, and then represents to the Court that "an FCA claim need not 'describe in detail a single specific transaction . . . by customer, amount, and precise method' when a plaintiff identifies the victim of the fraud, what type of fraud it was, the general time period in which the fraudulent conduct occurred, where the fraudulent statements were made, and how the statements constituted fraud." (Opp'n at 22 (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997).) As the FCA authority makes clear, evidence of an actual false claim submitted to the government is essential to an FCA cause of action. (Mem. at 21 n.11 (citing cases).)

Smith's attempts to distinguish Clausen and Karvelas are equally unavailing. Smith reads choice quotes from Clausen out of context to support his argument that Rule 9(b) does not require a relator to plead details about an actual false claim submitted to the government. (Opp'n at 27.) An honest reading of Clausen makes clear, however, that when the court stated that "[t]he submission of a claim is . . . the *sine qua non* of a False Claims Act violation," Clausen, 290 F.3d at 1311, it was stating a rule of general applicability. The court did not limit this rule, as Smith would have it, to relators who "never worked for the defendant and [were] not . . . insider[s]." (Opp'n at 27.) Rather, the Clausen court stated without qualification that Rule 9(b) "does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the

Government." <u>Clausen</u>, 290 F.3d at 1311. While the court did go on to note that Clausen was a corporate outsider, it did so to explain that this fact did not warrant a relaxation of the Rule 9(b) pleading requirements. <u>Id.</u> at 1314 ("But, while an insider might have an easier time obtaining information about billing practices . . . , neither the Federal rules nor the Act offer any special leniency . . . to justify Clausen failing to allege with the required specificity the circumstances of the fraudulent conduct he asserts in his action.").[5] Thus, under <u>Clausen</u>, corporate insiders and outsiders alike must do more than offer conclusory statements that false claims were submitted to the government – they must support such allegations with the specificity required by Rule 9(b).[6]

Smith also fails to find in <u>Karvelas</u> support for his notion that conclusory allegations regarding false <u>certifications</u> – as distinct from false <u>claims</u> – made to the government will suffice under Rule 9(b). The very words quoted from <u>Karvelas</u> by Smith belie his assertion. Within its broader discussion regarding the fact that "liability under the False Claims Act requires a false claim," <u>Karvelas</u>, 360 F.3d at 232, the <u>Karvelas</u> court noted:

> A number of courts have also found FCA violations where a defendant falsely certifies compliance with certain conditions required <u>as a prerequisite for a government benefit or payment in order to induce that benefit</u>. In such cases, false certification <u>for the</u>

---

[5] The Eleventh Circuit's unreported decision in <u>Hill v. Morehouse Medical Associates, Inc.</u>, 02-14429, 2003 WL 22019936 (11th Cir. Aug. 15, 2003) – improperly cited to by Smith for the proposition that <u>Clausen</u> is limited to corporate outsiders (Opp'n at 29-30) – further highlights what is missing from Smith's complaint. Hill's complaint survived a Rule 9(b) challenge because it specifically alleged the submission of actual false claims to the government. <u>Hill</u>, 2003 WL 22019936, at *1-2, 4. The specifics contained in Hill's complaint were all the more compelling given that she worked in defendant's billing and coding department and witnessed the alleged submissions firsthand. <u>Id.</u> at 5. Whether or not Smith was a "high-level employee" with "inside knowledge" (Opp'n at 30), his failure to allege a single false claim submitted to the government makes clear that, unlike the relator in <u>Hill</u>, he does not have firsthand knowledge of Defendants' billing practices.

[6] The <u>Clausen</u> court listed the types of specifics missing from Clausen's complaint: "No amounts of charges were identified. No actual dates were alleged. No policies about billing or even second-hand information about billing practices were described . . . . No copy of a single bill or payment was provided." <u>Clausen</u>, 290 F.3d at 1312. Contrary to Smith's assertion (Opp'n at 27), the <u>Clausen</u> court did not state that "any one" of these items would have cured the deficiencies in Clausen's complaint. Rather, the court stated that "[a]lthough Clausen has provided none of these items of information here, <u>some</u> of this information for at least some of the claims must be pleaded in order to satisfy Rule 9(b)." <u>Clausen</u>, 290 F.3d at 1312 n.21 (emphasis added). In any event, Smith has not set forth a single allegation of a false claim, much less provided any of the details outlined in <u>Clausen</u>. (Mem. at 23-26.)

purpose of receiving a payment or benefit becomes the practical equivalent of a statutory false claim.

Id. at 232 n.15 (emphasis added) (internal citation omitted).  While Smith has seized upon this footnote in hopes of saving his FCA allegations from dismissal under Rule 9(b), the fact remains that, to give rise to an action under the FCA, a false claim or false certification must be submitted to the government, and, to pass muster under Rule 9(b), the complaint must plead an allegation regarding the submission of a false claim or false certification with particularity.

> **B.**     **Smith Fails to Identify a Single False Claim Submitted to the Government.**

Nowhere in the three complaints he has filed in this case, his lengthy opposition brief, or his written disclosures to the government does Smith identify a single false claim that Defendants in fact submitted to the government.  See United States ex rel. Walsh v. Eastman Kodak Co., 98 F. Supp. 2d 141, 147 (D. Mass. 2000) ("Without citing a single false claim arising from an allegedly false invoice, Plaintiff has not met even a bare-bones Rule 9(b) test.").  The Complaint contains only broad and conclusory allegations of fraudulent billing.  (Mem. at 23-26.)

In his opposition, Smith restates many of the allegations from the Complaint, this time placing them under headings styled after the requirements of Rule 9(b).  (Opp'n at 31-35.)  No amount of catchy captions or re-organization of his allegations can hide the fact that Smith pleads no actual submission of a false claim and no allegation of an underlying fraudulent scheme with sufficient particularity to survive a motion to dismiss pursuant to Rule 9(b).

Realizing that his Complaint will not clear the Rule 9(b) hurdle, Smith improperly attempts to introduce new allegations via his Opposition.  (Smith Aff. ¶¶ 7-17, 19, 21-22.)  But it is well settled that new evidence cannot be introduced at the motion to dismiss stage.  Friedl v. City of New York, 210 F.3d 79, 83-84 (2d Cir. 2000) ("[A] district court errs when it 'considers affidavits and exhibits submitted by' defendants, or relies on factual allegations contained in

legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss."). The Opposition does nothing to refute that the Complaint must be dismissed pursuant to Rule 9(b). (Mem. at 20-30.)

**C.      Relaxation of the Pleading Requirements of Rule 9(b) Is Not Proper Here.**

The limited circumstances under which the heightened pleading requirements of Rule 9(b) may be relaxed are not present here. Defendants are not in exclusive possession and control of the information missing from Smith's complaint. Smith had ample opportunity to acquire such information for himself, but, judging by the deficiencies of his complaint, was unable to do so. This is not because Defendants exclusively control information about Medicare billing, but rather because the information that could save Smith's complaint from dismissal does not exist.[7]

Information about Medicare billing can be obtained through sources such as the Freedom of Information Act ("FOIA"). (Mem. at 25 n.12.) While the Second Circuit has not decided whether information obtained through a FOIA request would constitute a public disclosure,[8] other courts have held that it does not. See, e.g., United States ex rel. Bondy v. Consumer Health Found., 00-2520, 2001 WL 1397852, at *3 (4th Cir. Nov. 9, 2001); United States ex rel. Yannacopolous v. Gen. Dynamics, 315 F. Supp. 2d 939, 950 (N.D. Ill. 2004); see also United States ex rel. Schumer v. Hughes Aircraft Co., 63 F.3d 1512, 1520 (9th Cir. 1995) (public disclosure bar analysis inapplicable when FOIA request made after case filed). At least two courts within this Circuit have suggested that such a request is proper under the FCA and does

---

[7] Even under a relaxed Rule 9(b) standard, the Complaint would not survive a motion to dismiss. Where the heightened pleading requirements of Rule 9(b) are relaxed, "claims of fraud may not be based upon speculation or conclusory allegations." Walsh, 98 F. Supp. 2d at 147. Smith's FCA claims are nothing but speculative and conclusory, and dismissal is warranted under any application of Rule 9(b). (Mem. at 23-26, 28-30.)

[8] Despite the discussion in Karvelas about whether a FOIA request constitutes a public disclosure (Opp'n at 26 (citing Karvelas, 360 F.3d at 230)), which is not the Second Circuit rule, the Karvelas court made clear that the Rule 9(b) requirements are not to be relaxed for a *qui tam* relator and disagreed with the argument that "'it is inherently inconsistent with the goals of the False Claims Act' to require a qui tam relator to specify 'the time, dates, places, and identities' of the individuals involved in the fraud or 'the specifics in the documents prepared and submitted by the defendant to obtain the funding' at the time that the complaint is filed and prior to any additional discovery." Id.

not constitute a public disclosure. See United States ex rel. Barmak v. Sutter Corp., 95-cv-7637, 2003 WL 21436213, at *4 n.6 (S.D.N.Y. June 20, 2003) (dismissing FCA complaint under Rule 9(b) because "[t]he government, physicians, and patients also possess the information in question," and the relator did not seek the needed details through a FOIA request or similar means); United States ex rel. Pentagen Techs Int'l Ltd. v. CACI Int'l Inc., 94-cv-2925, 1996 WL 11299, at *9 (S.D.N.Y. Jan. 4, 1996) ("[D]ocuments acquired under the FOIA are not publicly disclosed within the meaning of § 3730(e)(4)(A).").

Furthermore, Smith could have sought information sufficient to satisfy Rule 9(b) through means other than a FOIA request. Smith admits to launching his own investigation into the allegations of the complaint while employed at Yale. (Opp'n at 5, 54.) Despite his posturing that his investigation uncovered "thousands of false claims and fraudulently finalized and certified radiological interpretations and reports for which Defendants submitted bills to Medicare" (Opp'n at 54), Smith has failed to set forth in any of his submissions the necessary particulars of a single false claim. As Smith admits, this failure is not due to any lack of access to the relevant information. See United States ex rel. Lee v. SmithKline Beecham, Inc., 245 F.3d 1048, 1052 (9th Cir. 2001) ("Given that Lee worked as a supervisor at NETC for over twenty years, was knowledgeable about the tests allegedly falsified, and was employed by SmithKline when he filed this action, he cannot fairly allege that SmithKline has sole possession of the facts evidencing an FCA violation [such that he] has no legitimate excuse for filing a vague complaint that does not assert particular details to support its allegations of fraud.").

Moreover, a relaxation of the Rule 9(b) standard is particularly inappropriate in an FCA action, given the safeguard of government review that is built into every such action. Here, the government – which possesses any and all claims submitted by the Defendants – conducted its

own investigation into Smith's allegations and, in declining to intervene, apparently concluded that the allegations were deficient.  See Karvelas, 360 F.3d at 242 n.31 ("[T]he government's decision not to intervene in the action also suggested that Karvelas' pleadings of fraud were potentially inadequate.").  To relax the specificity requirements of Rule 9(b) to allow Smith to seek that which the government did not find would be futile.[9]

### D.   Smith's Deficient Allegations Contravene the Purposes of Rule 9(b).

The heightened pleading requirement of Rule 9(b) serves a number of important purposes: "to ensure that the complaint provides a defendant with fair notice of a plaintiff's claim and with adequate information to frame a response," and "to protect defendants from meritless claims of fraud, to discourage 'strike suits,' and to prevent the filing of suits simply to uncover relevant information during the discovery process."  In re Cardiac Devices, 221 F.R.D. at 336; see also Rombach v. Chang, 355 F.3d 164, 171 (2d Cir. 2004) (same).  Contrary to Smith's assertion that the only purpose is to put a defendant on notice of the claims against it (Opp'n at 22-24, 28-29),[10] the heightened pleading requirements of Rule 9(b) serve more than a notice function.  Indeed, this Court relied in part on the multiple purposes of Rule 9(b) in staying discovery pending resolution of this motion to dismiss.  (Stay Order at 2-4.)

Notwithstanding the other purposes behind Rule 9(b), Smith's complaint does not even put Defendants on notice of the claims against them.  The fact that Defendants were able to muddle through Smith's vague allegations and place them in broad categories does not "make[]

---

[9] All of the cases within the Second Circuit that Smith cites in arguing for a relaxation of the Rule 9(b) standard were brought under statutes other than the FCA.  (See Opp'n at 25 (citing Wexner v. First Manhattan Co., 902 F.2d 169 (2d Cir. 1990) (1933 Act & 1934 Securities Acts); Devaney v. Chester, 813 F.2d 566 (2d Cir. 1987) (same); Tribune Co. v. Purcigliotti, 869 F. Supp. 1076 (S.D.N.Y. 1994) (RICO); Emery v. Am. Gen. Fin., Inc., 134 F.3d 1321 (7th Cir. 1998) (same); Corley v. Rosewood Care Ctr., Inc., 142 F.3d 1041 (7th Cir. 1998) (same)).)

[10] Smith's assertion that "[c]ourts in this Circuit have held that plaintiffs have satisfied the requirements of Rule 9(b) as long as they provide the defendants with adequate notice" mischaracterizes the case law.  (Opp'n at 29 (citing Mikes v. Strauss, 889 F. Supp. 746, 751 n.5 (S.D.N.Y. 1995).)  No holding is expressed in the footnote cited by Smith – and certainly no holding that disavows the purposes of Rule 9(b).

clear that Defendants understand the particulars of each fraud and that these particulars are contained in Plaintiff's Second Amended Complaint." (Opp'n at 23-24.) Defendants remain in the dark as to the specific allegations. Allowing Smith to remedy these deficiencies through discovery, as Smith suggests the Court should do (Opp'n at 23), would be at odds with both Rule 9(b) and the FCA (Stay Order at 2 ("[A]llowing a relator to plead generally at the outset and amend the complaint at the 12(b)(6) stage after discovery would be at odds with the FCA's procedures for filing a qui tam action . . . .") (quoting <u>Karvelas</u>, 360 F.3d at 231)). Smith must put Defendants on notice of the claims against them from the outset, not after discovery.

## III. THE FCA CLAIMS SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM.

Without identifying a single claim submitted to the government for reimbursement, Smith alleges that Defendants falsely certified compliance with the Medicare regulations and included factual misrepresentations in unidentified claim forms. Accepting all of his allegations as true for this motion, Smith fails to allege that any false statement was made as a prerequisite to Medicare reimbursement, and he has, thus, failed to state an FCA claim. (Mem. at 31-36.)[11]

### A. <u>Defendants Made No False or Fraudulent Statement as a Prerequisite for Medicare Reimbursement.</u>

#### 1. <u>A False Claim is One That the Government Would Not Have Paid.</u>

A "false claim" is one that "is aimed at extracting money the government would not otherwise have paid." <u>United States ex rel. Mikes v. Strauss</u>, 274 F.3d 687, 696 (2d Cir. 2001). The Second Circuit recognizes that "a claim cannot be determined to be true or false without consideration of whether the decisionmaker should pay the claim – that is, a claim is 'false' only if the Government or other customer would not pay the claim if the facts about the misconduct

---

[11] In that the issues are not properly addressed on a motion to dismiss, Defendant does not respond in this reply brief to Smith's arguments regarding causation and scienter. (Opp'n at 43-45.)

alleged to have occurred were known." Id. (internal citations omitted.) The FCA simply "does not encompass those instances of regulatory noncompliance that are irrelevant to the government's disbursement decisions." Id. at 697.

### 2. Allegations That Defendants Billed for Studies By Radiologists Who Were Not Qualified Teaching Physicians

Smith failed to respond to Defendants' motion to dismiss the allegations that Defendants billed for reports by residents and fellows that were finalized by outside clinical attending physicians whom Smith claims were not authorized to bill Medicare or whom he deems unqualified. (Mem. at 32-33; 2d Am. Compl. ¶ 75, 78.) Smith has apparently abandoned those claims, which should be dismissed. See 60 Fed. Reg. 63,123, 63,130 (Dec. 8, 1995) ("There is no portion of the Act upon which to base a decision that only board-certified radiologists can furnish x-ray interpretations.").

### 3. Allegations That Defendants Billed for Studies for Which the Signing Radiologist Did Not Review the Image and/or the Preliminary Report

#### a. Allegations Regarding the Use of "Autosign"

Despite Yale's assurances that reimbursement would not be sought for reports finalized using Autosign (Mem. at 36; Doyle Decl. Ex. N; Opp'n Ex. C) and his prior judicial admission that he personally has no idea whether Yale submitted claims for such reports (Mem. at 14; Doyle Decl. Ex. J at 521:4-13), Smith apparently decided to pursue the claim because he "had no reason to believe that since these reports were finalized that Yale University had not also submitted a claim for reimbursement for the Professional component" (Smith Aff. ¶ 21). If such conclusory allegations are not dismissed under Rule 12(b)(6), they should be withdrawn in accordance with Smith's obligations under Rule 11.[12]

---

[12] Defendant YNHH addresses Smith's allegations that it submitted claims for the technical component of such studies in its separate reply brief.

**b.**     **Allegations Regarding the Neuroradiology Fellows**

Smith claims that in some instances faculty physicians finalized the reports of moonlighting neuroradiology fellows without reviewing the reports or after undertaking only a cursory review. (Opp'n at 41.) Smith argues that the faculty member provided an impliedly false certification that the services were performed in accordance with the guidelines regarding billing for services involving residents or non-moonlighting fellows. (Id.) Smith further argues that this procedure constituted a legally false certification in that the name appearing on the bill is not the name of the physician who performed the service. (Opp'n at 41.)

Smith's implied certification theory fails as a matter of law, because the moonlighting fellows met the requirements to bill for such services. (Mem. at 32; 42 C.F.R. § 415.180.) Thus, as long as a "physician other than a resident" – in this case a moonlighting fellow – performed his or her own interpretation or reviewed the resident's interpretation, reimbursement would be proper.[13]

Thus, even were one to credit Smith's allegations that faculty members Drs. Glickman, Sze, and Forman finalized reports of moonlighting fellows without independently interpreting the reports (Opp'n at 41; 2d Am. Compl. ¶¶ 83-87), Smith fails to state a claim. Smith does not dispute that the moonlighting fellows could have billed for the services in their own names without subsequent second-level review by a faculty member and that the government would have paid the same amount. (Mem. at 33-34; 42 C.F.R. § 415.208; Med. Carr. Man. § 2020.8(C) (1999).) Smith must, therefore, fall back on the argument that, because a different name was on

---

[13] To the extent that Smith claims that there is a physical presence requirement with respect to diagnostic radiology services (Opp'n at 36), he is simply wrong. See 60 Fed. Reg. 63,123, 63,139 (Dec. 8, 1995) ("The situation is contrasted with a diagnostic procedure, such as an x-ray, in which the physician would not be expected to be present during the performance of a test and could bill for an interpretation by reviewing the film with the resident (or by performing an independent interpretation).").

the form, fraud is afoot. This is simply not the law. In the Second Circuit, it is fundamental that "[i]n order for a false statement to raise FCA liability . . . it must serve as a prerequisite for payment by the government." <u>United States ex rel. Capella v. Norden Sys., Inc.</u>, 3:94-cv-2063, 2000 WL 1336487, at *8 (D. Conn. Aug. 24, 2000); <u>see also</u> <u>In re Cardiac Devices</u>, 221 F.R.D. at 335 (same). Smith has failed to establish that the name on the form is a payment prerequisite.[14]

### c.  Allegations Regarding the "Clean Up Project"

For the clean-up project, it is again important to note what Smith does not claim. Smith does not claim that the volunteer faculty member who initially prepared the report, but did not finalize it, would not have been authorized to seek reimbursement in his or her own name. Smith does not claim that the voluntary faculty members failed to interpret the associated images and prepare reports contemporaneously with providing care for the patients. Smith does not allege that Medicare was asked to pay twice for the same service. Rather, Smith claims that a faculty member released the report from the computer system after the interpretation could be considered medically necessary. (Opp'n at 41.)

No one disputes that Form 1500 includes an express certification that the physician's services were "medically indicated and necessary for the health of the patient." Nonetheless, the Second Circuit has held that this certification does not provide an avenue for bringing FCA

---

[14] Smith cites several cases, all of which are distinguishable, in support of this argument. In <u>United States v. Mackby</u>, 261 F.3d 821, 826 (9th Cir. 2001), the defendant, who owned a physical therapy clinic, inserted his father's Medicare physician PIN number on claim forms, even though his father had no connection to the clinic. By inserting his father's PIN number on the claim forms, the defendant represented that the clinic was a physician-run practice which enabled it to avoid the cap on payments that would have applied had the claims been submitted in the name of physical therapists. <u>Id.</u> at 829. In <u>Peterson v. Weinberger</u>, 508 F.2d 45, 52 (5th Cir. 1975), the defendant submitted claims under the name of a physician and signed the physician's name without that physician's knowledge. In <u>United States ex rel. Riley v. St. Lukes Episcopal Hospital</u>, 355 F.3d 370, 379 (5th Cir. 2004), the defendant allegedly filed claims for services performed by a physician who was not licensed to practice medicine by submitting the claims in the name of another physician and instructing nurses to conceal the impropriety. Likewise, <u>United States ex rel. Piacentile v. Wolk</u>, 93-cv-5773, 1995 WL 20833 at *4 (E.D. Pa. Jan. 17, 1995), involved administrators' subsequent alterations of signed Certificates of Medical Necessity without the signing physician's knowledge. Each of these cases involves blatant fraud designed to obtain money that the government otherwise would not have paid and do not support Smith's contentions.

claims based on a claim that the service provided was substandard or insufficient in some manner. Mikes, 274 F.3d at 702 (Form 1500 certification does "not obligate federal courts to step outside their primary area of competence and apply a qualitative standard measuring the efficacy of those procedures"); see also United States ex rel. Swafford v. Borgess Med. Ctr., 98 F. Supp. 2d 822, 829-30 (W.D. Mich. 2000) (dismissing claims based on "the adequacy of defendant physician's interpretation [because] plaintiff cannot demonstrate the falsity of defendant's claims under the FCA by proving their delivery of services fell short of the requisite standard of care").

Furthermore, under the Medicare billing guidelines, the subsequent review of a radiology report in such circumstances is billable. See 60 Fed. Reg. 38,400, 38,403 (July 26, 1995) ("[W]hen a hospital radiologist interprets an x-ray that has already been interpreted by another physician, the service of the radiologist almost always constitutes a physician service and should be paid by the Medicare carrier."). As long as the provider does not bill twice for the same service, Medicare does not question whether the subsequent review and finalization by another physician was medically necessary. Only when multiple claims are received by the carrier will it be required to determine which to pay, and then "the carrier should pay for the service that directly contributed to the diagnosis and treatment of the beneficiary." Id; see also 60 Fed. Reg. 63,123, 63,131 (Dec. 8, 1995) (noting that only in the case of multiple bills would the issue of when the service was rendered be relevant, stating "hospitals [should] act to ensure that only one interpretation is billed . . . . If a carrier received only one claim, there will be no problem").

### 4.      Allegations Regarding Medically Unnecessary Studies

Smith further fails to respond to Defendants' motion to dismiss allegations that Defendants billed for unnecessary panels of tests. (Mem. at 36.) As discussed above, Smith

cannot use the implied false certification theory to second guess medical judgment. <u>Mikes</u>, 274

F.3d at 702.  Such claims should be dismissed.

## FALSE CLAIMS ACT

## SECTION 3730(h) RETALIATION CLAIMS

**I.    SMITH'S RETALIATION CLAIM IS TIME-BARRED.**

Smith's retaliation claim was not brought within the applicable 90-day limitations period

and should, therefore, be dismissed as untimely.  The six-year limitations period set forth in

§ 3731(b)(1) of the FCA is inapplicable to a retaliation claim under § 3730(h), and the "most

closely analogous" statute of limitations under Connecticut law applies.  <u>See</u> <u>Reed v. United</u>

<u>Transp. Union</u>, 488 U.S. 319, 323 (1989).  The Connecticut statute most closely analogous to

§ 3730(h) is § 31-51m of the Connecticut General Statutes, which protects from retaliation any

employee who "reports . . . a violation or a suspected violation of any state or federal law or

regulation to a public body."  Conn. Gen. Stat. § 31-51m(b).  The analogy between § 3730(h) and

§ 31-51m could not be more straightforward:  both provisions serve to protect from retaliation

employees who blow the whistle on their employer's illegal conduct.

Smith's argument that § 31-51q of the Connecticut General Statutes is the state statute

most closely analogous to § 3730(h) misses the mark.  (Opp'n at 50-52.)  Section 31-51q protects

an employee's exercise of rights guaranteed by the First Amendment.  Conn. Gen. Stat. § 31-51q.

The concern of § 31-51q is the protection of constitutional rights, a purpose altogether different

from that of § 3730(h), which was enacted to protect whistleblowers.  S. Rep. No. 99-345, at 34

(1986), <u>reprinted in</u> 1986 U.S.C.C.A.N. 5266, 5299.

Accordingly, § 31-51q and § 3730(h) protect entirely different conduct.  The speech

protected under § 31-51q, for example, need have no connection to an investigation by the

employee into alleged illegal conduct on the part of the employer, but rather need only be on a

ny-589793                                    22

matter of public concern. See Cotto v. United Techs. Corp., 711 A.2d 1180, 1186 (Conn. App. Ct. 1998). On the other hand, an employee investigating a matter of public concern could find protection under § 31-51q only if he spoke out on the subject; a silent investigator who was found out by his employer and terminated would have no redress under § 31-51q. See id. ("If the rights exercised by the employee do not fall into the specified constitutional category, [§ 31-51q] cannot apply.").

## II.    SMITH FAILS TO STATE A CLAIM FOR RETALIATION.

Smith has failed to state a claim under § 3730(h) in that he has failed to allege (1) that he was engaged in protected conduct; (2) that Defendants knew that he was engaged in protected conduct; and (3) that Defendants retaliated against him because of his protected conduct. E.g., Faldetta v. Lockheed Martin Corp., 98-cv-2614, 2000 WL 1682759 (S.D.N.Y. Nov. 9, 2000).

### A.    Smith Has Failed to Allege That He Was Engaged in Protected Conduct.

Smith has failed to allege that he was engaged in conduct protected by the FCA, which protects conduct that is "directed at exposing a fraud upon the government." Moor-Jankowski v. Bd. of Trs. of New York Univ., 96-cv-5997, 1998 WL 474084, at *10 (S.D.N.Y. Aug. 10, 1998). Not only has Smith failed to allege that he intended to do anything more than lodge internal complaints (Mem. at 42-43), he has failed to demonstrate any connection between the conduct he complained about and any false claim submitted to the government. See, e.g., Karvelas, 360 F.3d at 237 ("However, conduct protected by the FCA is limited to activities that 'reasonably could lead' to an FCA action; in other words, investigations, inquiries, testimonies or other activities that concern the employer's knowing submission of false or fraudulent claims for payment to the government."); Faldetta, 2000 WL 1682759, at *12 (finding plaintiff's allegations were "insufficient to establish that his actions were connected to [his employer's] fraudulent activity in submitting claims for payment").

**B.**   **Smith Has Failed to Allege that Defendants Knew of His Protected Conduct.**

Smith has failed to allege the second element of a § 3730(h) claim for retaliation.

Nowhere in his numerous submissions does Smith indicate that Defendants were on notice that

he was investigating false claims submitted to the government.  See Karvelas, 360 F.3d at 239

("What the employer must know is that the plaintiff is engaged in protected conduct, that is,

investigation or other activity concerning false or fraudulent claims that the employer knowingly

presented to the federal government.").  Smith's assertion in his Opposition that he "reported . . .

the submission of false claims to the government to Hospital and University Administrators"

(Opp'n at 55) is not supported by the paragraphs of the Second Amended Complaint to which he

cites (Opp'n at 55 (citing Second Am. Compl. ¶¶ 79-81)), or indeed by any paragraphs of the

Second Amended Complaint.

**C.**   **Smith Has Failed to Allege that He Was Retaliated Against Because of His Protected Conduct.**

Smith attempts to satisfy the third element of a § 3730(h) claim by inserting the statute's

"because of" language into his allegations without any factual support.  Such conclusory

allegations fail to state a claim.  See Karvelas, 360 F.3d at 240 ("Simply parroting the language

of a statutory cause of action, without providing some factual support, is not sufficient to state a

claim.").

## DEFAMATION

**I.**   **SMITH HAS FAILED TO STATE A CLAIM FOR DEFAMATION.**

To overcome a motion to dismiss his defamation claim, Smith "must plead what

defamatory statements . . . were made . . . , when they were made, [and] to whom they might

have been made." Anthony v. Young & Rubicam, 979 F. Supp. 122, 128 (D. Conn. 1997)

(Dorsey, J.) (internal quotations omitted) (Mem. at 45-47.)  This Smith has failed entirely to do.

(Opp'n at 60.)  The cursory treatment Smith gives to his defamation claim in his Opposition is

indication enough that this claim should be dismissed with prejudice.  (Mem. at 45-47.)

## CONCLUSION

For the reasons stated herein and in Defendants' Motion to Dismiss, all claims against

Yale University should be dismissed with prejudice.

Dated:  September 20, 2004

Respectfully submitted,

By: _William J. Doyle (wp 82)_
William J. Doyle (CT04190)
Kenneth D. Heath (CT23659)
WIGGIN & DANA LLP
265 Church Street, One Century Tower
New Haven, CT  06508-1832
(203) 498-4400

By: _Carl H. Loewenson_
Carl H. Loewenson, Jr. (CT07774)
Stanley R. Soya (CT25883)
J. Alexander Lawrence (CT25884)
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, NY  10104-0185
(212) 468-8000

Attorneys for Defendant Yale University

## CERTIFICATE OF SERVICE

I, Sarah C. Rosell, hereby certify that true and correct copies of Defendant Yale

University's Reply in Support of Motion to Dismiss were served by U.S. Mail, postage prepaid,

on September 20, 2004, upon:

William J. Doyle
Kenneth D. Heath
One Century Tower
265 Church Street
New Haven, CT 06508-1832

Patrick M. Noonan
Delaney, Zemetis, Donahue,
Durham & Noonan, P.C.
741 Boston Post Road
Guilford, CT 06437

Mary Alice Leonhardt
Offices of Mary Alice Leonhardt
102 Oak Street
Hartford, CT 06106

Peter B. Prestley
Craig T. Dickinson
Madsen, Prestley & Parenteau, LLC
44 Capitol Avenue
Suite 201
Hartford, CT 06106

Jacques J. Parenteau
Madsen, Prestley & Parenteau, LLC
111 Huntington Street
P.O. Box 1631
New London, CT 06320

and, pursuant to Rule 5(c) of the Local Rules of Civil Procedure, three copies by United States
Postal Service, First Class Mail to:

John Hughes, Esq.
Richard Molot, Esq.
Assistant United States Attorneys
Office of the Assistant United States Attorney
157 Church Street, 23rd Floor
New Haven, CT 06510.

Sarah C. Rosell, Esq.

ny-589793                                        1