UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel | : | |
| ROBERT C. SMITH, M.D. | : | |
| | : | CIVIL ACTION NO. |
| Plaintiffs, | : | 3:00CV01359 (PCD) |
| v. | : | |
| | : | |
| YALE UNIVERSITY and | : | |
| YALE NEW HAVEN HOSPITAL | : | |
| | : | |
| Defendants. | : | SEPTEMBER 20, 2004 |

**REPLY OF YALE NEW HAVEN HOSPITAL IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

**INTRODUCTION**

Defendant Yale New Haven Hospital ("YNHH"), hereby respectfully incorporates by reference and relies on Defendants' Memorandum of Law in Support of Motion to Dismiss and the Reply Memorandum of Yale University ("Yale") in Support of Defendants' Motion to Dismiss. For all of the reasons set forth in both of those briefs, the Second Amended Complaint, as asserted against YNHH, should be dismissed in its entirety.

YNHH replies separately to address the allegations of Smith that YNHH submitted fraudulent Medicare and Medicaid bills for the technical component of certain radiological services, in violation of the False Claims Act, 31 U.S.C. § 3729, et seq. ("FCA"). For such radiological services, YNHH is reimbursed only for the technical component. (2d Am. Compl. ¶ 33.) The technical component of any radiological study is the fee associated with

the actual taking of the test and the reduction of the data onto a film or other storage media. (Id. ¶ 12.) YNHH has no responsibility for, nor does it bill for, the professional component of radiological services, which consists of the reading of films by physicians.

Smith, for the first time in his opposition brief and supporting affidavit, has made it clear that he that he is pursuing FCA claims in this action based on allegations that YNHH violated the FCA when it allegedly sought reimbursement for the technical component of radiological studies that were taken by YNHH and at a later time processed by Yale using the "Autosign" function. (Opp'n at 4-5, 32, 35, 42-43.)[1]  This claim should be dismissed for three separate reasons: (1) the court lacks subject matter jurisdiction due to the fact that Smith is not the original source of his claims; (2) plaintiff's complaint does not meet the requirements of Fed. R. Civ. P. 9(b); and (3) the claim itself fails to state a claim upon which relief can be granted.

## ARGUMENT

As noted in Defendants' Memorandum in Support of Motion to Dismiss, an FCA plaintiff must establish that he is the original source of the claims. Smith's complaint fails to make sufficient allegations from which it could be concluded that he is the original source. See Defendants' Memorandum at pp. 6-19.  As also noted in Defendants' original Memorandum, a plaintiff-relator in an FCA claim must meet the stringent requirements of

---

[1] In the second *qui tam* action filed by Smith in this district styled United States ex rel. Robert C. Smith M.D. v. Yale-New Haven Hospital, Inc. et al, No. 3:02-cv-1205 (WWE), Smith bases his FCA claims against YNHH on these same allegations.  As in this action, the Government also declined to intervene in Smith's second *qui tam* action.  See Government's Notice of Election to Decline Intervention, dated March 12, 2004.

2

Fed. R. Civ. P. 9(b) with respect to pleading fraud.  In light of the fact that Smith has failed to allege the details of even a single claim that was fraudulently submitted by YNHH to Medicare or Medicaid, Smith's claim regarding the submission of claims for the technical component of radiological studies which were later finalized by Yale using the "Autosign" function fails to meet the requirements of Rule 9(b).  See Defendants' Memorandum at pp. 20-30.  Smith's brief itself establishes that Smith does not have "direct and independent knowledge" of even a single instance in which YNHH submitted a claim for the technical component of a radiological study which was not reviewed by a physician:

> "Therefore, since all reports finalized by Autosign must necessarily have first been completed, the Hospital must have billed the Technical Component for all exams for which reports were finalized by Autosign without the reports or the associated images ever being reviewed by a member of the faculty." (Opp'n at 35).

Plaintiff's use of the phrase "must have billed" demonstrates that he does not actually have knowledge of this alleged fact.

Moreover, even assuming arguendo that Smith had alleged facts from which it could be concluded that he was the original source of these claims and assuming further that he had met the requirements of Rule 9(b), Smith's complaint on this issue fails to state a claim upon which relief can be granted.  It must be remembered that the "Autosign" function was devised by Yale University to remove from the computer system preliminary reports prepared by residents that could not be finalized by an attending radiologist because the associated images had been lost.   Yale University did not bill for the professional component on those films.  At the time the Hospital took the films, the Hospital could not have known that the films

would later be lost after they were given a preliminary reading.  At the time the Hospital took the films, it did so because a treating physician had found the taking of the film to be "medically necessary."   Since the taking of the films was medically necessary and since the Hospital did all that it was requested to do, it was entitled to bill for the technical component of the study, despite the fact that Yale never billed for the professional component.

Smith's claim in this regard is based on a fundamental misapprehension of the Medicare regulations.  Smith's position is that unless a board-certified radiologist reviews an x-ray and prepares a report, the hospital may not bill Medicare for the <u>technical</u> component of the radiological study pursuant to 42 C.F.R. § 415.102(a)(2).  Thus, plaintiff has stated; "[T]he Hospital is only permitted to bill for the Technical Component of complete radiological studies, i.e., those which have a corresponding Professional Component." (Opp'n at 42).  Smith fails to cite a single case, statute or regulation to support this novel theory.  Undoubtedly, there are occasions when no board-certified radiologist has reviewed a particular radiological study, as for example where an emergency room physician reviews a film himself or herself.  However, there is simply no requirement that a board-certified radiologist provide a written interpretation of the film in order for the hospital to bill Medicare for the <u>technical</u> component of the film.  Indeed, it is fundamental that "[t]here is no portion of the [Medicare] Act upon which to base a decision that only board-certified radiologists can furnish x-ray interpretations." <u>See</u> 60 Fed. Reg. 63,123, 63,130 (Dec. 8, 1995).  Attending clinical physicians routinely review radiology studies without requesting a

4

written interpretation from a radiologist. There simply is no support for the proposition that the Hospital may not bill for the taking of the film where a board-certified radiologist does not later review the film. Therefore, plaintiff is simply incorrect in his bald assertion that the Hospital may not bill for the technical component of a radiological study where there is no corresponding professional component.

For instance, an attending physician or an orthopedist in an emergency room may review an x-ray and confirm that the patient's leg is broken, but this x-ray might never be reviewed by a radiologist. Smith has absolutely no basis to claim that the taking of such a study is not medically necessary or that it did not contribute to the diagnosis or treatment of a patient. While it is true that YNHH did not bill for the <u>professional</u> component of this type of radiological study, there is nothing to suggest that the hospital is barred from billing for the <u>technical</u> component. In fact, the Health Care Financing Administration has implicitly recognized that a hospital may properly bill for the <u>technical</u> component of such a study:

> We believe it is common practice for an emergency room physician to 'review' x-rays and use the information gained in diagnosing and treating the patient, but that this review, without a report for inclusion in the patient's medical record maintained by the hospital, does not meet the requirement for payment of a <u>professional</u> component radiologic service. (Emphasis supplied).

60 Fed. Reg. 38,400, 38,403 (July 26, 1995). In other words, HCFA recognizes that the taking of the film was beneficial in "diagnosing and treating the patient" even though the film was not later interpreted by a board-certified radiologist. Under such circumstances, it is perfectly appropriate for the Hospital to submit a bill for the technical component of the

5

study. Smith has no basis to claim that because a report of a radiologist does not accompany a radiological study that the study has no diagnostic value and therefore that a hospital is barred from billing for the technical component.

Furthermore, even assuming <u>arguendo</u> that Smith had alleged that the Hospital had submitted a claim with respect to a particular radiological study which was performed but never used for the diagnosis of a patient[2] – for instance if the patient were to die before an interpretation of the study could be made – Smith has failed to point to any case, statute or regulation that would prohibit YNHH from billing for the technical component of that study if at the time that it was ordered, the ordering physician considered the test "medically necessary" for Medicare purposes. Since the taking and reading of radiological studies are deemed to be separate services for purposes of Medicare billing, the determination of "medical necessity" must be made separately with respect to each service. With respect to the technical component, that determination is made when a treating physician orders a study, not at a later date when the study is read. Accordingly, there is nothing improper in a hospital billing for the technical component once the film has been taken, even if the film is not later read by a radiologist. It is acknowledged that no professional component fee may be billed where a film was not subsequently read. However, where the hospital has done all it was asked to do by taking the film, the fact that the film is not later read by a different individual

---

[2] As noted above, the failure of Smith to specify even a single claim improperly submitted to Medicare or Medicaid for payment, in and of itself, dictates that this matter should be dismissed.

does not mean that the hospital should not be paid for the service that was requested of the hospital and which was provided by the hospital.

Accordingly, plaintiff's claims with respect to the hospital billing for the technical component on films which were later processed by Yale University pursuant to the "Autosign" function fails to state a claim upon which relief can be granted.

## **CONCLUSION**

For the foregoing reasons, and for the reasons stated in Defendants' original Memorandum of Law in Support of Motion to Dismiss and in the Reply Memorandum of Yale University, YNHH moves this Court to dismiss the Second Amended Complaint in its entirety.

> THE DEFENDANT
> YALE NEW HAVEN HOSPITAL
>
>
> BY:_____
> Patrick M. Noonan  (#CT00189)
> Donahue, Durham & Noonan, P.C.
> 741 Boston Post Road
> Guilford, CT 06437
> (203) 458-9168
> (203) 458-4424 - Fax

**CERTIFICATION**

This is to certify that a copy of the foregoing was mailed, postage prepaid, on the above-written date, to:

| | |
|---|---|
| William J. Doyle<br>Kenneth D. Heath<br>One Century Tower<br>265 Church Street<br>New Haven, CT  06508-1832 | Carl H. Loewenson, Jr.<br>Stanley R. Soya<br>J. Alexander Lawrence<br>Morrison & Foerster LLP<br>1290 Avenue of the Americas<br>New York, NY  10104-0185 |
| Mary Alice Leonhardt<br>Offices Of Mary Alice Leonhardt<br>102 Oak Street<br>Hartford, CT 06106 | Peter B. Prestley<br>Craig T. Dickinson<br>Madsen, Prestley & Parenteau, LLC<br>44 Capitol Avenue<br>Suite 201<br>Hartford, CT 06106 |
| | Jacques J. Parenteau<br>Madsen, Prestley & Parenteau, LLC<br>111 Huntington Street<br>P.O. Box 1631<br>New London, CT 06320 |

and, pursuant to Rule 5(c) of the Local Rules of Civil Procedure, three copies by United States Postal Service, First Class Mail to:

> John Hughes, Esq.
> Richard Molot, Esq.
> Assistant United States Attorney
> Office of the Assistant United States Attorney
> 157 Church Street, 23rd Floor
> New Haven, CT 06510.

_____

          Patrick M. Noonan