UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES ex rel.<br>ROBERT C. SMITH, M.D.,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>YALE UNIVERSITY and YALE-NEW HAVEN<br>HOSPITAL, INC.,<br><br>　　　　　　Defendants. | Civil Action<br>No. 3:00-cv-01359(PCD)<br><br>OCTOBER 11, 2004<br><br><u>ORAL ARGUMENT REQUESTED</u> |

**RESPONSE OF YALE UNIVERSITY TO SUR-REPLY
OF PLAINTIFF IN OPPOSITION TO DEFENDANTS'
<u>MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>**

WIGGIN & DANA LLP
William J. Doyle
Kenneth D. Heath
One Century Tower
265 Church Street
New Haven, CT 06508-1832
(203) 498-4400

MORRISON & FOERSTER LLP
Carl H. Loewenson, Jr.
Stanley R. Soya
J. Alexander Lawrence
1290 Avenue of the Americas
New York, NY 10104-0185
(212) 468-8000

Attorneys for Defendant Yale University

ny-595386

Defendant Yale University ("Yale") respectfully submits this response to the sur-reply of Plaintiff-Relator Robert Smith, M.D. ("Smith") in opposition to the Motion of Yale and Yale-New Haven Hospital, Inc. ("YNHH") (collectively, "Defendants") to dismiss the Second Amended Complaint.

## ARGUMENT

### I. Smith Has Admitted That He Bases His Allegations on Rumors Gleaned from Coworkers and Through the Discovery Process.

Smith claims that Yale misled the Court when it stated in its reply brief that Smith admitted that he does not have direct and independent knowledge of the allegations on which his claims are based. (Surreply at 1-2.) To the contrary, in their opening brief, Defendants pointed to numerous judicial admissions by Smith that he does not have direct and independent knowledge of the facts underlying his allegations.

- Reports Finalized Using "Autosign" - (Mem. at 14; Doyle Decl. Ex. J at 521:4-13) (admission by Smith that he has no basis to claim direct knowledge of any billing by Defendants for reports finalized using Autosign).

- Reports of Moonlighting Neuroradiology Fellows - (Mem. at 14; Doyle Decl. Ex. G at 2) (admission by Smith that he "did not directly observe" the alleged activity); (Mem. at 14; Doyle Decl. Ex. I at 5) (admission by Smith that he "do[es] not claim that Yale billed for these studies"); (Mem. at 14; Doyle Decl. Ex. H at 8-9) (admission by Smith that he has no first-hand knowledge about this alleged activity).

- Reports Finalized in the Clean-Up Project - (Mem. at 15; Compl. ¶¶ 77-80; see also 2d Am. Compl. ¶¶ 62-65) (admission by Smith that he bases his allegations about the clean-up project on secondhand information from Dr. Burrell).

- Billing for Panels of Tests - (Mem. at 15; Doyle Decl. Ex. K at 604:5-11, 607:10-14) (admission by Smith that he has "no way of knowing" if unnecessary panels of tests were in fact ordered and that one would "have to ask the residents" to find out.).

Although Defendants directed the Court's attention to each of these prior judicial admissions in their opening brief, Smith failed to address them in either his opposition or his "sur-reply." Unable to avoid or explain his prior judicial admissions, Smith simply ignores them.

## II. Smith Requested That the Court Relax the Rule 9(b) Standard and Such Request Should Be Denied.

Smith argues that his intention in seeking a relaxation of the Rule 9(b) pleading standard is not so that he can proceed with discovery in the hopes of making a case, but rather to permit him to proceed on "information and belief." (Surreply at 2-3.) Clearly, Smith makes a distinction without a difference. Smith asks the Court to permit him to proceed on the basis of suspicions rather than requiring that he plead the specifics of his FCA claims. (Id.) Smith, however, should be required to plead his claims of fraud with the specificity required by Rule 9(b).[1]

## III. The Government Had a Full Opportunity to Investigate Smith's Allegations and Decided Not to Pursue the Matter.

Incredibly, Smith takes the position that Yale has no basis to claim that the Government conducted an investigation into his allegations regarding the clean up project, Autosign, the Neuroradiology fellows, and medically unnecessary studies or that the Government has complete access to all claims submitted to it. (Surreply at 3.) First, the Government obviously has access to all claims for reimbursement submitted to it. Second, as the target of the Government's investigation, Yale clearly has an understanding of the scope of that investigation. Third, Smith represents to the Court that he brought all of these allegations to the attention of the Government before he filed this case on July 19, 2000. (Opp'n at 19-20; Smith Aff. ¶¶ 12, 17, 19, 22.) After

---

[1] As to Smith's claims that the relaxation of the Rule 9(b) standard is appropriate in that the information about billing is exclusively within Defendants' control, the weight of authority runs counter to Smith's argument. (Mem at 25, n.12; Reply at 14-15.) Information about Medicare billing is not exclusively within the Defendants' control. (Id.)

Smith commenced this action and notified the Government of all his allegations, the Government filed six motions (September 15, 2000, March 15, 2001, September 13, 2001, March 11, 2002, September 13, 2002, March 13, 2003) to extend the time to make its election regarding whether to intervene. Finally, on September 18, 2003, the Government having completed its investigation notified the Court of its intention not to pursue the matter. Smith has no basis to dispute that during this three-year period, the Government had the opportunity to investigate all of his claims, much less to dispute the thoroughness of that investigation.

### IV. Defendants Properly Moved for Dismissal on the Basis of the Public Disclosure Bar Under Rules 12(b)(1) and 12(h)(3).

Without citing to a single case in the Second Circuit supporting his position, Smith disputes that courts in the Second Circuit have, without exception, "held" that Rules 12(b)(1) and 12(h)(3) are the proper procedural vehicles for moving to dismiss FCA claims under the public disclosure bar. (Surreply at 3-5.) Conceding that courts in the Second Circuit have without exception decided such motions under Rules 12(b)(1) or 12(h)(3), Smith speculates that the parties in those cases must not have raised the issue of whether dismissal under Rules 12(b)(1) or 12(h)(3) is proper or that the courts in those cases must not have considered the issue. (Surreply at 4-5.) Contrary to Smith's assertions, Yale cited at least one decision in which a court in this circuit expressly held that in considering materials outside the pleadings on a motion to dismiss under the public disclosure bar, Rule 12(b)(1) rather than Rule 56 is the proper procedural vehicle. See United States ex rel. Woods v. Empire Blue Cross & Blue Shield, 99-cv-4968, 2002 WL 1905899, at *3 (S.D.N.Y. Aug. 19, 2002).[2]

---

[2] Even if Rule 12(b)(6) were the proper procedural vehicle, Smith does not dispute that the Court can take judicial notice of all but one of the exhibits submitted in support of the Motion to Dismiss as part of a Rule 12(b)(6) motion without converting it to a motion for summary judgment. (Reply at 3 n.1.) Regardless of what procedural vehicle the Court uses to decide Defendants' Motion to Dismiss, the result should be the same.

ny-595386                                    3

## V. Smith Lacks Direct and Independent Knowledge of Defendants' Billing Procedures.

Smith now explains that he did not mean to say that the DecRad system is a billing system (Surreply at 6), but he still has no basis to claim that he knows the first thing about Defendants' billing practices. Although Smith concedes that Yale does not seek government reimbursement for services provided to patients who are not Medicare or Medicaid beneficiaries (Surreply at 7), he continues to claim – without any showing that he has any information to support his allegations – that Yale seeks reimbursement for all services provided to Medicare or Medicaid beneficiaries. (Surreply at 7-8.)

Smith simply ignores the testimony of Felicia Tencza and Debra MacLeod when he claims that neither individual refutes his unsubstantiated claim that Yale automatically bills Medicare and Medicaid for the professional component of reports once they are placed in "F" status. (Surreply at 8.) Both Ms. Tencza and Ms. MacLeod expressly state that in many instances Yale does not bill the government for services provided to Medicare or Medicaid beneficiaries even though the reports reflecting those services have been placed in "F" status. (Tencza Aff. ¶ 10; MacLeod Aff. ¶¶ 8-11.)

Smith has put forward nothing to show that he has direct and independent knowledge of Yale's billing practices. Smith instead asks the Court to disregard the testimony of Ms. Tencza and Ms. MacLeod, both of whom are intimately familiar with Yale's billing practices, and to accept his unsubstantiated claims about those practices. Smith had no involvement in and therefore does not know the first thing about Yale's billing practices.

## VI. The Neuroradiology Fellows Were Moonlighting Fellows Who Could Have Billed for Their Services.

In their opening brief, Defendants moved to dismiss Smith's claims regarding billing for work performed by the neuroradiology fellows on the basis that they were moonlighting and thus

ny-595386                                                                                   4

fully authorized to bill for the services in their own right. (Mem. at 33-34.) Having failed to address this issue in his opposition, Smith now seeks to address it in his "sur-reply."

First, Smith takes the position that absent a written contract between Yale and the moonlighting fellows, the fellows cannot be considered moonlighters. (Surreply at 9.) Smith's argument fails as a matter of law. Nowhere in the applicable regulations is there a requirement that a moonlighting agreement with residents or fellows be in writing. 42 C.F.R. § 415.208; Medicare Carriers Manual § 2020.8(C). Although the regulations provide that the carrier must review the "contracts and agreements" to make sure that they comply with the criteria set forth in 42 C.F.R. § 415.208(b)(2), the regulations do not require that such contracts or agreements be in writing. There is no rule of statutory construction that would limit the term "contracts and agreements" to those that are in writing. See Wharf (Holdings) Ltd. v. United Int'l Holdings, Inc., 532 U.S. 588, 595 (2001) (holding that where the Act refers to a contract, "there [is no] convincing reason to interpret the Act to exclude oral contracts"). Under the applicable regulations, all that is required is that the carrier have sufficient information about the services provided by the residents or fellows to insure that the requirements for reimbursement are being met.

Smith further argues that even if the moonlighting fellows could have billed in their own names, Yale committed fraud because the bills were submitted in the names of faculty members. Yale fully addressed this argument in both its opening brief and in its reply brief. (Mem. at 34-35; Reply at 19-20.) In the Second Circuit, it is fundamental that "[i]n order for a false statement to raise FCA liability . . . it must serve as a prerequisite for payment by the government." United States ex rel. Capella v. Norden Sys., Inc., 3:94-cv-2063, 2000 WL 1336487, at *8 (D. Conn. Aug. 24, 2000); see also In re Cardiac Devices Qui Tam Litig., 221 F.R.D. 318, 335 (D. Conn.

2004) (same). Smith has failed to establish that the name on the form is a payment prerequisite. The purpose of the FCA – to combat fraudulent claims submitted for reimbursement – would not be served by allowing Smith to pursue claims based solely on which physician's name appears on a claim form, when either physician involved in providing the services could have billed for the services and would have received the same level of reimbursement.

## CONCLUSION

For the reasons stated herein and in Defendants' Motion to Dismiss and Yale's Reply in Support of Defendants' Motion to Dismiss, all claims against Yale University should be dismissed with prejudice.

Dated: October 11, 2004

Respectfully submitted,

MORRISON & FOERSTER LLP

*/s/ Alx Lawrence*
Carl H. Loewenson, Jr. (CT07774)
Stanley R. Soya (CT25883)
J. Alexander Lawrence (CT25884)
1290 Avenue of the Americas
New York, NY 10104-0185
(212) 468-8000

- and -

WIGGIN & DANA LLP
William J. Doyle (CT04190)
Kenneth D. Heath (CT23659)
One Century Tower
265 Church Street
New Haven, CT 06508-1832
(203) 498-4400

Attorneys for Defendant Yale University

## CERTIFICATE OF SERVICE

I, J. Alexander Lawrence, hereby certify that true and correct copies of Defendant Yale University's Opposition to Plaintiff's Motion for Permission to File Sur-Reply Memorandum or in the Alternative Motion to Grant Yale Leave to File Response Thereto was served by U.S. Mail, on October 11, 2004, upon:

William J. Doyle
Kenneth D. Heath
One Century Tower
265 Church Street
New Haven, CT 06508-1832

Patrick M. Noonan
Delaney, Zemetis, Donahue,
Durham & Noonan, P.C.
741 Boston Post Road
Guilford, CT 06437

Mary Alice Leonhardt
Offices Of Mary Alice Leonhardt
102 Oak Street
Hartford, CT 06106

Peter B. Prestley
Craig T. Dickinson
Madsen, Prestley & Parenteau, LLC
44 Capitol Avenue
Suite 201
Hartford, CT 06106

Jacques J. Parenteau
Madsen, Prestley & Parenteau, LLC
111 Huntington Street
P.O. Box 1631
New London, CT 06320

and, pursuant to Rule 5(c) of the Local Rules of Civil Procedure, three copies by United States Postal Service, First Class Mail to:

John Hughes, Esq.
Richard Molot, Esq.
Assistant United States Attorney
Office of the Assistant United States Attorney
157 Church Street, 23rd Floor
New Haven, CT 06510.

_____
J. Alexander Lawrence

ny-595307