UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES ex rel. ROBERT C. SMITH, M.D., | : | Civil Action No. 3:00-cv-01359(PCD) |
| Plaintiff, | : | |
| vs. | : | |
| YALE UNIVERSITY and YALE-NEW HAVEN HOSPITAL, INC., | : | |
| Defendants. | : | October 4, 2004 |

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

## I.  INTRODUCTION

Plaintiff-Relator, Robert C. Smith, M.D. ("Plaintiff"), through his undersigned counsel, hereby offers this Sur-Reply to rebut the mischaracterizations and erroneous assertions put forth in the Reply of Defendant Yale University ("Defendant"), dated September 20, 2004. Accordingly, for the reasons set forth below, as well as those contained in Plaintiff's Opposition, dated August 30, 2004, Defendants' Motion to Dismiss the Second Amended Complaint should be denied in its entirety.

## II.  ARGUMENT

### A.  Defendant's Reply Is Replete with Erroneous and Misleading Assertions

At this point, none of the parties should feel required to provide additional factual background to the Court. But, as Defendant's Reply is replete with erroneous and misleading assertions, it is incumbent upon Plaintiff to correct the record.

First, Defendant erroneously and presumptuously states that "Smith admits that he bases his allegations on rumors gleaned from his coworkers and through discovery in the

1

State Court Action." (Reply at 1.)  Contrary to Defendant's assertion, Plaintiff's

allegations are based on his own first-hand independent knowledge of events, practices,

and policies that either took place or were in place while Plaintiff was in Defendant's

employ.  To the extent that Plaintiff has obtained any information from co-workers or

through discovery in the State Court action, it has only served to corroborate facts of

which Plaintiff was already aware.

Second, Defendant misrepresents Plaintiff's contention that the Court should relax

the pleading standard under Rule 9(b).  Defendant states that "[r]ealizing that he cannot

satisfy the Rule 9(b) standard, Smith asks the Court to relax the standard and allow him

to proceed with discovery." (Reply at 2.)  Contrary to Defendant's assertion, Plaintiff is

confident that his allegations satisfy Rule 9(b)'s particularity requirements – regardless of

whether the Court relaxes the pleading standards.  In fact, Plaintiff clearly explains how

his allegations satisfy each element required under Rule 9(b). (*See* Opposition at 31-35.)

Furthermore, Plaintiff does not argue for a relaxation of the Rule 9(b) requirements so

that he is able "to proceed with discovery," as Defendant contends.  Obtaining additional

discovery is not the objective sought in arguing for a relaxation of the Rule 9(b)

standards.  When courts relax the requirements of Rule 9(b) on a motion to dismiss,

plaintiffs are simply allowed to allege facts on information and belief.  Defendant has

apparently forgotten this point since it authored its original Memorandum of Law, in

which it acknowledged the exception which allows plaintiff to allege fraud "on

information and belief" when the information is exclusively within the defendant's

control, and argued that the exception was "inapplicable" in this case.  (Def's Mem. Of

Law at 25-26 & n.12.)  Thus, Defendant's assertion that Plaintiff seeks the relaxed

2

standard under Rule 9(b) to obtain additional discovery that will remedy Plaintiff's alleged pleading inadequacies is transparently disingenuous.

Third, operating without any basis in fact, Defendant mistakenly asserts that "[t]he government, after a full opportunity to investigate Smith's allegations and with complete access to any and all claims submitted by Defendants, declined to intervene to pursue Smith's claims. Smith should not be allowed to charge forward with unsubstantiated claims where the government fully investigated and saw no merit." (Reply at 2.) Defendant's statements are nothing more than unfounded speculation intended to undermine the viability of Plaintiff's claims. Defendant has no basis in fact upon which to surmise which claims the government investigated and for what reasons the government declined to intervene on any of Plaintiff's claims. Defendant has put forth no information that would support its claims that (1) the government fully investigated Plaintiff's claims and (2) after investigating, the government saw no merit. In fact, to the knowledge of the undersigned, the government never conducted any investigation into the clean up project, Autosign, the Neuroradiology fellows, and medically unnecessary studies - the allegations which became the subject of the instant action. It is reckless and self-serving for Defendant to contend otherwise without any factual support.

     B.    <u>Defendants Improperly Moved to Dismiss Under Rule 12(b)(1)</u>

          1.    <u>Defendants Concede to The Merits of Plaintiff's Argument</u>

In his Opposition, Plaintiff argues that Rule 12(b)(1) is not the proper vehicle for moving to dismiss FCA claims on the basis of subject matter jurisdiction under the public disclosure bar because the jurisdictional question is intertwined with the merits. *(See*

3

Opposition at 8-11.) In support of his argument, Plaintiff cited numerous authorities

from courts in several circuits that are in accord. In its Reply, however, Defendant

neither contests the merits of Plaintiff's argument, nor distinguishes the cases upon which

Plaintiff relied.

For instance, Defendant does not dispute that, in the Second Circuit, reliance upon

Rule 12(b)(1) is not appropriate where, on a motion to dismiss, the issue of jurisdiction is

"intertwined with the merits." (*See* Opposition at 11)(citing *London v. Polishook*, 189

F.3d 196, 198-99 (2d Cir. 1999); *Semi-Tech Litigation, LLC v. Bankers Trust Co.*, 272 F.

Supp. 2d 319, 329 (S.D.N.Y. 2003)). Furthermore, Defendant does not dispute that the

issue of jurisdiction is intertwined with the merits when a party moves to dismiss an FCA

claim under the public disclosure bar. Thus, as Defendant does not dispute the merits of

Plaintiff's argument, this Court should review Defendant's Motion to Dismiss under

Rules 12(b)(6) or 56(c), not under Rule 12(b)(1).

> 2.    Defendant Continues to Misconstrue Caselaw In Its Submissions to
> this Court

While Defendant does not dispute the merits of Plaintiff's argument, it does echo

Plaintiff's acknowledgement that courts in this Circuit have reviewed subject matter

challenges under the public disclosure bar under Rule 12(b)(1). (Opposition at 10; Reply

at 3-4.) Defendant, however, misrepresents the cases from this Circuit upon which it

relies when it states that "courts in the Second Circuit have, without exception, held that

Rules 12(b)(1) and 12(h)(3) are the proper procedural vehicles for moving to dismiss

FCA claims under the public disclosure bar." (Reply at 3)(emphasis added). Contrary to

Defendant's assertion, none of the cases upon which Defendant relies have "held"

anything on this issue because none of them have squarely addressed it. Courts in the

4

Circuit have simply assumed, without deciding, that reliance upon Rule 12(b)(1) was proper because, to the knowledge of the undersigned, no litigant in this Circuit has previously raised this issue. Every court that has actually considered the issue, however, has held that Rule 12(b)(1) is not the proper vehicle under which subject matter jurisdiction challenges under the public disclosure bar of the FCA should be addressed, (*see* Opposition at 8-11), and Defendant has not put forth any argument or relied on any authority to suggest that any of those rulings were erroneous or misguided.

Defendant's only contention is that it is proper to move to dismiss under Rule 12(b)(1) because that is the "accepted practice" in this Circuit. (Reply at 3-4.) Defendant's contention, even if true, is inconsequential because courts do not maintain an "accepted practice" when the practice that is accepted is found to be flawed or mistaken. *See, e.g., County of Allegheny v. American Civil Liberties Union*, 492 U.S. 573, 630 (1989) (O'Connor J., concurring) ("Historical acceptance of a practice does not in itself validate the practice . . . ."). Accordingly, this Court should review Defendant's Motion to Dismiss under Rules 12(b)(6) or 56(c), not under Rule 12(b)(1).

C.     Defendant's Attempt to Discredit Plaintiff's Knowledge Of Billing Procedures is Unavailing

By relying on the declarations of Felicia Tencza and Debra Macleod, Defendant attempts to discredit Plaintiff by asserting that he "is simply wrong," that his knowledge is "demonstrably false," (Reply at 7), and that his "claim is untrue and demonstrates a complete misunderstanding of the DecRad system . . . and . . . billing procedures," (Tencza Declaration at ¶ 4). When held up to scrutiny, however, Defendant's attempts to undermine Plaintiff's credibility themselves not credible.

5

First, Defendant claims that Plaintiff incorrectly alleges that the DecRad system is a "billing system." (Reply at 7; Tencza Declaration at 5)(citing Second Am. Compl. ¶ 19).[1]  Defendant's attack is problematic, and demonstrates its penchant for factual distortion, because Plaintiff never actually alleges that the DecRad system is a "billing system."  Paragraph 19 of the Second Amended Complaint, cited by Defendant, describes the DecRad system and states that: "This application is linked directly between YNHH and Yale's School of Medicine's Radiology Department to permit a seamless patient record documentation, reporting and billing system." (Second Am. Compl. ¶ 19)(emphasis added).  Thus, when placed in context, Plaintiff only alleges in Paragraph 19 that the DecRad system permits for a "seamless patient . . . billing system," not that the DecRad system itself is a billing system.

Furthermore, Defendant's attempts at misdirection designed to confuse the issues, such as the claims in the declarations of Tencza and Macleod, do nothing to discredit Plaintiff's claims, and in fact, implicitly substantiate them.  In the Second Amended Complaint, the Opposition to Defendants' Motion to Dismiss, and Plaintiff's accompanying affidavit, Plaintiff describes and outlines in detail the DecRad system and the process by which Defendants bill Medicare for the professional and technical components of radiological services, including the progression by which radiological reports move from "S" to "F" status.  In his affidavit, Plaintiff states that "Yale University automatically submits claims for reimbursement for the Professional

---

[1] Defendant's attacks upon Plaintiff's credibility are hollow.  Defendant states that Plaintiff's assertions are "demonstrably false," (Reply at 7), and Tencza declares that Plaintiff's "claim is untrue and demonstrates a complete misunderstanding of the DecRad system . . . and . . . billing procedures," (Tencza Decl. ¶ 4).  Yet, despite the fact that Plaintiff's claims are "demonstrably false" and demonstrate a "complete misunderstanding," Defendant fails to demonstrate or explain how they are false or provide the Court with an "accurate" understanding of the DecRad system and billing procedures.  Defendant's failure to come forth with such proof or explanation is indicative of the fact that its attacks are shallow and baseless.

6

component of all radiology tests and procedures once they are in "F" status in the

DecRad system." (Smith Aff. ¶ 11.)  While Defendant attempts to attach tremendous

significance to the fact that a "vast majority of reports placed in 'F' status [have] not been

submitted to Medicare or Medicaid," (Reply ¶ 7), Defendant's statement does nothing to

undermine the validity of Plaintiff's claim.

     The declarations put forth by Defendant do not undermine Plaintiff's credibility

because the propositions put forth by Plaintiff and Defendant are not mutually exclusive.

Defendant contends that for patients who are Medicare and Medicaid beneficiaries,

Defendant automatically submits a claim to Medicare and Medicaid for the professional

component of each radiology test and procedure once they are placed in "F" status, while

Defendant contends that a majority of the reports placed in "F" status have not been

submitted to Medicare and Medicaid for reimbursement.  For both claims to be accurate,

it would only have to be true that a majority of the radiology tests and procedures in "F"

status were not performed on patients who are Medicare and Medicaid beneficiaries.

     For example, Tencza declares that "[m]ost services . . . have been submitted for

reimbursement from private payors (such as insurance companies or health management

organizations)." (Tencza Decl. ¶ 9(a).)  That statement does nothing to undermine

Plaintiff's contention that, for patients who are Medicare and Medicaid beneficiaries,

Yale automatically submits claims for reimbursement for the Professional component of

all radiology tests once they are in "F" status because Defendant would obviously not

submit a claim to Medicare or Medicaid for those individuals who are not Medicare or

Medicaid beneficiaries, such as those who are not disabled or are under age 65.  Plaintiff

has never claimed that Yale submits claims to Medicare or Medicaid for every test and

procedure in "F" status, only for those patients who are Medicare and Medicaid

beneficiaries. The other statements contained in the declarations of Tencza and Macleod

are likewise irrelevant and do nothing to undermine Plaintiff's claim that, for radiology

tests and procedures performed on patients who are Medicare and Medicaid beneficiaries,

Defendant automatically bills Medicare and Medicaid for the Professional component

once they are placed in "F" status.

In fact, nowhere in either Defendant's Reply, or the declarations of Felicia Tencza

or Debra Macleod, does Defendant claim that it does not automatically submit claims to

Medicare and Medicaid for the Professional component of all radiology tests and

procedures once they are in "F" status for those patients who are actually Medicare or

Medicaid beneficiaries. If anything, Defendant's inability to refute Plaintiff's claim,

despite its offer of proof on this issue, should be considered a tacit admission that

Plaintiff's claim is correct. Thus, Defendant's attempts to confuse the Court and attack

Plaintiff's credibility are unavailing and accordingly, Plaintiff has sufficiently

demonstrated that he possesses direct and independent knowledge of the information

underlying his allegations regarding Defendant's billing procedures. In addition,

Defendant's direct and independent knowledge of Defendant's billing procedures

demonstrates that Plaintiff has alleged sufficient specificity to satisfy Rule 9(b) and that

the first count of the Second Amended Complaint states a claim upon which relief can be

granted.

D.   Defendant Erroneously Contends that the Neuroradiology Fellows Were
     Moonlighting Fellows Who Could Have Billed for Their Services

Regarding Plaintiff's allegations of the Neuroradiology fellows fraud, Defendant

contends that Plaintiff's "implied certification theory fails as a matter of law, because the

moonlighting fellows met the requirements to bill for such services." (Reply at 19)(citing Mem. of Law at 32; 42 C.F.R. 415.180). Furthermore, Defendant declares that "Smith does not dispute that moonlighting fellows could have billed for the services in their own names without subsequent second-level review by a faculty member and that the government would have paid the same amount." (Reply at 19.) Both of Defendant's assertions are erroneous.

The Neuroradiology fellows were not "moonlighting" and, therefore, Defendant could not have submitted claims for their services. In order to qualify as a "moonlighting fellow," Defendants would have had to arrange and enter into contractual arrangements with the Neuroradiology fellows clearly providing that the services for which they were submitting claims to Medicare were outside the scope of their fellowship. *See* 60 Fed. Reg. 63124-01(3)(h) ("carriers may pay under the physician fee schedule for the services of moonlighting residents in the outpatient department or emergency department of a hospital in which they have their training program if there is a contract between the resident and the hospital indicating that the following criteria are met: . . . [3] The services can be separately identified from those services that are required as part of the approved GME program."); 42 C.F.R. § 415.208(b)(3)("If the criteria specified in paragraph (b)(2) of this section are met, the services of the moonlighting resident are considered to have been furnished by the individual in his or her capacity as a physician, rather than in the capacity of a resident. The carrier must review the contracts and agreements for these services to ensure compliance with the criteria specified in paragraph (b)(2) of this section."). Clearly, Defendant has not produced any contracts in this case specifying that the Neuroradiology fellows were moonlighting. Accordingly,

Defendants could not have considered them "moonlighting fellows" and submitted claims for their services to Medicare or Medicaid. Again, it is difficult to view this line of argument as ingenuous.

In addition, Defendant's claim that it could have billed for the services provided by the "moonlighting" fellows in their own names is equally unavailing in light of the fact that Defendant created an elaborate scheme, which resulted in a great deal of administrative inconvenience, for no other purpose than to avoid billing under the Neuroradiology fellows' own names. Such an elaborate scheme would not have been created if Defendant could have treated the Neuroradiology fellows as "moonlighting" fellows and streamlined billing process by simply billing under the fellows own names.

Even assuming arguendo, however, that Defendant could have treated the Neuroradiology fellows as moonlighting fellows and billed for the professional component for their services, Defendant's conduct still violated the FCA because it submitted the claims under the names of the teaching physicians – not the Neuroradiology fellows – and the teaching physicians never reviewed the reports. Billing under the wrong physician's name constitutes fraud, even if Medicare would theoretically have paid if the services were billed under the name of the physician who actually performed the services. (*See* Opposition at 37-40.) In addition, many of the reports were never signed by the Neuroradiology fellows – only by the teaching physicians. Thus, Defendant could not have submitted claims for the services performed by the Neuroradiology fellows for reports which they, in many cases, had never signed.[2]

---

[2] Many of the reports were never signed by the Neuroradiology fellows because where the names of the resident, fellow, and teaching physician were all on the reports, the teaching physician would often sign off on the reports before the fellows had an opportunity to do so. Once the teaching physician signed the reports, they were placed into "F" status, where they were no longer accessible to the fellows.

10

## III.    CONCLUSION

For the foregoing reasons, as well as those put forth in Plaintiff's Opposition,

Defendants' Motion to Dismiss should be denied in its entirety.

PLAINTIFF-RELATOR,
ROBERT B. SMITH, M.D.

By: _____
Peter B. Prestley
Federal Bar No.: ct15799
MADSEN, PRESTLEY, & PARENTEAU
44 Capitol Avenue, Suite 201
Hartford, CT 06106
Tel:    (860) 246-2466
Fax:    (860) 246-1794


### CERTIFICATE OF SERVICE

The undersigned certifies that on this 4th day of October, 2004, a copy of the foregoing was sent via mail delivery to the following counsel of record:

Mary Alice Leonhardt
Law Offices of Mary Alice Leonhardt, LLC
102 Oak Street
Hartford, CT 06106

Willam J. Doyle, Esq.
Kenneth D. Heath, Esq.
Wiggin & Dana LLP
One Century Tower
265 Church Street, Box 1832
New Haven, CT 06508-1832

Patrick M. Noonan, Esq.
Delaney, Zemetis, Donahue, & Noonan, P.C.
741 Boston Post Road
Concept Park
Guilford, CT 06437

Carl H. Loewenson, Jr., Esq.
Stanley R. Soya, Esq.
J. Alexander Lawrence, Esq.

11

Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104-0185

Peter B. Prestley, Esq.

12